# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                         )
ELECTRONIC FRONTIER                      )
FOUNDATION,                              )
                                         )
        Plaintiff,                       )
                                         )
               v.                        )        Civil Action No. 12-1441-ABJ
                                         )
                                         )
DEPARTMENT OF JUSTICE,                   )
                                         )
        Defendant.                       )
                                         )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
## DEPARTMENT OF JUSTICE'S MOTION FOR SUMMARY JUDGMENT

STUART F. DELERY
Acting Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director
Civil Division

JACQUELINE COLEMAN SNEAD (D.C. Bar 459548)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, D.C.  20530
Telephone:  (202) 514-3418
Fax:  (202) 616-8470
E-mail: Jacqueline.Snead@usdoj.gov

**Counsel for the Department of Justice**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

STATUTORY BACKGROUND .................................................................................. 3

STATEMENT OF FACTS .......................................................................................... 7

ARGUMENT ............................................................................................................... 9

I.   THE DEPARTMENT IS NOT "IMPROPERLY" WITHHOLDING
     ORDERS OF THE FISC. .................................................................................. 11

II.  THE COURT SHOULD UPHOLD THE DEPARTMENT'S
     WITHHOLDINGS UNDER EXEMPTION (B)(1)............................................. 15

     A.   An Original Classification Authority Has Properly Classified
          the Information Withheld From Plaintiff as Exempt Under (b)(1). ............... 17

     B.   All of the Information Withheld Pursuant to Exemption (b)(1) is
          Government Information. ................................................................................. 18

     C.   All of the Information Withheld Pursuant to Exemption (b)(1) Is
          Within a Category Identified in Section 1.4 of Executive
          Order No. 13526. ............................................................................................ 18

     D.   The Unauthorized Disclosure of the Information Withheld Under
          Exemption (b)(1) Reasonably Could Be Expected to Damage
          National Security. ........................................................................................... 20

III. THE COURT SHOULD UPHOLD THE DEPARTMENT'S
     WITHHOLDINGS UNDER EXEMPTION (B)(3)............................................. 22

IV.  THE DEPARTMENT SATISFIED FOIA'S SEGREGABILITY
     REQUIREMENT. .............................................................................................. 25

     A.   Documents A and B Cannot Be "Reasonably" Segregated Because
          the FISC Controls the Publication of Its Orders............................................. 26

     B.   The Department Has Complied with FOIA's Segregability
          Requirement as to the Congressional Briefings Responsive to
          Plaintiff's FOIA Request. ............................................................................... 27

CONCLUSION.......................................................................................................... 27

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abbotts v. Nuclear Regulatory Comm'n,*
    766 F.2d 604 (D.C. Cir. 1985) .................................................................... 16

*ACLU v. CIA,*
    2012 WL 4356338 (D.D.C., Sept. 25, 2012) ........................................... 20, 26

*ACLU v. U.S. Dep't of Justice,*
    681 F.3d 61 (2d Cir. 2012) .................................................................. 11, 20

*ACLU v. U.S. Dep't of Defense,*
    628 F.3d 612 (D.C. Cir. 2011) .................................................................. 11

*Center for Nat'l Sec. Studies v. Dep't of Justice,*
    331 F.3d 918 (D.C. Cir. 2003) .............................................................. 11, 21

*CIA v. Sims,*
    471 U.S. 159 (1985) .............................................................................. 23

*Clapper v. Amnesty Int'l USA,*
    133 S. Ct. 1138 (2013) ............................................................................ 3

*Darui v. U.S. Dep't of State,*
    798 F. Supp. 2d 32 (D.D.C. 2011) ............................................................ 10

*Essential Info., Inc. v. USIA,*
    134 F.3d 1165 (D.C. Cir. 1998) ................................................................ 23

*FBI v. Abramson,*
    456 U.S. 615 (1982) ................................................................................ 9

*Ferranti v. Bureau of Alcohol, Tobacco & Firearms,*
    177 F. Supp. 2d 41 (D.D.C. 2001) ............................................................ 10

*Fitzgibbon v. CIA,*
    911 F.2d 755 (D.C. Cir. 1990) ................................................................. 23

*Goland v. CIA,*
    607 F.2d 339 (D.C. Cir. 1978) ................................................................. 23

*Grove v. Dep't of Justice,*
    802 F. Supp. 506 (D.D.C. 1992) ............................................................... 10

*GTE Sylvania, Inc. v. Consumers Union of U.S.*,
   445 U.S. 375 (1980) .......................................................................................... 2, 11, 12

*Halperin v. CIA*,
   629 F.2d 144 (D.C. Cir. 1980) ................................................................................... 21, 23

*Hayden v. NSA*,,
   608 F.2d 1381 (D.C. Cir. 1979) ......................................................................................... 24

*In re Mot. for Rel. of Court Records*,,
   526 F. Supp. 2d 484 (FISC Dec. 11, 2007) .................................................................. 13, 14

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ............................................................................................................... 9

*Juarez v. Department of Justice*,
   518 F.3d 54 (D.C. Cir. 2008) ............................................................................................. 25

*Kissinger v. Reporters Comm. for Freedom of the Press*,
   445 U.S. 136 (1980) ......................................................................................................... 15, 26

*Krikorian v. Dep't of State*,
   984 F.2d 461 (D.C. Cir. 1993) ........................................................................................... 11

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ........................................................................................... 20

*Linder v. NSA*,
   94 F.3d 693 (D.C. Cir. 1996) ............................................................................................. 24

*Mack v. Dep't of the Navy*,
   259 F. Supp. 2d. 99 (D.D.C. 2003) .................................................................................... 10

*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) ........................................................................................... 16

*Morgan v. United States Dep't of Justice*,
   923 F.2d 195 (D.C. Cir. 1991) ........................................................................................... 13

*Reporters Comm. for Freedom of the Press v. Dep't of Justice*,
   816 F.2d 730 (D.C. Cir.) *modified on other grounds*,
   831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other
   grounds*, 489 U.S. 749 (1989), ....................................................................................... 23

*Salisbury v. United States,*
    690 F.2d 966 (D.C. Cir. 1982) .................................................................................... 16

*Senate of Commonwealth of P.R. v. U.S. Dep't of Justice,*
    1993 WL 364696 (D.D.C., Aug. 24, 1993) ................................................................. 12

*Soghoian v. United States Dep't of Justice,*
    885 F. Supp. 2d 62 (D.D.C. 2012) .............................................................................. 25

*U.S. Dep't of Justice v. Tax Analysts,*
    492 U.S. 136 (1989)................................................................................... 10, 12, 26

*Weissman v. CIA,*
    565 F.2d 692 (D.C. Cir. 1977) .................................................................................... 21

*Wheeler v. CIA,*
    271 F. Supp. 2d 132 (D.D.C. 2003) ............................................................................ 10

*Wilbur v. CIA,*
    273 F. Supp. 2d 119 (D.D.C. 2003) ............................................................................ 10

*Wolf v. CIA,*
    473 F.3d 370 (D.C. Cir. 2007) .................................................................................... 11

## **Statutes**

5 U.S.C. § 552............................................................................................................ passim

18 U.S.C. § 798........................................................................................................... 25

50 U.S.C. § 402........................................................................................................... 24

50 U.S.C. § 403-1 ....................................................................................................... 24

50 U.S.C. § 1801......................................................................................................... 4

50 U.S.C. § 1803......................................................................................... 6, 14, 26

50 U.S.C. § 1821......................................................................................................... 4

50 U.S.C. § 1871......................................................................................................... 14

50 U.S.C. § 1881a................................................................................................... passim

Pub. L. No. 95-511, 95th Cong., 2d Sess. (Oct. 25, 1978)………………………………..3

iv

Pub. L. No. 110-261, 110th Cong., 2d Sess. (July 10, 2008)……………………………..3

Pub. L. No. 112-238, 112th Cong., 2d Sess. (Dec. 30, 2012)……………………………..6

**Other Authorities**

75 Fed. Reg. 707 (Dec. 29, 2009) ............................................................ 16, 17, 18, 19, 20

FISC R. P. 62 ...................................................................................................... 6, 14, 26

**INTRODUCTION**

Last summer, in an effort to strike the right balance between government transparency and the protection of critical intelligence activities, the government declassified four statements concerning its activities pursuant to Section 702 of the Foreign Intelligence Surveillance Act ("FISA") Amendments Act of 2008.  Not content with that disclosure, Electronic Frontier Foundation ("EFF" or "Plaintiff") submitted a Freedom of Information Act ("FOIA") request seeking additional information related to two of the declassified statements, specifically, that on at least one occasion the Foreign Intelligence Surveillance Court ("FISC") "held that some collection carried out pursuant to the Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment" and that "on at least one occasion the FISA Court has reached th[e ] conclusion" that "the government's implementation of Section 702 of FISA has sometimes circumvented the spirit of the law."  Notwithstanding that the "government has remedied these concerns and the FISC has continued to approve [] collection [pursuant to Section 702] as consistent with the statute and reasonable under the Fourth Amendment," EFF complains that further information about those statements has not been disclosed.  Thus, EFF invoked FOIA and now this Court's jurisdiction to obtain previously, undisclosed and classified information about the government's intelligence activities under Section 702.  Specifically, Plaintiff seeks any FISC opinions or orders described in the two declassified statements as well as any briefing on such opinions or orders to the Senate Select Committee on Intelligence or the House Permanent Select Committee on Intelligence.  FOIA, however, exempts that information from disclosure and thus is unavailing.

1

Although Plaintiff was advised that two copies of a responsive FISC order were identified, neither could be produced to Plaintiff because the FISC Rules of Procedure prohibit their public disclosure.  That the Department is withholding those copies thus is not "improper" under FOIA because the Department has no discretion in regard to their publication.  As the Supreme Court concluded long ago, "[t]here is nothing in the legislative history to suggest that in adopting the Freedom of Information Act to curb agency discretion to conceal information, Congress intended to require an agency to commit contempt of court in order to release documents."  *GTE Sylvania, Inc. v. Consumers Union of U.S.*, 445 U.S. 375, 387 (1980).  Thus, the Department's compliance with the rules of the FISC is not improper under FOIA, and the disclosure of the responsive FISC orders accordingly cannot be compelled.

Alternatively and independently, their withholding as well as that of the other three responsive records (two in part and one in its entirety) should be upheld pursuant to exemptions (b)(1) and (b)(3).  Plaintiff's request for information related to Section 702 activities necessarily implicates classified intelligence sources and methods that these exemptions shield from public disclosure.  The government has determined that disclosure of the information withheld from Plaintiff could result in exceptionally grave and serious damage to the national security.  Plaintiff obviously cannot contend otherwise.  The Court accordingly should defer to the government's determination in this case, uphold the Department's withholdings, and grant this motion.

## STATUTORY BACKGROUND

Congress enacted the Foreign Intelligence Surveillance Act ("FISA") of 1978 to authorize and establish procedures for "electronic surveillance to obtain foreign intelligence information."  Pub. L. 95-511, 95th Cong., 2d Sess. (Oct. 25, 1978).  In 2008, the Act was amended to include "a new and independent source of intelligence collection authority, beyond that granted in traditional FISA."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1144 (2013); Pub. L. 110-261, 110th Cong, 2d Sess. (July 10, 2008) ("FISA Amendments Act of 2008").  That authority, which is set forth in Section 702, empowers the Attorney General and the Director of National Intelligence to authorize jointly "for a period of up to 1 year from the effective date of the authorization, the targeting of persons reasonably believed to be located outside the United States to acquire foreign intelligence information."  50 U.S.C. § 1881a(a).  Such acquisitions of foreign intelligence information are limited and must not "intentionally target any person known at the time of acquisition to be located in the United States;" "intentionally target a person reasonably believed to be located outside the United States if the purpose of such acquisition is to target a particular, known person reasonably believed to be in the United States;" "intentionally target a United States person reasonably believed to be located outside the United States;" or "intentionally acquire any communication as to which the sender and all intended recipients are known at the time of the acquisition to be located in the United States."  *Id.* § 1881a(b).  In addition, the acquisitions of foreign intelligence authorized by Section 702 "shall be conducted in a manner consistent with the fourth amendment to the Constitution of the United States."  *Id.*

3

Section 702 acquisitions additionally are subject to minimization procedures, targeting procedures, and compliance guidelines adopted by the Attorney General in consultation with the Director of National Intelligence. *See* 50 U.S.C. § 1881a(d)-(f). The minimization procedures are specific measures that, among other things, are "designed in light of the purpose and technique of the particular surveillance, to minimize the acquisition and retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information."[1] 50 U.S.C. § 1801(h)(1). The targeting procedures "ensure that any acquisition authorized under [Section 702] is limited to targeting persons reasonably believed to be located outside the United States" and "prevent the intentional acquisition of any communication as to which the sender and all intended recipients are known at the time of the acquisition to be located in the United States." 50 U.S.C. § 1881a(d)(1)(A), (B). Finally, the required compliance guidelines must ensure "compliance with the limitations [set out in Section 1881a(b)]," and ensure "that an application for a court order is filed as required by this Act." 50 U.S.C. § 1881a(f)(1)(A), (B).

---

[1]   The minimization procedures also should:

(1)   "require that nonpublicly available information, which is not foreign intelligence information . . . not be disseminated in a manner that identifies any United States person, without such person's consent, unless such person's identity is necessary to understand foreign intelligence information or assess its importance;"

(2)   "allow for the retention and dissemination of information that is evidence of a crime which has been, is being, or is about to be committed and that is to be retained or disseminated for law enforcement purposes;" and

(3)   "require that no contents of any communication to which a United States person is a party shall be disclosed, disseminated, or used for any purpose or retained for longer than 72 hours" except upon court order or determination by the Attorney General that the information indicates a threat of death or serious bodily harm to any person.

50 U.S.C. § 1801(h)(2)-(4); *see also* 50 U.S.C. § 1821(4)(A)-(D).

Thus, in general, before Section 702 authorization can be implemented, the Attorney General and the Director of National Intelligence "shall provide to the Foreign Intelligence Surveillance Court" ("FISC") a written certification and any supporting affidavit attesting that all necessary procedures are in place and the required guidelines adopted "consistent with the requirements of the fourth amendment."  50 U.S.C. § 1881a(g)(1)(A), (g)(2)(A)(iv).  The certification additionally must attest that "a significant purpose of the acquisition is to obtain foreign intelligence information" and that "the acquisition involves obtaining foreign intelligence information from or with the assistance of an electronic communication service provider."  *Id.* § 1881a(g)(2)(A)(v)-(vi).

The FISC has jurisdiction to review certifications and targeting and minimization procedures.  That court reviews targeting and minimization procedures to ensure that they comply with all statutory requirements and are consistent with the Fourth Amendment. The FISC reviews Section 702 certifications to ensure that they contain all required elements.  *Id.* § 1881a(i).  If the FISC concludes that a certification "contains all the required elements" and that "the targeting and minimization procedures adopted" satisfy their statutory requirements and are consistent with the Fourth Amendment, that court "shall enter an order approving the certification and the use . . . of the procedures for the acquisition."  *Id.* § 1881a(i)(2)(A).  However, if the FISC determines that the certification is deficient in any respect, the Court "shall issue an order directing the Government to . . . (i) correct any deficiency identified by the Court's order not later than 30 days after the date on which the Court issues the order; or (ii) cease, or not begin, the implementation of the authorization for which [the] certification was submitted."  *Id.* § 1881a(i)(3)(B)(i)-(ii).

A written statement explaining the reasons for the FISC's determination shall issue simultaneously with the order.  Neither the statement nor the order can be released publicly except upon the order of the FISC.  *See* FISC Rules of Procedure ("FISC R. P.") 62(b); *see also* 50 U.S.C. § 1803(c).

No targeting pursuant to Section 702 can commence except upon an order of the FISC or a determination by the Attorney General and the Director of the National Intelligence that "exigent circumstances exist" that do not permit "the issuance of an order" and that "without immediate implementation of [the Section 702] authorization . . . intelligence important to the national security of the United States may be lost or not timely acquired."  *Id.* § 1881a(c)(2).  In the event Section 702 authorization is based on such a determination, the Attorney General and the Director of National Intelligence "shall submit to the [FISC] a certification for authorization as soon as practicable but in no event later than 7 days after such determination is made."  50 U.S.C. § 1881a(g)(1)(B).

Although Section 702 was scheduled to sunset at the end of 2012, Congress extended the FISA Amendments Act of 2008 for another five years or until December 31, 2017.  *See* Pub. L. No. 112-238, 112th Cong., 2d Sess. (Dec. 30, 2012).  In advance of Congress's reauthorization decision and at the request of Senator Ron Wyden, the Office of the Director of National Intelligence declassified the following statements concerning the government's surveillance activities pursuant to Section 702:

(1) A recent unclassified report noted that the Foreign Intelligence Surveillance Court has repeatedly held that collection carried out pursuant to the FISA Section 702 minimization procedures used by the government is reasonable under the Fourth Amendment.

(2) It is also true that on at least one occasion the Foreign Intelligence Surveillance Court held that some collection carried out pursuant to the

Section 702 minimization procedures used by the government was
unreasonable under the Fourth Amendment.

(3) [According to Senator Wyden,] the government's implementation of Section
702 of FISA has sometimes circumvented the spirit of the law, and on at least
one occasion the FISA Court has reached this same conclusion.

(4) The government has remedied these concerns and the FISC has continued to
approve the collection as consistent with the statute and reasonable under the
Fourth Amendment.

*See* Declaration of Mark A. Bradley ("Bradley Decl.") Ex. A (Letter Dated July 20, 2012

to Hon. Ron Wyden), filed herewith.  Other details concerning the government's

intelligence activities pursuant to Section 702 remain classified.  *See generally* Bradley

Decl. and Declaration of Diane M. Janosek ("Janosek Decl."), filed herewith.

## STATEMENT OF FACTS

By letter dated July 26, 2012, Plaintiff submitted a FOIA request to the

Department of Justice National Security Division ("NSD") seeking records related to

certain of the declassified statements concerning the government's surveillance activities

pursuant to Section 702.  *See* Bradley Decl. Ex. A (EFF's FOIA Request).  Specifically,

EFF requested the following records:

(1) Any written opinion or order, as described in the statement quoted above, in
which "the Foreign Intelligence Surveillance Court held that some collection
carried out pursuant to the Section 702 minimization procedures used by the
government was unreasonable under the Fourth Amendment";

(2) Any written opinion or order, as described in the statement quoted above,
reflecting or concerning a FISC determination that "the government's
implementation of Section 702 of FISA has sometimes circumvented the spirit
of the law"; and

(3) Any briefing provided to the Senate Select Committee on Intelligence or the
House Permanent Select Committee on Intelligence concerning the FISC
opinions or orders, described in items (1) and (2) above.

7

*Id.*  EFF additionally requested expedited processing of its request and a waiver of the

associated processing fees.  *See id.*  NSD acknowledged receipt of EFF's FOIA request

by email dated August 13, 2012.  Therein, NSD explained that its policy is to process

FOIA requests on a first-in, first-out basis and that, consistent with that policy, NSD

would make every effort to respond as quickly as possible.  Nevertheless, EFF filed this

action on August 30, 2012 challenging the Department's failure to process its FOIA

request within the twenty-day, statutory time period.  *See* Compl. for Inj. Relief at 5,

Aug. 30, 2012, ECF No. 1.

The Department continued to process EFF's request.  By email dated September

5, 2012, the Department advised EFF that its request for a fee waiver had been granted

but that its request for expedited processing had been denied.  After answering the

Complaint in this action, the Department advised the Court that it anticipated needing

until December 5, 2012 to complete processing Plaintiff's request.  *See* Def.'s Status

Rpt., Oct. 31, 2012, ECF No. 6.  The Department subsequently revised that date and

advised the Court that processing would not be completed until January 2013 because of

NSD's need to consult with additional government offices.  *See* Def.'s Status Rpt., Dec.

5, 2012, ECF No. 7.  By letter dated January 3, 2013, NSD informed Plaintiff that five

documents responsive to its request had been located, (Bradley Decl. Ex. B):

> (1) a FISC order responsive to Item 1 of Plaintiff's FOIA request
> ("Document A");
>
> (2) the redacted copy of the same FISC order that was provided to
> Congress pursuant to 50 U.S.C. § 1871 ("Document B");
>
> (3) a classified white paper prepared for Congress, only one paragraph of
> which is responsive to Plaintiff's FOIA request ("Document C");

(4) a Joint Statement Before the Permanent Select Committee on Intelligence, United States House of Representatives ("Document D"), one section of which is responsive to Plaintiff's FOIA request; and

(5) a Joint Statement Before the Senate Select Committee on Intelligence, one section of which is responsive to Plaintiff's FOIA request ("Document E").

*See* Bradley Decl. ¶ 5 & Ex. B; *see also* Def.'s Statement of Material Facts ("Def. SOMF") ¶ 3, filed herewith.  The Department is withholding Document C in full pursuant to FOIA exemptions (b)(1) and (b)(3), and Documents A and B in full pursuant to the FISC Rules of Procedure as well as those exemptions.  *See* Bradley Decl. ¶¶ 11 & 12.  Documents D and E were segregable and accordingly redacted and produced to Plaintiff.  *See* Bradley Decl. ¶ 5 & Ex. B.  The information the Department continues to withhold from those documents is exempt under (b)(1) and (b)(3).

The Department now moves for summary judgment and an order upholding the government's withholdings.

## ARGUMENT

FOIA represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'"  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted).  While FOIA generally requires agency disclosure, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused."  *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also* 5 U.S.C. § 552(b).  Although these exemptions should be "narrowly construed," (*Abramson*, 456 U.S. at 630), they should be given "meaningful reach and application," (*John Doe*, 493 U.S. at 152).  The Act "confers jurisdiction on the district courts 'to enjoin the agency from withholding agency

9

records and to order the production of any agency records improperly withheld.'" *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *see also* 5 U.S.C. § 552(a)(4)(B).

An agency is entitled to summary judgment when, as here, "the agency demonstrates that it has fully discharged its obligations under FOIA." *Wilbur v. CIA*, 273 F. Supp. 2d 119, 124 (D.D.C. 2003). "In determining whether the agency has satisfied this burden, the Court may rely solely on agency affidavits," (*Grove v. Department of Justice*, 802 F. Supp. 506, 509 (D.D.C. 1992) (internal citations omitted)), and should award summary judgment "solely on the basis of information provided by the agency in declarations," (*Darui v. United States Dep't of State*, 798 F. Supp. 2d 32, 37 (D.D.C. 2011)). Such declarations should "describe 'the [responsive] documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Mack v. Department of Navy*, 259 F. Supp. 2d. 99, 104 (D.D.C. 2003); *see also Wheeler v. CIA*, 271 F. Supp. 2d 132, 136 (D.D.C. 2003).

Unless the declarations are "deficient, the court need not conduct further inquiry into their veracity." *Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F. Supp. 2d 41, 45 (D.D.C. 2001). Rather, they "enjoy a presumption of good faith, which may not be rebutted by purely speculative claims." *Mack v. Department of Navy*, 259 F. Supp. 2d. 99, 105 (D.D.C. 2003) (internal quotations omitted). That is especially true in cases implicating, as here, national security concerns. Courts in such cases "have consistently deferred to executive affidavits predicting harm to the national security, and have found it

unwise to undertake searching judicial review." *Center for Nat'l Sec. Studies v. United States Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003); *ACLU v. United States Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (noting that courts "'must accord substantial weight to an agency's affidavit concerning the details of the classified status of [a] disputed record" because they "'lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case'"); *see also Wolf v. CIA*, 473 F.3d 370, 375 (D.C. Cir. 2007); *Krikorian v. Department of State*, 984 F.2d 461, 464 (D.C. Cir. 1993). Affording such deference to the Declarations of Mark A. Bradley and Diane M. Janosek, the Court should uphold the Department's actions in this case and enter judgment in favor of the government.[2] *See* Bradley Decl. ¶¶ 2-12; Janosek Decl. ¶¶ 2-26; *see also generally* Def. SOMF.

I.  **THE DEPARTMENT IS NOT "IMPROPERLY" WITHHOLDING ORDERS OF THE FISC.**

This Court does not have jurisdiction to enjoin the Department's withholding of opinions and orders of the FISC. FOIA confers jurisdiction only "to order the production of any agency records *improperly* withheld." *GTE Sylvania*, 445 U.S. at 384 (internal quotations omitted; emphasis added); 5 U.S.C. § 552(a)(4)(B). Although the Act does not define "improperly," the term's meaning is well understood from FOIA's legislative history. That history makes clear that "Congress was largely concerned with the unjustified suppression of information by agency officials. Federal employees were denying requests for documents without an adequate basis for nondisclosure, and

---

[2]  As evident from their titles, Documents C, D, and E go well beyond the scope of the particular, discrete information Plaintiff requested and thus their non-responsive sections were withheld as such from Plaintiff. Although the arguments herein are equally applicable to the non-responsive sections, (*see* Janosek Decl. ¶ 3 n.1), any further discussion of that information would necessitate the filing of a classified, *ex parte*, *in camera* declaration.

Congress wanted to curb this apparently unbridled discretion." *GTE Sylvania*, 445 U.S. at 385 (internal citations omitted). Congress thus decided to give federal district courts jurisdiction to order the production of "improperly" withheld records. That jurisdiction assumes "the typical FOIA case, where the agency decides for itself whether to comply with a request for agency records." *Tax Analysts*, 492 U.S. at 155 (internal citation omitted). When, as here, there is "no discretion [in that regard] for the agency to exercise," the withholding of requested documents is not "improper" and therefore cannot be compelled under FOIA. *See GTE Sylvania*, 445 U.S. at 386. Thus, in *GTE Sylvania*, the Supreme Court held that an agency had not "improperly" withheld records whose disclosure was prohibited by a court injunction. The Supreme Court explained that "[t]o construe the [agency's] lawful obedience of an injunction issued by a federal district court with jurisdiction to enter such a decree as 'improperly' withholding documents under the Freedom of Information Act would do violence to the common understanding of the term 'improperly' and would extend the Act well beyond the intent of Congress." *Id.* at 387.

The rationale of *GTE Sylvania* has been extended outside its particular, factual context to other types of court-imposed prohibitions (e.g. sealing orders). *See Tax Analysts*, 492 U.S. at 155 (suggesting that *GTE Sylvania*'s reasoning is implicated in cases where the agency has "no discretion . . . to exercise"); *see also Senate of Commonwealth of P.R. v. United States Dep't of Justice*, 1993 WL 364696, at *6 (D.D.C. Aug. 24, 1993) ("The Supreme Court has held that records covered by an injunction, protective order, or held under court seal are not subject to disclosure under FOIA." (internal citation omitted)). The proper test for determining whether an agency

improperly withholds records subject to such a restriction is whether, like an injunction, it "*prohibits* the agency from disclosing the records." *Morgan v. United States Dep't of Justice*, 923 F.2d 195, 197 (D.C. Cir. 1991) (emphasis in original). An agency can make that showing by reference to (1) the court order itself; (2) extrinsic evidence, such as transcripts and papers filed with the order; (3) orders of the same court in similar cases that explain the purpose for the imposition of the order; or (4) the court's general rules or procedures. *Id.* at 198. If the order prohibits the agency from releasing the information, the agency is entitled to summary judgment in the FOIA case seeking that information. *See, e.g., Morgan*, 923 F.2d at 198 ("If the district court finds that the sealing order does prohibit the DOJ from releasing the notes, the DOJ is entitled to summary judgment; and, as long as the seal remains in effect, neither [plaintiff] nor any other member of the public may obtain the notes").

These same considerations compel the determination that the Department is not "improperly" withholding Documents A and B, the FISC orders responsive to Plaintiff's FOIA request. Indeed, that determination necessarily follows from the unique nature and history of the FISC:

> Its entire docket relates to the collection of foreign intelligence by the federal government. The applications submitted to it by the government are classified, as are the overwhelming majority of the FISC's orders. Court sessions are held behind closed doors in a secure facility, and [virtually] every proceeding in its history . . . has been ex parte, with the government the only party. In the entire history of the FISC [only a few] opinions have been publicly released. . . . [T]he FISC operates primarily in secret, with public access the exception.

*In re Mot. for Rel. of Court Records*, 526 F. Supp. 2d 484, 487-88 (FISC Dec. 11, 2007). Thus a "comprehensive scheme" consisting of statutorily mandated security procedures, court rules, and provisions of the FISA (as amended) govern the "safeguarding and

handling of FISC proceedings and records." *Id.* at 488. FISC opinions and orders are

subject to strict security procedures set forth in the FISC Rules of Procedure. *See* 50

U.S.C. § 1803(c) (providing that "record[s] of proceedings under this chapter, including

applications made and orders granted, shall be maintained under security measures

established by the Chief Justice in consultation with the Attorney General and the

Director of National Intelligence"); *see also* Bradley Decl. ¶¶ 7, 11. Notwithstanding

that, by statute, the Attorney General as part of his reporting obligations to Congress is

authorized to provide copies of FISC opinions to Congress, (*see* 50 U.S.C. § 1871(c)(1)),

the FISC Rules of Procedure require that the government "contemporaneously notify the

Court in writing whenever it provides copies of Court records to Congress and must

include in the notice a list of the documents provided." FISC R. P. 62(c)(1). Otherwise,

the FISC Rules of Procedure do not authorize the release of court opinions by the

Department. *See* FISC R. P. 62. Rather, opinions may be released publicly only if

ordered published *sua sponte* by the authoring judge or upon motion by a party

requesting publication:

> The Judge who authored an order, opinion, or other decision may sua sponte
> or on motion by a party request that it be published. Upon such a request, the
> Presiding Judge, after consulting with other Judges of the Court, may direct
> that an order, opinion or other decision be published. Before publication, the
> Court may, as appropriate, direct the Executive Branch to review the order,
> opinion, or other decision and redact it as necessary to ensure that the
> properly classified information is appropriately protected pursuant to
> Executive Order 13526 (or its successor).

FISC R. P. 62(a); *see also In re Mot.*, 526 F. Supp. 2d at 487 (noting that "it would be

quite odd if the FISC did not have jurisdiction in the first instance to adjudicate a claim of

right to the court's very own records and files").

14

The Department has identified two copies of the same FISC order – Documents A and B – as responsive to Plaintiff's request for "[a]ny written opinion or order . . . in which 'the Foreign Intelligence Surveillance Court held that some collection carried out pursuant to Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment'" or that "reflect[ed] or concern[ed] a FISC determination that 'the government's implementation of Section 702 of FISA has sometimes circumvented the spirit of the law.'"  Bradley Decl. Ex. A at 2; Bradley Decl. ¶ 5 (describing Documents A and B as "FISC order[s]").  Pursuant to the FISC Rules of Procedure, the Department is prohibited from disclosing either publicly.  *See* FISC R. P. 62; *see also* Bradley Decl. ¶ 7.  Moreover, neither Document A nor Document B has been ordered published by the issuing judge.  *See* Bradley Decl. ¶ 7.  Thus, the circumstances here are clearly as in *GTE Sylvania*:  the Department has no discretion over the release of FISC orders and accordingly is not "improperly" withholding Documents A and B.[3]  The Department therefore is entitled to summary judgment as to that withholding.

## II.     THE COURT SHOULD UPHOLD THE DEPARTMENT'S WITHHOLDINGS UNDER EXEMPTION (B)(1).

Alternatively, and independently, the Court should uphold the Department's withholding of Documents A and B, as well as the three other withheld documents, pursuant to exemption (b)(1).  The Department has invoked exemption (b)(1) to protect information properly classified pursuant to Executive Order 13526.  This exemption protects records that are: "(A) specifically authorized under criteria established by an

---

[3]   The Department, moreover, is not obligated under FOIA to commence proceedings in the FISC to request the publication of orders responsive to FOIA requests.  The Supreme Court has long recognized that, in enacting FOIA, Congress "was operating under the assumption that agencies would not be obligated to file lawsuits in order to comply with FOIA requests."  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 153 (1980).

Executive order to be kept secret in the interest of national defense or foreign policy, and (B) are in fact properly classified pursuant to such Executive order." *See* 5 U.S.C. § 552 (b)(1).  Exemption (b)(1) thus "establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by executive order." *Military Audit Project v. Casey*, 656 F.2d 724, 737 (D.C. Cir. 1981).  An agency can demonstrate that it has properly withheld information under exemption (b)(1) if it establishes that it has met the requirements of the applicable Executive Order.  Substantively, the agency must show that the records at issue logically fall within the exemption, i.e., the Executive Order authorizes the classification of the information at issue.  Procedurally, the agency must demonstrate that it followed the proper procedures in classifying the information.  *See Salisbury v. United States*, 690 F.2d 966, 970-73 (D.C. Cir. 1982); *Military Audit Project*, 656 F.2d at 737-38.  An agency that demonstrates substantive and procedural compliance with an applicable Executive Order is entitled to summary judgment.  *See Abbotts v. Nuclear Regulatory Comm'n*, 766 F.2d 604, 606-08 (D.C. Cir. 1985).  Here that order is Executive Order No. 13526, "Classified National Security Information."  Under Section 1.1(a) of that order, information may be classified if:

> (1) an original classification authority is classifying the information;
>
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
>
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

75 Fed. Reg. 707, 707 (Dec. 29, 2009) ("Executive Order No. 13526").  As demonstrated by the Declarations Mark A. Bradley and Diane M. Janosek, these conditions are met by the information over which exemption (b)(1) was asserted.  *See* Bradley Decl. ¶¶ 6, 8-9; Janosek Decl. ¶¶ 3, 13-18; Def. SOMF ¶¶ 7, 8, 11.

> **A.    An Original Classification Authority Has Properly Classified the Information Withheld From Plaintiff as Exempt Under (b)(1).**

Mr. Bradley and Ms. Janosek have original classification authority and have determined that the information withheld pursuant to exemption (b)(1) from the five documents at issue is properly classified.  *See* Bradley Decl. ¶¶ 1, 6, 8-11; Janosek Decl. ¶¶ 2, 3, 13-18.  Section 1.3(a) of Executive Order 13526 provides that the authority to classify information "may be exercised . . . [by] United States Government officials delegated this authority pursuant to [section 1.3(c)]."  75 Fed. Reg. at 708.  Section 1.3(c)(2) provides that "'Top Secret' original classification authority may be delegated only by the President, the Vice President, or an agency head or official designated pursuant to [section 1.3(a)(2)]."  75 Fed. Reg. at 708.  Pursuant to a written delegation authority, Mr. Bradley "hold[s] original classification authority at the TOP SECRET level" and thus is "authorized [] to conduct classification reviews and to make original classification and declassification decisions."  Bradley Decl. ¶ 2.  Likewise, Ms. Janosek has TOP SECRET classification authority pursuant to Section 1.3 of Executive Order of 13526.  *See* Janosek Decl. ¶ 2.

Moreover, as to all information over which the Department asserted exemption (b)(1), Mr. Bradley and Ms. Janosek have examined the information and determined that the information is currently and properly classified under Executive Order 13526.  *See* Bradley Decl. ¶ 8 ("I have examined documents A and B, and I have determined that both

documents are currently and properly classified under Executive Order 13526"); *id.* ¶ 9 (noting that "the withheld material in documents A and B is classified at the TOP SECRET level"); Janosek Decl. ¶ 9 (noting that "[a]ll responsive information withheld in the two Joint Statements (the 'Recent FISC Opinion' sections) . . . is currently and properly classified TOP SECRET//SI/NOFORN"); *id. ¶* 9 (noting that "the one responsive paragraph in the white paper withheld . . . is classified TOP SECRET//SI//NOFORN"); *see also* Janosek Decl. ¶ 3. Thus, condition (1) of Executive Order 13526 is satisfied by the information withheld from Plaintiff.

**B.     All of the Information Withheld Pursuant to Exemption (b)(1) is Government Information.**

The second condition of Executive Order 13526 is also met by the information over which the Department has asserted exemption (b)(1). *See* 75 Fed. Reg. at 707 (requiring that information originally classified under Executive Order 13526 be "owned by, produced by or for, or [be] under the control of the United States Government"). That information is owned by, was produced by, and is under the control of the United States Government. *See* Bradley Decl. ¶ 8 (declaring that the classified information in Documents A and B is "'owned by, produced by or for, or under the control of the United States government,' as required by E.O. 13526"); Janosek Decl. ¶ 15 (declaring that the two Joint Statements and white paper "originated with NSA and/or contain[] NSA equities").

**C.     All of the Information Withheld Pursuant to Exemption (b)(1) Is Within a Category Identified in Section 1.4 of Executive Order No. 13526.**

The information over which the Department has asserted exemption (b)(1) satisfies the third condition of Executive Order 13526. *See* 75 Fed. Reg. at 707 (requiring

that information originally classified under this order be within a category identified in section 1.4).  Section 1.4's categories include information concerning "intelligence activities (including covert action), intelligence sources or methods or cryptology" and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to national security." *Id.* at 709.  The information over which the Department has asserted exemption (b)(1) concerns these subjects. *See* Bradley Decl. ¶ 8 (declaring that "the withheld information contained in [Documents A and B] meets the criteria for classification as set forth in subparagraphs (c) and (g) of Section 1.4 of Executive Order 13526"); *see also id.* ¶ 9.  As to Documents A and B, the "withheld material contains specific descriptions of the manner and means by which the United States Government targets non-United States persons located overseas to acquire foreign intelligence information under Section 702."  Bradley Decl. ¶ 9; *see also* Janosek Decl. ¶ 14.

Documents C, D, and E, to the extent they are responsive to Plaintiff's request, likewise concern categories "found in Section 1.4(c), which includes intelligence activities (including covert action), intelligence sources and methods, or cryptology" and in  "Section 1.4(g), which include vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security." *See id*.  Specifically, "[t]he information withheld in the two Joint Statements and white paper pertains to operational details of NSA's collection activities under Section 702." *Id*. ¶ 16.  Such information clearly satisfies the substantive requirements of Executive Order 13526.

**D.**   **The Unauthorized Disclosure of the Information Withheld Under Exemption (b)(1) Reasonably Could Be Expected to Damage National Security.**

Notwithstanding that the government has declassified certain information related to the government's surveillance activities pursuant to Section 702, (*see* Bradley Decl. ¶ 8), other information continues to be classified at the TOP SECRET-SENSITIVE COMPARTMENTED INFORMATION and SECRET levels, including the information in the five documents withheld from Plaintiff.  *See* Bradley Decl. ¶ 9; Janosek Decl. ¶ 15. That information consists of previously undisclosed and classified information that if disclosed could be expected to cause exceptionally grave and serious damage to the national security of the United States.  *See* Bradley Decl. ¶¶ 8 & 9; Janosek Decl. ¶ 15. The D.C. Circuit has recognized that "[m]inor details of intelligence information may reveal more information than their apparent insignificance suggests because much like a piece of jigsaw puzzle, each detail may aid in piecing together other bits of information even when the individual piece is not of obvious importance itself."  *Larson v. Department of State*, 565 F.3d 857, 864 (D.C. Cir. 2009) (internal quotations and citations omitted); *ACLU v. Department of Justice*, 681 F.3d 61, 71 (2d Cir. 2012) (same); *see also ACLU v. CIA*, 2012 WL 4356338, at *11 (D.D.C., Sept. 25, 2012). Thus, the government's declassification of four statements concerning activities pursuant to Section 702 does not suggest anything about the harm that could result from the disclosure of the previously undisclosed information at issue in this case.

The fourth condition of information classified pursuant to Executive Order 13526 requires, as here, that "the original classification authority determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security."  75 Fed. Reg. at 707.  Recognizing that national security

is a uniquely executive purview, courts typically defer to such an agency determination. *Center for Nat'l Sec. Studies*, 331 F.3d at 927 ("[I]n the FOIA context, we have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review."); *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977) ("Few judges have the skill or experience to weigh the repercussions of disclosure of intelligence information."); *see also Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) ("Judges . . . lack the expertise necessary to second-guess [] agency opinions in the typical national security FOIA case").  Thus, the Court should defer here to Mr. Bradley's and Ms. Janosek's assessments of the likely repercussions to the national security from disclosure of the information withheld pursuant to exemption (b)(1).

In his declaration, Mr. Bradley explains that Documents A and B "contain[] specific descriptions of the manner and means by which the United States Government targets non-United States persons located overseas to acquire intelligence information under Section 702."  Bradley Decl. ¶ 9.  As such, "the withheld information describes highly sensitive intelligence activities, sources and methods.  *Id.*  According to Mr. Bradley, "exceptionally grave damage" to the national security could attend the disclosure of this information.  *Id.*  Specifically, such disclosure would provide "our adversaries and foreign intelligence targets with insight into the United States Government's foreign intelligence collection capabilities, which in turn could be used to develop the means to degrade and evade those collection capabilities."  *Id.*; *see also* Janosek Decl. ¶ 11 (concurring that exemption (b)(1) applies to Documents A and B).

Similar harms reasonably could attend the public disclosure of the withheld information from Documents C, D, and E.  According to Ms. Janosek, "[t]he disclosure of NSA's ability or lack of ability to collect intelligence under the [FISA Amendments Act] would reveal information about the U.S. Intelligence Community's capabilities, priorities, and activities."  Janosek Decl. ¶ 16.  Such information "could reasonably be expected to cause exceptionally grave damage to the national security because it would provide our nation's adversaries information about the nature and frequency of the Government's use of specific techniques that could assist them in undermining the NSA's and the Intelligence Community's national security mission."  *Id.*  Targeted individuals and foreign nationals moreover could frustrate the government's collection of information "by using different communications techniques" or "utilizing a different communications link or facility" thereby "result[ing] in a loss of access to information crucial to the national security and defense of the United States."  Janosek Decl. ¶ 17; *see also id.* ¶ 8 (noting that targets "if they learn or suspect that their signals are or may be targeted by the NSA for collection, can take steps to evade detections, to manipulate the information that NSA receives, or to implement countermeasures aimed at undermining NSA's operations").  The last condition for classification under Executive Order 13526 therefore clearly is satisfied by each withheld document.  Because the information withheld here satisfies all four conditions of that order, it is exempt under (b)(1).

## III.    THE COURT SHOULD UPHOLD THE DEPARTMENT'S WITHHOLDINGS UNDER EXEMPTION (B)(3).

Although the Court need not reach the Department's exemption (b)(3) argument, that exemption too is dispositive of this case.  Exemption (b)(3) exempts from FOIA information whose disclosure is prohibited by *another* statute, if that statute either:  (A)

22

"requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue;" or (B) "establishes a particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A)(i)-(ii).  This other statute "must, on its face, exempt matters from disclosure."  *Reporters Comm. for Freedom of Press v. Department of Justice*, 816 F.2d 730, 735 (D.C. Cir.), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989); *see also Essential Info., Inc. v. USIA*, 134 F.3d 1165, 1168 (D.C. Cir. 1998) (noting that a statute that prohibits "dissemination" and "distribution" of certain information within the United States qualifies as an exemption (b)(3) "nondisclosure" statute).  Unlike the requirements for exemption (b)(1), exemption (b)(3) does not require the government to demonstrate harm to the national security.  Exemption (b)(3)'s "applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage."  *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 761-62 (D.C. Cir. 1990) (same).  Here again, deference to the agency's determination that withheld material is within the coverage of an exemption (b)(3) statute is appropriate.  *See Reporters Comm.*, 816 F.2d at 735 n.5 (noting that "it may be proper to give deference to an agency's interpretation of what matters are covered by a statute, once the court is satisfied that the statute is in fact an Exemption 3 withholding statute"); *see also CIA v. Sims*, 471 U.S. 159, 179 (1985) (noting that "decisions of the Director [of the CIA], who must of course be familiar with 'the whole picture,' as judges are not, are worthy of great deference given the magnitude of the national security interests and potential risks at stake"); *Halperin*, 629 F.2d at 148.

Three such statutes clearly are implicated by the information withheld from Plaintiff.  First, Section 102A(i)(1) of the National Security Act of 1947 "protect[s] intelligence sources and methods from unauthorized disclosure," (50 U.S.C. § 403-1(i)(1)), and thus "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue."  5 U.S.C. § 552(b)(3)(A)(i).  As such, the National Security Act of 1947 is an exemption (b)(3) statute.  Because Documents A and B "contain[] intelligence sources and method[s]," both are within the scope of that Act's coverage and thus "protected from release by the National Security Act."  Bradley Decl. ¶ 10; *see also* Janosek Decl. ¶ 11.  Documents C, D, and E also concern intelligence sources and methods and therefore are within that same protection.  *See* Janosek Decl. ¶ 19.

Second, the National Security Agency Act of 1959, which contains a statutory privilege unique to NSA, provides that "[n]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, [or] of any information with respect to the activities thereof."  50 U.S.C. § 402 note; *see also* Janosek Decl. ¶ 20.  This language thus provides absolute protection from disclosure of *any* information concerning NSA activities.  *Linder v. NSA*, 94 F.3d 693, 696 (D.C. Cir. 1996); *Hayden v. NSA*, 608 F.2d 1381, 1389 (D.C. Cir. 1979); *see also* Janosek Decl. ¶ 20.  Accordingly, because the responsive information from Documents C, D, and E "pertains to operational details of the NSA's collection activities under Section 702," (Janosek Decl. ¶ 16), it is within that protection and cannot be compelled here.  Documents A and B, which also contain NSA equities, likewise are subject to that absolute protection.  *See* Janosek Decl. ¶ 11.

24

Third, 18 U.S.C. § 798 prohibits the unauthorized disclosure of classified information concerning communications intelligence activities of the United States or obtained by the process of communication intelligence derived from the communications of any foreign government.  *See* Janosek Decl. ¶ 21.  The term "communications intelligence" encompasses "all procedures and methods used in the interception of communications and the obtaining of information from such communications by other than the intended recipients."  *Id.*  Because the information withheld from Documents C, D, and E satisfy those criteria, that information is prohibited from disclosure by 18 U.S.C. § 798.  *See* Janosek Decl. ¶ 24.  The same is true of Documents A and B.  *See* Janosek Decl. ¶ 11.  Thus, any one of the three statutes is basis to uphold the Department's withholdings, alternatively and independently, pursuant to exemption (b)(3).

## IV.   THE DEPARTMENT SATISFIED FOIA'S SEGREGABILITY REQUIREMENT.

The Department's withholding of Documents A, B, and C in their entirety and Documents D and E in part complies with FOIA's segregability requirement.  FOIA "requires that '[a]ny reasonably segregable portion of a record [] be provided to any person requesting such record after deletion of the portions which are exempt."  *Juarez v. United States Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008).  The agency "bears the burden of demonstrating that no reasonably segregable material exists in the withheld documents."  *Soghoian v. United States Dep't of Justice*, 885 F. Supp. 2d 62, 76 (D.D.C. 2012) (citation omitted).  "With the segregability analysis, as with the exemption analyses, the Court affords government affidavits a rebuttable presumption of good faith, and may rely on those affidavits so long as they show 'with reasonable specificity' why

withheld information cannot be further segregated." *ACLU v. CIA*, 2012 WL 4356338, at *13 (citation omitted).  The declarations filed herewith clearly make the requisite showing.

### A. Documents A and B Cannot Be "Reasonably" Segregated Because the FISC Controls the Publication of Its Orders.

Documents A and B are not "reasonably" segregable for the same reasons their withholding by the Department is not "improper."  *See* Part I, *supra*.  Unlike in the typical FOIA case, the Department does not have the discretion to produce any of the responsive FISC orders to Plaintiff.  *See Tax Analysts*, 492 U.S. at 155 (noting that in "the typical FOIA case . . . the agency decides for itself whether to comply with a request for agency records" (internal citation omitted)).  Pursuant to the FISC Rules of Procedure, such court records cannot be published "without a Court order."  FISC R. P. 62(b); *see also* 50 U.S.C. § 1803(c).  The judge who issued the FISC order at issue did not *sua sponte* decide to publish it.  *See* Bradley Decl. ¶ 7 ("To date, the FISC has not issued any orders releasing this opinion, and FISC rules prohibit the release of any portion of the opinion without a FISC order.").  Although the FISC Rules of Procedure provide for publication "on motion by a party," (FISC R. P. 62(a)), FOIA clearly does not require agencies to commence judicial proceedings to comply with its statutory requirements.  *See Kissinger*, 445 U.S. at 153 (concluding that the statutory time periods for searching and collecting under FOIA make clear that Congress "was operating under the assumption that agencies would not be obligated to file lawsuits in order to comply with FOIA requests").  Thus, Documents A and B cannot be reasonably segregated, and their withholding in full should be upheld.

**B.    The Department Has Complied with FOIA's Segregability Requirement as to the Congressional Briefings Responsive to Plaintiff's FOIA Request.**

The Department segregated and produced all non-exempt, responsive portions of Documents D and E and determined that the one responsive paragraph in Document C could not be segregated.  FOIA requires that "[a]ny reasonably segregable portion of a record [] be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b)(9).  As demonstrated by the Bradley Declaration, the Department carefully reviewed Documents C, D, and E, even specifying what proportion of those classified documents was responsive to Plaintiff's request.  *See* Bradley Decl. ¶¶ 5, 11.  After deletion of the exempt material from their responsive sections, the Department was able to, and did produce, the title page, one heading, and one paragraph from Documents D and E.  *See id.* ¶ 5; *see also* Bradley Decl. Ex. B. Document C, however, contained only a single responsive paragraph that did not contain any segregable, non-exempt information.  *See* Bradley Decl. ¶ 12; *see also* Janosek Decl. ¶¶ 9-12.  The Department therefore complied with FOIA's segregability requirement, and accordingly is entitled to judgment in its favor.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant this motion and enter judgment in favor of the Department of Justice.

27

Dated:  April 1, 2013                    Respectfully submitted,

                                         STUART F. DELERY
                                         Acting Assistant Attorney General

                                         JOHN R. TYLER
                                         Assistant Branch Director
                                         Civil Division

                                         /s/ Jacqueline Coleman Snead
                                         JACQUELINE COLEMAN SNEAD (D.C. Bar
                                         459548)
                                         Senior Counsel
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         20 Massachusetts Ave, NW
                                         Washington, D.C.  20530
                                         Telephone:  (202) 514-3418
                                         Fax:  (202) 616-8470
                                         E-mail: Jacqueline.Snead@usdoj.gov

                                         **Counsel for the Department of Justice**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | | |
|---|---|---|
| ELECTRONIC FRONTIER | ) | |
| FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1441-ABJ |
| | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

**PROPOSED ORDER**

Upon consideration of the Department of Justice's Motion for Summary

Judgment, the opposition thereto, and the complete record in the case, it is hereby

ORDERED that the Department's motion is GRANTED.  Judgment is entered in

favor of the Department of Justice.

SO ORDERED.

Date: _____          _____
                                        United States District Court Judge