**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 12-1441-ABJ |
| DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) ) | |

## DECLARATION OF MARK A. BRADLEY

I, Mark A. Bradley, do hereby state and declare as follows:

1.      I am the Director of the Freedom of Information Act ("FOIA") and Declassification Unit of the Office of Law and Policy in the National Security Division ("NSD") of the United States Department of Justice ("DOJ" or "Department").  NSD is a component of the Department.

2.      In addition, under a written delegation of authority pursuant to section 1.3.(c) of Executive Order 13526, I hold original classification authority at the TOP SECRET level.  I am authorized, therefore, to conduct classification reviews and to make original classification and declassification decisions.

3.      I submit this declaration in support of DOJ's Motion for Summary Judgment in the above-captioned case.  I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties.

## PLAINTIFF'S REQUEST

4.      By letter dated July 26, 2012, plaintiff, the Electronic Frontier Foundation

("EFF"), requested the following:

>    1.      Any written opinion or order, … in which "the Foreign Intelligence
>            Surveillance Court held that some collection carried out pursuant to the
>            Section 702 minimization procedures used by the government was
>            unreasonable under the Fourth Amendment";
>
>    2.      Any written opinion or order, … reflecting or concerning a FISC
>            determination that "the government's implementation of Section 702 of
>            FISA has sometimes circumvented the spirit of the law"; and,
>
>    3.      Any briefing provided to the Senate Select Committee on Intelligence or
>            the House Permanent Select Committee on Intelligence concerning the
>            FISC opinions or orders, described in items (1) and (2) above.

The NSD FOIA unit assigned this request number 12-219. This request is attached as Exhibit A.

## NSD'S RESPONSE TO PLAINTIFF'S REQUEST

5.      In a letter dated January 3, 2013, NSD FOIA informed EFF that it had searched

the files of the Office of the Assistant Attorney General ("OAAG") for NSD and the files of

NSD's OI and located five responsive records. The five responsive records are:

>    (A)     FISC order dated October 3, 2011, totaling 86 pages[1], and responsive to items 1
>            and 2 of plaintiff's request. This document was withheld in full pursuant to FOIA
>            Exemptions (b)(1) and (b)(3).
>
>    (B)     Redacted version of document A which was produced to Congress pursuant to the
>            Foreign Intelligence Surveillance Act ("FISA"). Highly sensitive information
>            was redacted from this version of the order, but this version still contains
>            information classified at the TOP SECRET level. This document was withheld in

---

[1] Based on the particular circumstances presented in this case, I have determined that revealing the date and length of the FISC opinion identified above and at issue in this case would not compromise national security. However, similar information may be classified as to other FISC opinions where disclosure of the date or length of an opinion, either in isolation or in conjunction with other information that might be available to the public or to persons subject to intelligence collection, might tend to reveal classified national security information, including information concerning the timing or nature of intelligence activities. For example, in certain settings, the date or length of a FISC opinion might assist a sophisticated adversary in deducing particular intelligence activities or sources and methods, and possibly lead to the use of countermeasures that may deprive the United States of critical intelligence. Accordingly, my decision to release information as to this particular opinion does not indicate that similar information about other FISC opinions will also be released.

full pursuant to FOIA Exemptions (b)(1) and (b)(3).

(C)     An undated, classified white paper prepared by DOJ for Congress, totaling nine pages, only one paragraph of which is responsive to item 3 of the request. The responsive paragraph was withheld in full pursuant to FOIA Exemptions (b)(1) and (b)(3).

(D)     Joint Statement of Lisa Monaco, Assistant Attorney General for the National Security Division, U.S. Department of Justice; John C. (Chris) Inglis, Deputy Director for the National Security Agency, Robert Litt, General Counsel, Office of the Director of National Intelligence before the Permanent Select Committee on Intelligence, United States House of Representatives at a Hearing Concerning "FISA Amendments Act Reauthorization" presented on December 8, 2011. Portions of this statement are responsive to item 3 of the request.

(E)     Joint Statement of Lisa Monaco, Assistant Attorney General for the National Security Division, U.S. Department of Justice; John C. (Chris) Inglis, Deputy Director for the National Security Agency, Robert Litt, General Counsel, Office of the Director of National Intelligence before the Senate Select Committee on Intelligence, United States Senate at a Hearing Concerning "FISA Amendments Act Reauthorization" presented on February 9, 2012. Portions of this statement are responsive to item 3 of the request.

Enclosed with the January 3, 2013 letter, attached as Exhibit B, were redacted versions of

documents D and E for partial release.

6.      I examined documents C, D, and E and determined all three contain National

Security Agency ("NSA") equity. As a result, NSD sent documents C, D, and E to the NSA.

NSA asked NSD to withhold the responsive paragraph in document C in full pursuant to FOIA

Exemptions (b)(1) and (b)(3). NSA also asked NSD to withhold documents D and E in part

pursuant to FOIA Exemptions (b)(1) and (b)(3). As noted above, NSD released documents D

and E in part on January 3, 2013. Documents C, D, and E are discussed in the declaration of

Diane Janosek.

## DOCUMENTS A AND B

7.      Document A is an opinion issued by the FISC and is subject to section 1803(c) of

FISA which states, "[r]ecords of proceedings under this Act, including applications made and

3

orders granted, shall be maintained under security measures established by the Chief Justice in

consultation with the Attorney General and the Director of National Intelligence." And under

Rule 62(b) of the FISC Rules of Procedure, a FISC order or opinion may not be released by the

Clerk "without a Court order." To date, the FISC has not issued any orders releasing this

opinion, and FISC rules prohibit the release of any portion of the opinion without a FISC order.[2]

A copy of the FISC Rules of Procedure is attached as Exhibit C.

## EXEMPTION ONE

8.      In addition, I have determined that documents A and B are exempt under FOIA

Exemption One. I have examined documents A and B, and I have determined that both

documents are currently and properly classified under Executive Order 13526. Specifically, I

have determined that the withheld information contained in these records meets the criteria for

classification as set forth in subparagraphs (c) and (g) of Section 1.4 of Executive Order 13526,

which respectively authorize the classification of information concerning "intelligence activities

(including covert action), intelligence sources or methods, or cryptology," and "vulnerabilities or

capabilities of systems, installations, infrastructures, projects, plans, or protection services

relating to national security," which includes defense against transnational terrorism. I have also

determined that the classified information in the responsive documents is "owned by, produced

by or for, or under the control of the United States Government," as required by E.O. 13526.

Further, the withheld information in NSD's responsive records is not the same as the information

that was declassified by ODNI in the July 20, 2012 letter from Kathleen Turner, ODNI's

---

[2] As noted above, document B is a redacted version of this opinion which was provided to Congress pursuant to 50 U.S.C. § 1871. The redacted version still contains information classified at the TOP SECRET level. FISC rule 62(c) permits the Government to provide copies of FISC "opinions, decisions, or other Court records, to Congress, pursuant to 50 U.S.C. §§ 1871(a)(5), 1871(c), or 1881f(b)(l)(D), or any other statutory requirement, without prior motion to and order by the Court." FISC rules do not permit the Government to release FISC opinions to a FOIA requester or any other member of the public without a FISC order.

Director of Legislative Affairs, to Senator Ron Wyden.

9.      Because the withheld material in documents A and B is classified at the TOP

SECRET level, its disclosure could be expected to cause exceptionally grave damage to the

national security of the United States.  I have examined documents A and B, and I have

determined that the withheld material contains specific descriptions of the manner and means by

which the United States Government targets non-United States persons located overseas to

acquire foreign intelligence information under Section 702.  As such, I have determined that the

withheld information describes highly sensitive intelligence activities, sources and methods, and

disclosure of this information would provide our adversaries and foreign intelligence targets with

insight into the United States Government's foreign intelligence collection capabilities, which in

turn could be used to develop the means to degrade and evade those collection capabilities.

## EXEMPTION THREE

10.     I have also determined that the information in documents A and B is also exempt

from disclosure pursuant to FOIA Exemption 3.  Exemption 3 states that FOIA's disclosure

provisions do not apply to matters that are specifically exempted from disclosure by statute.  In

this case, I examined the withheld information and determined that it is protected by the National

Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act

("IRTPA") of 2004, which protects intelligence sources and methods from unauthorized

disclosure.  50 U.S.C. § 403-1(i)(1).  I determined the information in documents A and B

contains intelligence sources and method and is therefore protected from release by the National

Security Act and FOIA Exemption 3.

## SEGREGABILITY

11.     I reviewed documents A, B, C, D, and E for purposes of complying with FOIA's

segregability provision which requires the Government to release "any reasonably segregable portion of a record" after proper application of the FOIA exemptions. 5 U.S.C. § 552(b). For documents A and B, I determined that no portion of them could be properly segregated and released due to the FISC's rules pertaining to the release of its orders.

12.     After careful examination, I have also determined that the one responsive paragraph in document C contains no unclassified portions that can be segregated and released. The unclassified, non-exempt material in the one responsive paragraph in document C is so inextricably intertwined with the classified material that the release of any non-exempt information would produce only incomplete, fragmented, unintelligible sentences and phrases that are devoid of any meaning.

13.     For documents D and E, the non-exempt, responsive information was segregated and provided in NSD's response, dated January 3, 2013. The exempt and non-responsive portions of the document were redacted.

## CONCLUSION

I certify, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 1st day of April 2013

_____
Mark A. Bradley

# *Exhibit A*



**ELECTRONIC FRONTIER FOUNDATION**
Protecting Rights and Promoting Freedom on the Electronic Frontier

July 26, 2012

**BY EMAIL** — nsdfoia@usdoj.gov

Arnetta James
FOIA Initiatives Coordinator
National Security Division
Department of Justice
Room 6150, 950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

      RE:    Freedom of Information Act Request and Request for Expedited Processing

Dear Sir or Madam:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Justice ("DOJ"), National Security Division ("NSD") on behalf of the Electronic Frontier Foundation ("EFF"). EFF makes this request as part of its Transparency Project, which works to obtain government records and make those records widely available to the public.

The FISA Amendments Act ("FAA") of 2008, P.L. 110-261, 122 Stat. 2436 (codified as amended in scattered sections of 18 and 50 U.S.C.) provides, among other things, that the government may obtain an order "for a period of up to 1 year" for the "targeting of persons reasonably believed to be located outside the United States to acquire foreign intelligence information," subject to specified limitations and the approval by the Foreign Intelligence Surveillance Court ("FISC") of targeting and minimization requirements. 50 U.S.C. § 1881a(a).

Since its enactment, the FAA, and the surveillance conducted under its provisions, has engendered controversy. News reports in April and June 2009 revealed that the government "intercepted private e-mail messages and phone calls of Americans. . . on a scale that went beyond the broad legal limits established by [the FAA]." Eric Lichtblau and James Risen, *Officials Say U.S. Wiretaps Exceeded Law*, N.Y. Times (Apr. 15, 2009).[1] The June 2009 report revealed that the government "is believed to have gone beyond legal boundaries designed to protect Americans in about 8 to 10 separate court orders issued by the Foreign Intelligence Surveillance Court." James Risen and Eric Lichtblau, *E-Mail Surveillance Renews Concerns in Congress*, N.Y. Times (Jun. 16, 2009).[2]

More recently, and in anticipation of the sunsetting of the FAA in December 2012, Senator Ron Wyden has pressed the intelligence community to make public statements describing the scope of the government's surveillance activities under Section 702, including statements concerning the number of American citizens whose communications have been monitored and intercepted,

---

[1] *Available at* http://www.nytimes.com/2009/04/16/us/16nsa.html
[2] *Available at* http://www.nytimes.com/2009/06/17/us/17nsa.html

454 Shotwell Street • San Francisco, CA 94110 USA
+1 415 436 9333    +1 415 436 9993    www.eff.org    information@eff.org

and the constitutionality of that surveillance. *See, e.g.*, Spencer Ackerman, *NSA: It Would Violate Your Privacy to Say if We Spied on You*, Wired (Jun. 18, 2012).[3]

On July 20, 2012, by letter to Senator Wyden (attached hereto), the Office of the Director of National Intelligence provided a classification review of three statements Senator Wyden wished to make concerning surveillance conducted under Section 702. Two of those statements are relevant to this request. They are:

- It is also true that on at least one occasion the Foreign Intelligence Surveillance Court held that some collection carried out pursuant to Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment.

- I believe that the government's implementation of Section 702 of FISA has sometimes circumvented the spirit of the law, and on at least one occasion the FISA Court has reached the same conclusion.

Accordingly, EFF hereby requests the following records:

1. Any written opinion or order, as described in the statement quoted above, in which "the Foreign Intelligence Surveillance Court held that some collection carried out pursuant to the Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment";

2. Any written opinion or order, as described in the statement quoted above, reflecting or concerning a FISC determination that "the government's implementation of Section 702 of FISA has sometimes circumvented the spirit of the law"; and,

3. Any briefing provided to the Senate Select Committee on Intelligence or the House Permanent Select Committee on Intelligence concerning the FISC opinions or orders, described in items (1) and (2) above.

**Request for Expedited Processing**

For the reasons discussed below, a "compelling need" exists for the records sought in this request, and, as such, EFF is entitled to expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II) and 28 C.F.R. §§ 16.5(d)(1)(ii) and (iv).

*Expedited Processing under 28 C.F.R. § 16.5(d)(1)(ii)*

EFF is entitled to expedited processing because the request pertains to information about which there is an "urgency to inform the public about an actual or alleged federal government activity," and the request is "made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii). The information we request easily satisfies this standard.

---

[3] *Available at* http://www.wired.com/dangerroom/2012/06/nsa-spied/

2

First, the records sought by this request undeniably concern a "federal government activity." *Id.* The records requested here—FISC opinions and orders concerning surveillance conducted under Section 702 of FISA—reflect both on the federal government's operation of surveillance and on the judicial and legislative oversight of those surveillance activities.

Second, there is an "urgency to inform the public" about the federal government activity. *Id.* As the statements cleared by the DNI demonstrate, on at least one occasion the FISC has found government surveillance activities under Section 702 to be unconstitutional. Clearly, when the government is acting beyond its constitutionally proscribed powers, an "urgency to inform the public" exists.

Moreover, with the FAA scheduled to sunset in December 2012 and Congressional debate surrounding its reauthorization inevitably occurring in the near future,[4] the need to inform the public about the legality and operation of FISA surveillance is even more pressing. The information we request will help the public and Congress fully understand the current state and legality of FISA surveillance, and to participate in the ongoing debate over whether to reauthorize—or restrict—the capabilities of the intelligence community. Delay in processing this FOIA request could inhibit the public's ability to fully analyze and debate the implications of the legislative reauthorization the intelligence community seeks.

In two FOIA cases brought by EFF, the court found that requests warranted expedited treatment where Congress is considering legislation "and the records may enable the public to participate meaningfully in the debate over such pending legislation." *EFF v. ODNI*, 542 F. Supp. 2d 1181, 1187 (N.D. Cal. 2008) (citing *EFF v. ODNI*, 2007 U.S. Dist. LEXIS 89585 (Nov. 27, 2007)). Even though the court could not "predict the timing of passage of the legislation" the court granted expedited processing, holding "that delayed disclosure of the requested materials may cause irreparable harm to a vested constitutional interest in 'the uninhibited, robust, and wide-open debate about matters of public importance that secures an informed citizenry.'" *Id.* (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). Similarly, there is an urgency to inform the public about the information we seek here.

Further, as explained below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information" under 28 C.F.R. § 16.11(c)(1)(i).

Therefore, this request meets the standard for expedited processing set forth in 28 C.F.R. § 16.5(d)(1)(ii).

---

[4] Indeed, DNI Clapper and Attorney General Holder described reauthorization of the FAA as their "first priority." David Kravets, *House Committee Approves Sweeping, Warrantless Electronic Spying Powers*, Wired (Jun 19, 2012), *available at* http://www.wired.com/threatlevel/2012/06/judiciary-approves-fisa-act/.

3

*Expedited Processing under 28 C.F.R.§ 16.5(d)(1)(iv)*

EFF is also entitled to expedited processing under 28 C.F.R. § 16.5(d)(1)(iv) because the subject of the request concerns "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

First, the disclosure that government surveillance under Section 702 violated the Fourth Amendment and the spirit of the law generated "widespread and exceptional media interest." *See e.g.*, Pete Yost, *Gov't Acknowledges One-Time Surveillance Problem*, AP (July 20, 2012) (reprinted in Boston Globe, Sacramento Bee, Wichita Eagle, and CBS News, among other publications);[5] Siobhan Gorman, *Spy Agency Activities Violated Fourth Amendment Rights, Letter Discloses*, Wall Street Journal (July 20, 2012);[6] Spencer Ackerman, *U.S. Admits Surveillance Violated Constitution At Least Once*, Wired (July 20, 2012)[7]; Conor Friedersdorf, *The Feds Violated the Constitution but Administration Won't Say How*, the Atlantic (July 24, 2012);[8] Ellen Nakashima, *Privacy Rights Violated at Least Once by U.S. Intelligence-Collection Initiative, Officials Say*, Washington Post (July 20, 2012);[9] *see also Edmonds v. FBI*, 2002 US Dist. LEXIS 26578, *10 (D.D.C. 2002) (noting "extensive media coverage" satisfied by "numerous newspaper articles in the printed press . . . and on TV"), *rev'd on other grounds* 417 F.3d 1319 (D.C. Cir 2005).

Because the disclosures by DNI demonstrate that government surveillance was conducted in violation of the Fourth Amendment, the topic necessarily "affect[s] public confidence" in the government's integrity. 28 C.F.R. § 16.5(d)(1)(iv). Consequently, the records sought in this request satisfy the requirements for expedited processing under 28 C.F.R. § 16.5(d)(1)(iv).

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a representative of the news media pursuant to the FOIA and 28 C.F.R. § 16.11(b)(6). In requesting this classification, we note that the Department of Homeland Security and National Security Agency, among other agencies, have recognized that EFF qualifies as a "news media" requester, based upon the publication activities set forth below (see DHS stipulation and NSA letter, attached hereto). We further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-*

---

[5] *Available at* http://hosted.ap.org/dynamic/stories/U/US_WYDEN_SURVEILLANCE
[6] *Available at*
http://online.wsj.com/article/SB10000872396390444097904577539413137490028.html
(subscription required)
[7] *Available at* http://www.wired.com/dangerroom/2012/07/surveillance-spirit-law/
[8] *Available at* http://www.theatlantic.com/politics/archive/2012/07/the-feds-violated-the-constitution-but-the-administration-wont-say-how/260239/
[9] *Available at* http://www.washingtonpost.com/world/national-security/us-intelligence-collection-initiative-violated-rights-at-least-once-government-says/2012/07/20/gJQAtJjFzW_story.html

4

*Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil liberties in the digital age."[10] One of EFF's primary objectives is "to educate the press, policymakers and the general public about online civil liberties."[11] To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received 46,682,194 hits in July 2007 — an average of 62,744 per hour. The web site reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector currently has more than 150,000 subscribers. A complete archive of past EFFectors is available at http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet. DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues. DeepLinks had 510,633 hits in July 2007.[12]

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/cracking -des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation,

---

[10] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/pqShowGsReport.do? npoId=561625 (last visited Feb. 1, 2008).
[11] *Id.*
[12] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

5

and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded more than 2,600 times from EFF's web site in July 2007.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11(k)(1)(i), (ii). To determine whether a request meets this standard, the agency determines whether "[d]isclosure of the requested information. . . is likely to contribute significantly to public understanding of the operations or activities of the government," 28 C.F.R. § 16.11(k)(1)(i), and whether such disclosure "is not primarily in the commercial interest of the requester." 28 C.F.R. § 16.11(k)(1)(ii). This request satisfies these criteria.

First, any FISC orders or opinions in the possession of DOJ NSD necessarily implicate "the operations or activities of the government." 28 C.F.R. § 16.11(k)(1)(i). The opinions and orders concern surveillance undertaken by the U.S. intelligence community under Section 702 of FISA.

Second, disclosure of the requested information will contribute to a public understanding of government operations or activities. *Id.* EFF has requested information that will shed light on the intelligence community's interaction with the FISC in the implementation of FISA Section 702, as well as the FISC's interpretation of the legality of those surveillance activities. This information will contribute not only to EFF's understanding of current surveillance activities under Section 702, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Finally, since only limited information has been made available regarding surveillance activities under Section 702, the disclosure will "contribute significantly" to the public's knowledge and understanding of surveillance activities – and the legality of that surveillance – undertaken by the federal government. *Id.* Disclosure of the requested information will help inform the public about the legality of the intelligence community's actions, as well as contribute to the public debate about the propriety of reauthorizing Section 702.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 28 C.F.R. § 16.11(k)(1)(ii). EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

6

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact me at (415) 436-9333 x. 137. As the FOIA provides, I will anticipate a determination on this request for expedited processing within 10 calendar days.

I certify that, to the best of my knowledge and belief, all information within this request is true and correct.

Sincerely,

/s/ Mark Rumold

Mark Rumold
Open Government Legal Fellow

Enclosures
Cc: Office of Information Policy

454 Shotwell Street • San Francisco, CA 94110 USA
+1 415 436 9333     +1 415 436 9993     www.eff.org     information@eff.org

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
WASHINGTON, DC 20511

July 20, 2012

The Honorable Ron Wyden
Select Committee on Intelligence
United States Senate
Washington, D.C. 20510

Dear Senator Wyden:

Thank you for providing us the opportunity to perform a classification review of the following three statements you would like to make about collection activities undertaken under the authority of the Foreign Intelligence Surveillance Act (FISA) Amendments Act of 2008 (FAA):

○ A recent unclassified report noted that the Foreign Intelligence Surveillance Court has repeatedly held that collection carried out pursuant to the FISA Section 702 minimization procedures used by the government is reasonable under the Fourth Amendment.

○ It is also true that on at least one occasion the Foreign Intelligence Surveillance Court held that some collection carried out pursuant to the Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment.

○ I believe that the government's implementation of Section 702 of FISA has sometimes circumvented the spirit of the law, and on at least one occasion the FISA Court has reached this same conclusion.

We continue to appreciate your interest in an informed public debate on the government's use of its intelligence collection authorities. We share your view that it is important that there be maximum transparency in government, but that it is necessary to protect certain critical intelligence activities—including the government's acquisition of critical foreign intelligence information through the use of FAA authorities—from public disclosure to safeguard sensitive sources and methods. As we have discussed before, striking this balance is never easy. It can be further complicated through the public release of fragments of unclassified information that create an incomplete and misleading understanding of the facts. As you are aware, Congress attempted to strike the necessary balance by providing for strict and robust Congressional and judicial oversight of the government's use of FAA authorities, to include multiple reporting, auditing, and review requirements. But we agree that public disclosure, where it can be accomplished without jeopardizing sensitive sources and methods, is the best way to serve the public interest.

The text that you have asked us to review concerns classified opinions of the Foreign Intelligence Surveillance Court (FISC). FISC opinions are derivatively classified because of the sensitive intelligence matters they concern. However, pursuant to Section 3.1 of Executive Order 13526, the Director of National Intelligence (DNI), has determined, as an exercise of his

discretion, "that the public interest in disclosure outweighs the damage to the national security that might reasonably be expected from disclosure." Accordingly, the DNI has taken the exceptional step of declassifying your proposed text and the other information contained in this letter.

The DNI has decided to take this action, in consultation with the affected elements of the Intelligence Community and the Department of Justice, based on his determination that the need to protect the information contained in these statements is outweighed by the public interest in disclosing this information. The DNI reached this determination based on a combination of specific considerations, including that the text to be declassified does not identify any intelligence sources and methods. Given that conclusion, and since the information to be declassified is narrowly confined to addressing the government's use of Section 702 in the context of the ongoing public debate about FAA reauthorization, the DNI has determined that declassification of this text is in the public interest. Different classification questions would have been raised if, for example, the proposed statements more specifically addressed particular matters or had been joined with other statements providing additional context from which classified information could be inferred, the release of which might harm national security.

Please be advised that this declassification decision applies only to the precise three statements that you submitted for review and the other information in this letter. No additional comment or background information related to any underlying FISC opinions has been declassified for public disclosure and this declassification decision does not apply to any other information.

Because the three statements you asked us to review are fragmentary and incomplete, we believe they may convey an incomplete and potentially misleading understanding of what has transpired. Accordingly, we request that when you make these statements, you also include the following point:

  ∘ The government has remedied these concerns and the FISC has continued to approve the collection as consistent with the statute and reasonable under the Fourth Amendment.

Indeed, as your first bullet on page one notes, the FISC has repeatedly held that collection carried out under Section 702 is reasonable under the Fourth Amendment. In addition, we hope you will point out that both the FISC and the Intelligence and Judiciary committees of the House and Senate are kept fully informed of the government's use of Section 702. The committees are provided detailed briefings and are provided with FISC opinions and pleadings as required by the statute.

We believe Section 702 of the FAA is a well-calibrated statute that strikes an appropriate balance between protecting national security and safeguarding privacy and civil liberties. All three branches of government are involved in ensuring that the appropriate balance is struck. First, the FISC, which consists of federal judges appointed by the President and confirmed by the Senate, must find that the government's procedures are consistent with the statute and Fourth Amendment. Second, Congress oversees the use of these authorities and receives extensive briefings and reports, and access to classified FISC opinions and related pleadings. Finally, the Executive Branch carries out extensive oversight of the use of FAA authorities, which includes

regular on-site reviews of how FAA authorities are being implemented, documented in reports produced to Congress that describe any incidents of non-compliance and remedial measures taken. At no time have these reviews found any intentional violations of law.

We hope this information is helpful.

Sincerely,

Kathleen Turner

Kathleen Turner
Director of Legislative Affairs

cc: The Honorable Dianne Feinstein
    The Honorable Saxby Chambliss

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER          )
FOUNDATION                   )
                             )
            Plaintiff,       )
                             )
v.                           )          Civil Action No.  06-1988 (ESH)
                             )
DEPARTMENT OF HOMELAND       )
SECURITY,                    )
                             )
            Defendant.       )
_____)

### STIPULATED DISMISSAL OF PLAINTIFF'S SECOND CAUSE OF ACTION

Plaintiff Electronic Frontier Foundation (EFF) and Defendant Department of Homeland

Security (DHS), by counsel, hereby stipulate and agree as follows:

1.      Defendant DHS has granted news media status to Plaintiff EFF based on the

representations contained in EFF's FOIA requests, which demonstrate that EFF is an "entity that

is organized and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6).

Defendant DHS will continue to regard Plaintiff EFF as a "representative of the news media"

absent a change in circumstances that indicates that EFF is no longer an "entity that is organized

and operated to publish or broadcast news to the public."  6 C.F.R. § 5.11(b)(6).

2.      Accordingly, the parties herewith agree to the dismissal of Plaintiff EFF's Second

Cause of Action, related to EFF's status as a "representative of the news media."

3.      The parties further agree that each will pay its own fees and costs for work on the

dismissed claim.

SO STIPULATED AND AGREED this 27th day of February, 2007.

_/s/ David L. Sobel_
DAVID L. SOBEL
D.C. Bar 360418

MARCIA HOFMANN
D.C. Bar 484136

ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Avenue, N.W.
Suite 650
Washington, D.C. 20009
(202) 797-9009

*Counsel for Plaintiff*

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
D.C. Bar 418925
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

_/s/ John R. Coleman_
JOHN R. COLEMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Room 6118
Washington, D.C. 20530
(202) 514-4505

*Counsel for Defendant*

-2-



**NATIONAL SECURITY AGENCY**
**CENTRAL SECURITY SERVICE**
FORT GEORGE G. MEADE, MARYLAND 20755-6000

FOIA Case: 52276
6 February 2007

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, NW
Suite 650
Washington, DC  20009

Dear Ms. Hofmann:

This is an initial response to your Freedom of Information Act (FOIA) request submitted via facsimile on 23 January 2007, which was received by this office on 24 January 2007, for all agency records (including, but not limited to, electronic records) related to the NSA's review of and input on the configuration of the Microsoft Windows Vista operating system ("Vista"). Your request has been assigned Case Number 52276.

As we began to process your request, we realized that the first page of the actual request was missing from your 18-page facsimile package. On 1 February 2007, a member of my staff contacted you to advise you of this fact. As a result, you submitted another facsimile of your original five-page request, which we received and have begun to process. There is certain information relating to this processing about which the FOIA and applicable Department of Defense (DoD) and NSA/CSS regulations require we inform you.

For purposes of this request and based on the information you provided in your letter, you are considered a representative of the media. Unless you qualify for a fee waiver or reduction, you must pay for duplication in excess of the first 100 pages. Your request for a fee waiver has been granted. In addition, please be advised your request for expedited treatment has been accepted. We are currently in the process of searching for responsive documents and will notify you of the status of your request as soon as that search has been completed.

Correspondence related to your request should include the case number assigned to your request, which is included in the first paragraph of this letter. Your letter should be addressed to National Security Agency, FOIA Office

FOIA Case:  52276

(DC34), 9800 Savage Road STE 6248, Ft. George G. Meade, MD  20755-6248
or may be sent by facsimile to 443-479-3612.  If sent by fax, it should be
marked for the attention of the FOIA office. The telephone number of the FOIA
office is 301-688-6527.

Sincerely,

*Marianne Stupar*

PAMELA N. PHILLIPS
Chief
FOIA/PA Office

# *Exhibit B*



**U.S. Department of Justice**

Civil Division

*Washington, DC 20530*

January 3, 2013

<u>VIA ELECTRONIC MAIL</u>
David Sobel, Esq.
Electronic Frontier Foundation
1818 N Street, N.W., Suite 410
Washington, DC 20036

Re:  *EFF v. Department of Justice*, Case No. 12-1441-ABJ

Dear David,

Enclosed please find the Department of Justice's response to Electronic Frontier Foundation's Freedom of Information Act request to the Department's National Security Division dated July 26, 2012 requesting:

1. Any written opinion or order . . . in which "the Foreign Intelligence Surveillance Court held that some collection carried out pursuant to the Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment";

2. Any written opinion or order . . . reflecting or concerning a FISC determination that "the government's implementation of Section 702 of FISA has sometimes circumvented the spirit of the law"; and

3. Any briefing provided to the Senate Select Committee on Intelligence or the House Permanent Select Committee on Intelligence concerning the FISC opinions or orders, described in items (1) and (2) above.

After you have discussed the enclosed response with your client, please contact me to schedule a time to discuss the Joint Status Report that the parties must submit to the Court on January 18, 2013.

- 2 -

Thank you for your attention to this matter.  I look forward to speaking with you soon.

Sincerely,

JACQUELINE COLEMAN SNEAD
Senior Counsel
Federal Programs Branch
Civil Division

Enclosure

**U.S. Department of Justice**

National Security Division

*Washington, D.C. 20530*

NSD #12-219
January 3, 2013

Mr. Mark Rumold
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110

Dear Mr. Rumold:

This is in response to your Freedom of Information Act Request (FOIA) dated July 26, 2012, concerning the July 20, 2012 letter to Senator Wyden and two statements contained therein: "It is also true that on at least one occasion the Foreign Intelligence Surveillance Court held that some collection carried out pursuant to Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment"; and "I believe that the government's implementation of Section 702 of FISA has sometimes circumvented the spirit of the law, and on at least one occasion the FISA Court has reached the same conclusion."

Your FOIA requests the following:

1. Any written opinion or order, as described in the statement quoted above, in which "the Foreign Intelligence Surveillance Court held that some collection carried out pursuant to the Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment";

2. Any written opinion or order, as described in the statement quoted above, reflecting or concerning a FISC determination that "the government's implementation of Section 702 of FISA has sometimes circumvented the spirit of the law"; and,

3. Any briefing provided to the Senate Select Committee on Intelligence or the House Permanent Select Committee on Intelligence concerning the FISC opinions or orders, described in items (1) and (2) above.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. §552(c) (2006 & Supp. IV (2010)). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

We have conducted a search of the Office of the Assistant Attorney General and the Office of Intelligence of the National Security Division and located records responsive to your

request.

We have identified two records (one of which is a non-identical duplicate of the other) that are responsive to items (1) and (2) of your request and a third record that is responsive to item (3) of your request. We are withholding the records in full pursuant to the following FOIA exemptions set forth in 5 U.S.C. 552(b):

      (1) which permits the withholding of information properly classified pursuant to Executive Order No. 13526; and

      (3) which permits the withholding of information specifically exempted from disclosure by statute (the applicable statute is 50 U.S.C. § 403-1(i)1 of the National Security Act of 1947).

We have also identified two additional records that are responsive to item (3) of your request [two joint statements for the record prepared for classified, closed Congressional hearings]. We have processed the two joint statements for the record and have attached a redacted version of each.

As this matter is already in litigation, we are omitting our standard appeal paragraph.

Sincerely,

Mark A. Bradley
Director
FOIA and Declassification

2

TOP SECRET//COMINT//ORCON/NOFORN

  

## JOINT STATEMENT OF

### LISA O. MONACO
### ASSISTANT ATTORNEY GENERAL
### FOR NATIONAL SECURITY
### U.S. DEPARTMENT OF JUSTICE

### JOHN C. (CHRIS) INGLIS
### DEPUTY DIRECTOR
### NATIONAL SECURITY AGENCY

### ROBERT S. LITT
### GENERAL COUNSEL
### OFFICE OF DIRECTOR OF NATIONAL INTELLIGENCE

### BEFORE THE
### SENATE SELECT COMMITTEE ON INTELLIGENCE
### UNITED STATES SENATE

### AT A HEARING CONCERNING
### "FISA AMENDMENTS ACT REAUTHORIZATION"

### PRESENTED ON
### FEBRUARY 9, 2012

(b)(1), (b)(3)

TOP SECRET//COMINT//ORCON/NOFORN

TOP SECRET//COMINT//ORCON/NOFORN

Joint Statement of

Lisa O. Monaco
Assistant Attorney General
for National Security
U.S. Department of Justice

John C. (Chris) Inglis
Deputy Director
National Security Agency

Robert S. Litt
General Counsel
Office of Director of National Intelligence

Before the
Senate Select Committee on Intelligence
United States Senate

At a Hearing Concerning
"FISA Amendments Act Reauthorization"

Presented on
February 9, 2012

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive



TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

(U) Recent FISC Opinion

(TS//SI//NF) (b)(1), (b)(3)

(b)(1), (b)(3)

TOP SECRET//COMINT//ORCON/NOFORN

(b)-(1), (b)-(3)
(b)(1), (b)(2)

(U) The Committee has been provided with copies of the opinions and the filings by the Government in this matter, and we will continue to inform the Committee about any additional developments on this issue.

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

  

## JOINT STATEMENT OF

LISA O. MONACO
ASSISTANT ATTORNEY GENERAL
FOR NATIONAL SECURITY
U.S. DEPARTMENT OF JUSTICE

JOHN C. (CHRIS) INGLIS
DEPUTY DIRECTOR
NATIONAL SECURITY AGENCY

ROBERT S. LITT
GENERAL COUNSEL
OFFICE OF DIRECTOR OF NATIONAL INTELLIGENCE

BEFORE THE
PERMANENT SELECT COMMITTEE ON INTELLIGENCE
UNITED STATES HOUSE OF REPRESENTATIVES

AT A HEARING CONCERNING
"FISA AMENDMENTS ACT REAUTHORIZATION"

PRESENTED ON
DECEMBER 8, 2011

(b)(1), (b)(3)

TOP SECRET//COMINT//ORCON/

TOP SECRET//COMINT//ORCON/NOFORN

Joint Statement of

Lisa O. Monaco
Assistant Attorney General
for National Security
U.S. Department of Justice

John C. (Chris) Inglis
Deputy Director
National Security Agency

Robert S. Litt
General Counsel
Office of Director of National Intelligence

Before the
Permanent Select Committee on Intelligence
United States House of Representatives

At a Hearing Concerning
"FISA Amendments Act Reauthorization"

Presented on
December 8, 2011

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

1

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

(U) Recent FISC Opinion

(TS//SI//NF) (b)(1), (b)(3)
(b)(1), (b)(3)

TOP SECRET//COMINT//ORCON/NOFORN

(TS//SI//NF) (b)(1), (b)(3)

(b)(1), (b)(3)

(b)(1), (b)(3)

(b)(1), (b)(3)

(b)(1), (b)(3)

(b)(1), (b)(3)

TOP SECRET//COMINT//ORCON/NOFORN

(b)(1), (b)(3)

(b)(1), (b)(3)

(U) The Government has provided copies of the opinions and the filings by the Government to this Committee, and the Government will continue to inform the Committee about developments in this matter.

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

TOP SECRET//COMINT//ORCON/NOFORN

non-responsive

# *Exhibit C*

## UNITED STATES FOREIGN
## INTELLIGENCE SURVEILLANCE COURT
### Washington, D.C.

### RULES OF PROCEDURE
*Effective November 1, 2010*

**Rule**                                                                    **Page**

### Title I. Scope of Rules; Amendment

1. Scope of Rules .......................................................... 1
2. Amendment .............................................................. 1

### Title II. National Security Information

3. National Security Information ............................................ 1

### Title III. Structure and Powers of the Court

4. Structure .............................................................. 1
5. Authority of the Judges ................................................. 1

### Title IV. Matters Presented to the Court

6. Means of Requesting Relief from the Court ................................ 2
7. Filing Applications, Certifications, Petitions,
   Motions, or Other Papers ("Submissions") ............................... 2
8. Service ............................................................... 3
9. Time and Manner of Submission of Applications ........................... 3
10. Computation of Time ................................................... 4
11. Notice and Briefing of Novel Issues ................................... 4
12. Submission of Targeting and Minimization Procedures ................... 5
13. Correction of Misstatement or Omission; Disclosure of Non-Compliance .. 5
14. Motions to Amend Court Orders ......................................... 5
15. Sequestration ........................................................ 5
16. Returns .............................................................. 6

### Title V. Hearings, Orders, and Enforcement

17. Hearings ............................................................. 6
18. Court Orders ......................................................... 6
19. Enforcement of Orders ................................................ 7

## Title VI.  Supplemental Procedures for Proceedings Under 50 U.S.C. § 1881a(h)

20. Scope ........................................................................ 7
21. Petition to Modify or Set Aside a Directive .................................... 7
22. Petition to Compel Compliance With a Directive ............................... 7
23. Contents of Petition ......................................................... 8
24. Response .................................................................... 8
25. Length of Petition and Response; Other Papers ................................. 8
26. Notification of Presiding Judge ............................................... 8
27. Assignment .................................................................. 8
28. Review of Petition to Modify or Set Aside a Directive .......................... 9
29. Review of Petition to Compel Compliance Pursuant to 50 U.S.C. § 1881a(h)(5)(C) ...... 9
30. *In Camera* Review .......................................................... 9
31. Appeal ...................................................................... 9

## Title VII.  Supplemental Procedures for Proceedings Under 50 U.S.C. § 1861(f)

32. Scope ...................................................................... 10
33. Petition Challenging Production or Nondisclosure Order .......................... 10
34. Contents of Petition ......................................................... 10
35. Length of Petition .......................................................... 10
36. Request to Stay Production ................................................... 10
37. Notification of Presiding Judge ............................................... 10
38. Assignment ................................................................. 11
39. Initial Review .............................................................. 11
40. Response to Petition; Other Papers ............................................ 11
41. Rulings on Non-frivolous Petitions ........................................... 11
42. Failure to Comply ........................................................... 12
43. *In Camera* Review ......................................................... 12
44. Appeal ..................................................................... 12

## Title VIII.  En Banc Proceedings

45. Standard for Hearing or Rehearing En Banc .................................... 12
46. Initial Hearing En Banc on Request of a Party ................................. 12
47. Rehearing En Banc on Petition by a Party ..................................... 12
48. Circulation of En Banc Petitions and Responses ................................ 13
49. Court-Initiated En Banc Proceedings .......................................... 13
50. Polling .................................................................... 13
51. Stay Pending En Banc Review ................................................ 13
52. Supplemental Briefing ....................................................... 13
53. Order Granting or Denying En Banc Review .................................... 13

## Title IX. Appeals

54. How Taken ............................................................. 14
55. When Taken ............................................................ 14
56. Stay Pending Appeal .................................................... 14
57. Motion to Transmit the Record .......................................... 14
58. Transmitting the Record ................................................ 14
59. Oral Notification to the Court of Review ................................ 14

## Title X. Administrative Provisions

60. Duties of the Clerk .................................................... 14
61. Office Hours ........................................................... 15
62. Release of Court Records ............................................... 15
63. Practice Before Court .................................................. 15

## Title I. Scope of Rules; Amendment

**Rule 1. Scope of Rules.** These rules, which are promulgated pursuant to 50 U.S.C. § 1803(g), govern all proceedings in the Foreign Intelligence Surveillance Court ("the Court"). Issues not addressed in these rules or the Foreign Intelligence Surveillance Act, as amended ("the Act"), may be resolved under the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure.

**Rule 2. Amendment.** Any amendment to these rules must be promulgated in accordance with 28 U.S.C. § 2071.

## Title II. National Security Information

**Rule 3. National Security Information.** In all matters, the Court and its staff shall comply with the security measures established pursuant to 50 U.S.C. §§ 1803(c), 1822(e), 1861(f)(4), and 1881a(k)(1), as well as Executive Order 13526, "Classified National Security Information" (or its successor). Each member of the Court's staff must possess security clearances at a level commensurate to the individual's responsibilities.

## Title III. Structure and Powers of the Court

### Rule 4. Structure.

(a) **Composition.** In accordance with 50 U.S.C. § 1803(a), the Court consists of United States District Court Judges appointed by the Chief Justice of the United States.

(b) **Presiding Judge.** The Chief Justice designates the "Presiding Judge."

### Rule 5. Authority of the Judges.

(a) **Scope of Authority.** Each Judge may exercise the authority vested by the Act and such other authority as is consistent with Article III of the Constitution and other statutes and laws of the United States, to the extent not inconsistent with the Act.

(b) **Referring Matters to Other Judges.** Except for matters involving a denial of an application for an order, a Judge may refer any matter to another Judge of the Court with that Judge's consent. If a Judge directs the government to supplement an application, the Judge may direct the government to present the renewal of that application to the same Judge. If a matter is presented to a Judge who is unavailable or whose tenure on the Court expires while the matter is pending, the Presiding Judge may re-assign the matter.

(c) **Supplementation.** The Judge before whom a matter is pending may order a party to furnish any information that the Judge deems necessary.

## Title IV.  Matters Presented to the Court

### Rule 6.  Means of Requesting Relief from the Court.

(a) **Application.**  The government may, in accordance with 50 U.S.C. §§ 1804, 1823, 1842, 1861, 1881b(b), 1881c(b), or 1881d(a), file an application for a Court order ("application").

(b) **Certification.**  The government may, in accordance with 50 U.S.C. § 1881a(g), file a certification concerning the targeting of non-United States persons reasonably believed to be located outside the United States ("certification").

(c) **Petition.**  A party may, in accordance with 50 U.S.C. §§ 1861(f) and 1881a(h) and the Supplemental Procedures in Titles VI and VII of these Rules, file a petition for review of a production or nondisclosure order issued under 50 U.S.C. § 1861 or for review or enforcement of a directive issued under 50 U.S.C. § 1881a ("petition").

(d) **Motion.**  A party seeking relief, other than pursuant to an application, certification, or petition permitted under the Act and these Rules, must do so by motion ("motion").

### Rule 7.  Filing Applications, Certifications, Petitions, Motions, or Other Papers ("Submissions").

(a) **Filing.**  A submission is filed by delivering it to the Clerk or as otherwise directed by the Clerk in accordance with Rule 7(k).

(b) **Original and One Copy.**  Except as otherwise provided, a signed original and one copy must be filed with the Clerk.

(c) **Form.**  Unless otherwise ordered, all submissions must be:

(1) on 8½-by-11-inch opaque white paper; and

(2) typed (double-spaced) or reproduced in a manner that produces a clear black image.

(d) **Electronic Filing.**  The Clerk, when authorized by the Court, may accept and file submissions by any reliable, and appropriately secure, electronic means.

(e) **Facsimile or Scanned Signature.**  The Clerk may accept for filing a submission bearing a facsimile or scanned signature in lieu of the original signature.  Upon acceptance, a submission bearing a facsimile or scanned signature is the original Court record.

(f) **Citations.**  Each submission must contain citations to pertinent provisions of the Act.

(g) **Contents.**  Each application and certification filed by the government must be approved and certified in accordance with the Act, and must contain the statements and other information required by the Act.

(h) **Contact Information in Adversarial Proceedings.**

(1) **Filing by a Party Other Than the Government.**  A party other than the government must include in the initial submission the party's full name, address, and telephone number, or, if the party is represented by counsel, the full name of the party and the party's counsel, as well as counsel's address, telephone number, facsimile number, and bar membership information.

(2) **Filing by the Government.**  In an adversarial proceeding, the initial

-2-

submission filed by the government must include the full names of the attorneys representing the United States and their mailing addresses, telephone numbers, and facsimile numbers.

**(i) Information Concerning Security Clearances in Adversarial Proceedings.** A party other than the government must:

> **(1)** state in the initial submission whether the party (or the party's responsible officers or employees) and counsel for the party hold security clearances;
>
> **(2)** describe the circumstances in which such clearances were granted; and
>
> **(3)** identify the federal agencies granting the clearances and the classification levels and compartments involved.

**(j) *Ex Parte* Review.** At the request of the government in an adversarial proceeding, the Judge must review *ex parte* and *in camera* any submissions by the government, or portions thereof, which may include classified information. Except as otherwise ordered, if the government files *ex parte* a submission that contains classified information, the government must file and serve on the non-governmental party an unclassified or redacted version. The unclassified or redacted version, at a minimum, must clearly articulate the government's legal arguments.

**(k) Instructions for Delivery to the Court.** A party may obtain instructions for making submissions permitted under the Act and these Rules by contacting the Clerk at (202) 357-6250.

## Rule 8. Service.

**(a) By a Party Other than the Government.** A party other than the government must, at or before the time of filing a submission permitted under the Act and these Rules, serve a copy on the government. Instructions for effecting service must be obtained by contacting the Security and Emergency Planning Staff, United States Department of Justice, by telephone at (202) 514-2094.

**(b) By the Government.** At or before the time of filing a submission in an adversarial proceeding, the government must, subject to Rule 7(j), serve a copy by hand delivery or by overnight delivery on counsel for the other party, or, if the party is not represented by counsel, on the party directly.

**(c) Certificate of Service.** A party must include a certificate of service specifying the time and manner of service.

## Rule 9. Time and Manner of Submission of Applications.

**(a) Proposed Applications.** Except when an application is being submitted following an emergency authorization pursuant to 50 U.S.C. §§ 1805(e), 1824(e), 1843, 1881b(d), or 1881c(d) ("emergency authorization"), or as otherwise permitted by the Court, proposed applications must be submitted by the government no later than seven days before the government seeks to have the matter entertained by the Court. Proposed applications submitted following an emergency authorization must be submitted as soon after such authorization as is reasonably practicable.

**(b) Final Applications.** Unless the Court permits otherwise, the final application,

including all signatures, approvals, and certifications required by the Act, must be filed no later than 10:00 a.m. Eastern Time on the day the government seeks to have the matter entertained by the Court.

**(c) Proposed Orders.** Each proposed application and final application submitted to the Court must include any pertinent proposed orders.

**(d) Number of Copies.** Notwithstanding Rule 7(b), unless the Court directs otherwise, only one copy of a proposed application must be submitted and only the original final application must be filed.

**(e) Notice of Changes.** No later than the time the final application is filed, the government must identify any differences between the final application and the proposed application.

**Rule 10. Computation of Time.** The following rules apply in computing a time period specified by these Rules or by Court order:

**(a) Day of the Event Excluded.** Exclude the day of the event that triggers the period.

**(b) Compute Time Using Calendar Days.** Compute time using calendar days, not business days.

**(c) Include the Last Day.** Include the last day of the period; but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the next day that is not a Saturday, Sunday, or legal holiday.

**Rule 11. Notice and Briefing of Novel Issues.**

**(a) Notice to the Court.** If a submission by the government for Court action involves an issue not previously presented to the Court — including, but not limited to, a novel issue of technology or law — the government must inform the Court in writing of the nature and significance of that issue.

**(b) Submission Relating to New Techniques.** Prior to requesting authorization to use a new surveillance or search technique, the government must submit a memorandum to the Court that:

(1) explains the technique;

(2) describes the circumstances of the likely implementation of the technique;

(3) discusses any legal issues apparently raised; and

(4) describes the proposed minimization procedures to be applied.

At the latest, the memorandum must be submitted as part of the first proposed application or other submission that seeks to employ the new technique.

**(c) Novel Implementation.** When requesting authorization to use an existing surveillance or search technique in a novel context, the government must identify and address any new minimization or other issues in a written submission made, at the latest, as part of the application or other filing seeking such authorization.

**(d) Legal Memorandum.** If an application or other request for action raises an issue of law not previously considered by the Court, the government must file a memorandum of law in support of its position on each new issue. At the latest, the memorandum must be

submitted as part of the first proposed application or other submission that raises the issue.

**Rule 12. Submission of Targeting and Minimization Procedures.** In a matter involving Court review of targeting or minimization procedures, such procedures may be set out in full in the government's submission or may be incorporated by reference to procedures approved in a prior docket. Procedures that are incorporated by reference to a prior docket may be supplemented, but not otherwise modified, in the government's submission. Otherwise, proposed procedures must be set forth in a clear and self-contained manner, without resort to cross-referencing.

**Rule 13. Correction of Misstatement or Omission; Disclosure of Non-Compliance.**
    **(a) Correction of Material Facts.** If the government discovers that a submission to the Court contained a misstatement or omission of material fact, the government, in writing, must immediately inform the Judge to whom the submission was made of:
        **(1)** the misstatement or omission;
        **(2)** any necessary correction;
        **(3)** the facts and circumstances relevant to the misstatement or omission;
        **(4)** any modifications the government has made or proposes to make in how it will implement any authority or approval granted by the Court; and
        **(5)** how the government proposes to dispose of or treat any information obtained as a result of the misstatement or omission.
    **(b) Disclosure of Non-Compliance.** If the government discovers that any authority or approval granted by the Court has been implemented in a manner that did not comply with the Court's authorization or approval or with applicable law, the government, in writing, must immediately inform the Judge to whom the submission was made of:
        **(1)** the non-compliance;
        **(2)** the facts and circumstances relevant to the non-compliance;
        **(3)** any modifications the government has made or proposes to make in how it will implement any authority or approval granted by the Court; and
        **(4)** how the government proposes to dispose of or treat any information obtained as a result of the non-compliance.

**Rule 14. Motions to Amend Court Orders.** Unless the Judge who issued the order granting an application directs otherwise, a motion to amend the order may be presented to any other Judge.

**Rule 15. Sequestration.** Except as required by Court-approved minimization procedures, the government must not submit material for sequestration with the Court without the prior approval of the Presiding Judge. To obtain such approval, the government must, prior to tendering the material to the Court for sequestration, file a motion stating the circumstances of the material's acquisition and explaining why it is necessary for such material to be retained in the custody of the Court.

**Rule 16. Returns.**

    **(a) Time for Filing.**

        **(1) Search Orders.** Unless the Court directs otherwise, a return must be made and filed either at the time of submission of a proposed renewal application or within 90 days of the execution of a search order, whichever is sooner.

        **(2) Other Orders.** The Court may direct the filing of other returns at a time and in a manner that it deems appropriate.

    **(b) Contents.** The return must:

        **(1)** notify the Court of the execution of the order;

        **(2)** describe the circumstances and results of the search or other activity including, where appropriate, an inventory;

        **(3)** certify that the execution was in conformity with the order or describe and explain any deviation from the order; and

        **(4)** include any other information as the Court may direct.

## Title V.  Hearings, Orders, and Enforcement

**Rule 17. Hearings.**

    **(a) Scheduling.** The Judge to whom a matter is presented or assigned must determine whether a hearing is necessary and, if so, set the time and place of the hearing.

    **(b) *Ex Parte*.** Except as the Court otherwise directs or the Rules otherwise provide, a hearing in a non-adversarial matter must be *ex parte* and conducted within the Court's secure facility.

    **(c) Appearances.** Unless excused, the government official providing the factual information in an application or certification and an attorney for the applicant must attend the hearing, along with other representatives of the government, and any other party, as the Court may direct or permit.

    **(d) Testimony; Oath; Recording of Proceedings.** A Judge may take testimony under oath and receive other evidence. The testimony may be recorded electronically or as the Judge may otherwise direct, consistent with the security measures referenced in Rule 3.

**Rule 18. Court Orders.**

    **(a) Citations.** All orders must contain citations to pertinent provisions of the Act.

    **(b) Denying Applications.**

        **(1) Written Statement of Reasons.** If a Judge denies the government's application, the Judge must immediately provide a written statement of each reason for the decision and cause a copy of the statement to be served on the government.

        **(2) Previously Denied Application.** If a Judge denies an application or other request for relief by the government, any subsequent submission on the matter must be referred to that Judge.

**(c) Expiration Dates.** An expiration date in an order must be stated using Eastern Time and must be computed from the date and time of the Court's issuance of the order, or, if applicable, of an emergency authorization.

**(d) Electronic Signatures.** The Judge may sign an order by any reliable, appropriately secure electronic means, including facsimile.

## Rule 19. Enforcement of Orders.

**(a) Show Cause Motions.** If a person or entity served with a Court order (the "recipient") fails to comply with that order, the government may file a motion for an order to show cause why the recipient should not be held in contempt and sanctioned accordingly. The motion must be presented to the Judge who entered the underlying order.

**(b) Proceedings.**

(1) An order to show cause must:

(i) confirm that the underlying order was issued;

(ii) schedule further proceedings; and

(iii) afford the recipient an opportunity to show cause why the recipient should not be held in contempt.

(2) A Judge must conduct any proceeding on a motion to show cause *in camera*. The Clerk must maintain all records of the proceedings in conformance with 50 U.S.C. § 1803(c).

(3) If the recipient fails to show cause for noncompliance with the underlying order, the Court may find the recipient in contempt and enter any order it deems necessary and appropriate to compel compliance and to sanction the recipient for noncompliance with the underlying order.

(4) If the recipient shows cause for noncompliance or if the Court concludes that the order should not be enforced as issued, the Court may enter any order it deems appropriate.

## Title VI. Supplemental Procedures for Proceedings Under 50 U.S.C. § 1881a(h)

**Rule 20. Scope.** Together with the generally-applicable provisions of these Rules concerning filing, service, and other matters, these supplemental procedures apply in proceedings under 50 U.S.C. § 1881a(h).

**Rule 21. Petition to Modify or Set Aside a Directive.** An electronic communication service provider ("provider"), who receives a directive issued under 50 U.S.C. § 1881a(h)(1), may file a petition to modify or set aside such directive under 50 U.S.C. § 1881a(h)(4). A petition may be filed by the provider's counsel.

**Rule 22. Petition to Compel Compliance With a Directive.** In the event a provider fails to comply with a directive issued under 50 U.S.C. § 1881a(h)(1), the government may, pursuant to 50 U.S.C. § 1881a(h)(5), file a petition to compel compliance with the directive.

**Rule 23. Contents of Petition.** The petition must:

    **(a)** state clearly the relief being sought;

    **(b)** state concisely the factual and legal grounds for modifying, setting aside, or compelling compliance with the directive at issue;

    **(c)** include a copy of the directive and state the date on which the directive was served on the provider; and

    **(d)** state whether a hearing is requested.

**Rule 24. Response.**

    **(a) By Government.** The government may, within seven days following notification under Rule 28(b) that plenary review is necessary, file a response to a provider's petition.

    **(b) By Provider.** The provider may, within seven days after service of a petition by the government to compel compliance, file a response to the petition.

**Rule 25. Length of Petition and Response; Other Papers.**

    **(a) Length.** Unless the Court directs otherwise, a petition and response each must not exceed 20 pages in length, including any attachments (other than a copy of the directive at issue).

    **(b) Other papers.** No supplements, replies, or sur-replies may be filed without leave of the Court.

**Rule 26. Notification of Presiding Judge.** Upon receipt, the Clerk must notify the Presiding Judge that a petition to modify, set aside, or compel compliance with a directive issued under 50 U.S.C. § 1881a(h)(1) has been filed. If the Presiding Judge is not reasonably available when the Clerk receives a petition, the Clerk must notify each of the local Judges, in order of seniority on the Court, and, if necessary, each of the other Judges, in order of seniority on the Court, until a Judge who is reasonably available has received notification. The reasonably available Judge who receives notification will be the acting Presiding Judge ("Presiding Judge") for the case.

**Rule 27. Assignment.**

    **(a) Presiding Judge.** As soon as possible after receiving notification from the Clerk that a petition has been filed, and no later than 24 hours after the filing of the petition, the Presiding Judge must assign the matter to a Judge in the petition review pool established by 50 U.S.C. § 1803(e)(1). The Clerk must record the date and time of the assignment.

    **(b) Transmitting Petition.** The Clerk must transmit the petition to the assigned Judge as soon as possible but no later than 24 hours after being notified of the assignment by the Presiding Judge.

**Rule 28.  Review of Petition to Modify or Set Aside a Directive.**

**(a) Initial Review Pursuant to 50 U.S.C. § 1881a(h)(4)(D).**

(1) A Judge must conduct an initial review of a petition to modify or set aside a directive within five days after being assigned such petition.

(2) If the Judge determines that the provider's claims, defenses, or other legal contentions are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, the Judge must promptly deny such petition, affirm the directive, and order the provider to comply with the directive. Upon making such determination or promptly thereafter, the Judge must provide a written statement of reasons. The Clerk must transmit the ruling and statement of reasons to the provider and the government.

**(b) Plenary Review Pursuant to 50 U.S.C. § 1881a(h)(4)(E).**

(1) If the Judge determines that the petition requires plenary review, the Court must promptly notify the parties. The Judge must provide a written statement of reasons for the determination.

(2) The Judge must affirm, modify, or set aside the directive that is the subject of the petition within the time permitted under 50 U.S.C. §§ 1881a(h)(4)(E) and 1881a(j)(2).

(3) The Judge may hold a hearing or conduct proceedings solely on the papers filed by the provider and the government.

**(c) Burden.**  Pursuant to 50 U.S.C. § 1881a(h)(4)(C), a Judge may grant the petition only if the Judge finds that the challenged directive does not meet the requirements of 50 U.S.C. § 1881a or is otherwise unlawful.

**(d) Continued Effect.**  Pursuant to 50 U.S.C. § 1881a(h)(4)(F), any directive not explicitly modified or set aside by the Judge remains in full effect.

**Rule 29.  Review of Petition to Compel Compliance Pursuant to 50 U.S.C. § 1881a(h)(5)(C).**

(a) The Judge reviewing the government's petition to compel compliance with a directive must, within the time permitted under 50 U.S.C. §§ 1881a(h)(5)(C) and 1881a(j)(2), issue an order requiring the provider to comply with the directive or any part of it, as issued or as modified, if the Judge finds that the directive meets the requirements of 50 U.S.C. § 1881a and is otherwise lawful.

(b) The Judge must provide a written statement of reasons for the determination. The Clerk must transmit the ruling and statement of reasons to the provider and the government.

**Rule 30.  *In Camera* Review.**  Pursuant to 50 U.S.C. § 1803(e)(2), the Court must review a petition under 50 U.S.C. § 1881a(h) and conduct related proceedings *in camera*.

**Rule 31.  Appeal.**  Pursuant to 50 U.S.C. § 1881a(h)(6) and subject to Rules 54 through 59 of these Rules, the government or the provider may petition the Foreign Intelligence Surveillance Court of Review ("Court of Review") to review the Judge's ruling.

### Title VII.  Supplemental Procedures for Proceedings Under 50 U.S.C. § 1861(f)

**Rule 32.  Scope.**  Together with the generally-applicable provisions of these Rules regarding filing, service, and other matters, these supplemental procedures apply in proceedings under 50 U.S.C. § 1861(f).

### Rule 33.  Petition Challenging Production or Nondisclosure Order.

   **(a)  Who May File.**  The recipient of a production order or nondisclosure order under 50 U.S.C. § 1861 ("petitioner") may file a petition challenging the order pursuant to 50 U.S.C. § 1861(f).  A petition may be filed by the petitioner's counsel.

   **(b)  Time to File Petition.**

   **(1)  Challenging a Production Order.**  The petitioner must file a petition challenging a production order within 20 days after the order has been served.

   **(2)  Challenging a Nondisclosure Order.**  A petitioner may not file a petition challenging a nondisclosure order issued under 50 U.S.C. § 1861(d) earlier than one year after the order was entered.

   **(3)  Subsequent Petition Challenging a Nondisclosure Order.**  If a Judge denies a petition to modify or set aside a nondisclosure order, the petitioner may not file a subsequent petition challenging the same nondisclosure order earlier than one year after the date of the denial.

### Rule 34.  Contents of Petition.  A petition must:

   **(a)** state clearly the relief being sought;

   **(b)** state concisely the factual and legal grounds for modifying or setting aside the challenged order;

   **(c)** include a copy of the challenged order and state the date on which it was served on the petitioner; and

   **(d)** state whether a hearing is requested.

**Rule 35.  Length of Petition.**  Unless the Court directs otherwise, a petition may not exceed 20 pages in length, including any attachments (other than a copy of the challenged order).

### Rule 36.  Request to Stay Production.

   **(a)  Petition Does Not Automatically Effect a Stay.**  A petition does not automatically stay the underlying order.  A production order will be stayed only if the petitioner requests a stay and the Judge grants such relief.

   **(b)  Stay May Be Requested Prior to Filing of a Petition.**  A petitioner may request the Court to stay the production order before filing a petition challenging the order.

**Rule 37.  Notification of Presiding Judge.**  Upon receipt, the Clerk must notify the Presiding Judge that a petition challenging a production or nondisclosure order has been filed.  If the Presiding Judge is not reasonably available when the Clerk receives the petition, the Clerk must

notify each of the local Judges, in order of seniority on the Court, and, if necessary, each of the other Judges, in order of seniority on the Court, until a Judge who is reasonably available has received notification. The reasonably available Judge who receives notification will be the acting Presiding Judge ("Presiding Judge") for the case.

**Rule 38. Assignment.**

(a) **Presiding Judge.** Immediately after receiving notification from the Clerk that a petition has been filed, the Presiding Judge must assign the matter to a Judge in the petition pool established by 50 U.S.C. § 1803(e)(1). The Clerk must record the date and time of the assignment.

(b) **Transmitting Petition.** The Clerk must transmit the petition to the assigned Judge as soon as possible but no later than 24 hours after being notified of the assignment by the Presiding Judge.

**Rule 39. Initial Review.**

(a) **When.** The Judge must review the petition within 72 hours after being assigned the petition.

(b) **Frivolous Petition.** If the Judge determines that the petition is frivolous, the Judge must:

(1) immediately deny the petition and affirm the challenged order;

(2) promptly provide a written statement of the reasons for the denial; and

(3) provide a written ruling, together with the statement of reasons, to the Clerk, who must transmit the ruling and statement of reasons to the petitioner and the government.

(c) **Non-Frivolous Petition.**

(1) **Scheduling.** If the Judge determines that the petition is not frivolous, the Judge must promptly issue an order that sets a schedule for its consideration. The Clerk must transmit the order to the petitioner and the government.

(2) **Manner of Proceeding.** The judge may hold a hearing or conduct the proceedings solely on the papers filed by the petitioner and the government.

**Rule 40. Response to Petition; Other Papers.**

(a) **Government's Response.** Unless the Judge orders otherwise, the government must file a response within 20 days after the issuance of the initial scheduling order pursuant to Rule 39(c). The response must not exceed 20 pages in length, including any attachments (other than a copy of the challenged order).

(b) **Other Papers.** No supplements, replies, or sur-replies may be filed without leave of the Court.

**Rule 41. Rulings on Non-frivolous Petitions.**

(a) **Written Statement of Reasons.** If the Judge determines that the petition is not frivolous, the Judge must promptly provide a written statement of the reasons for modifying, setting aside, or affirming the production or nondisclosure order.

**(b) Affirming the Order.** If the Judge does not modify or set aside the production or nondisclosure order, the Judge must affirm it and order the recipient promptly to comply with it.

**(c) Transmitting the Judge's Ruling.** The Clerk must transmit the Judge's ruling and written statement of reasons to the petitioner and the government.

**Rule 42. Failure to Comply.** If a recipient fails to comply with an order affirmed under 50 U.S.C. § 1861(f), the government may file a motion seeking immediate enforcement of the affirmed order. The Court may consider the government's motion without receiving additional submissions or convening further proceedings on the matter.

**Rule 43. *In Camera* Review.** Pursuant to 50 U.S.C. § 1803(e)(2), the Court must review a petition under 50 U.S.C. § 1861(f) and conduct related proceedings *in camera*.

**Rule 44. Appeal.** Pursuant to 50 U.S.C. § 1861(f)(3) and subject to Rules 54 through 59 of these Rules, the government or the petitioner may petition the Court of Review to review the Judge's ruling.

## Title VIII. En Banc Proceedings

**Rule 45. Standard for Hearing or Rehearing En Banc.** Pursuant to 50 U.S.C. § 1803(a)(2)(A), the Court may order a hearing or rehearing en banc only if it is necessary to secure or maintain uniformity of the Court's decisions, or the proceeding involves a question of exceptional importance.

**Rule 46. Initial Hearing En Banc on Request of a Party.** The government in any proceeding, or a party in a proceeding under 50 U.S.C. § 1861(f) or 50 U.S.C. § 1881a(h)(4)-(5), may request that the matter be entertained from the outset by the full Court. However, initial hearings en banc are extraordinary and will be ordered only when a majority of the Judges determines that a matter is of such immediate and extraordinary importance that initial consideration by the en banc Court is necessary, and en banc review is feasible in light of applicable time constraints on Court action.

**Rule 47. Rehearing En Banc on Petition by a Party.**
    **(a) Timing of Petition and Response.** A party may file a petition for rehearing en banc permitted under 50 U.S.C. § 1803(a)(2) no later than 30 days after the challenged order or decision is entered. In an adversarial proceeding in which a petition for rehearing en banc is permitted under § 1803(a)(2), a party must file a response to the petition within 14 days after filing and service of the petition.
    **(b) Length of Petition and Response.** Unless the Court directs otherwise, a petition for rehearing en banc and a response to a petition for rehearing en banc each must not exceed 15 pages, including any attachments (other than the challenged order or decision).

**Rule 48. Circulation of En Banc Petitions and Responses.** The Clerk must, after consulting with the Presiding Judge and in a manner consistent with applicable security requirements, promptly provide a copy of any timely-filed en banc petition permitted under 50 U.S.C. § 1803(a)(2), and any timely-filed response thereto, to each Judge.

**Rule 49. Court-Initiated En Banc Proceedings.** A Judge to whom a matter has been presented may request that all Judges be polled with respect to whether the matter should be considered or reconsidered en banc. On a Judge's request, the Clerk must, after consulting with the Presiding Judge and in a manner consistent with applicable security requirements, promptly provide notice of the request, along with a copy of pertinent materials, to every Judge.

**Rule 50. Polling.**
    **(a) Deadline for Vote.** The Presiding Judge must set a deadline for the Judges to submit their vote to the Clerk on whether to grant a hearing or rehearing en banc. The deadline must be communicated to all Judges at the time the petition or polling request is circulated.
    **(b) Vote on Stay.** In the case of rehearing en banc, the Presiding Judge may request that all Judges also vote on whether and to what extent the challenged order or ruling should be stayed or remain in effect if rehearing en banc is granted, pending a decision by the en banc Court on the merits.

**Rule 51. Stay Pending En Banc Review.**
    **(a) Stay or Modifying Order.** In accordance with 50 U.S.C. §§ 1803(a)(2)(B) and 1803(f), the Court en banc may enter a stay or modifying order while en banc proceedings are pending.
    **(b) Statement of Position Regarding Continued Effect of Challenged Order.** A petition for rehearing en banc and any response to the petition each must include a statement of the party's position as to whether and to what extent the challenged order should remain in effect if rehearing en banc is granted, pending a decision by the en banc Court on the merits.

**Rule 52. Supplemental Briefing.** Upon ordering hearing or rehearing en banc, the Court may require the submission of supplemental briefs.

**Rule 53. Order Granting or Denying En Banc Review.**
    **(a) Entry of Order.** If a majority of the Judges votes within the time allotted for polling that a matter be considered en banc, the Presiding Judge must direct the Clerk to enter an order granting en banc review. If a majority of the Judges does not vote to grant hearing or rehearing en banc within the time allotted for polling, the Presiding Judge must direct the Clerk to enter an order denying en banc review.
    **(b) Other Issues.** The Presiding Judge may set the time of an en banc hearing and the time and scope of any supplemental hearing in the order granting en banc review. The

-13-

order may also address whether and to what extent the challenged order or ruling will be stayed or remain in effect pending a decision by the en banc Court on the merits.

## Title IX. Appeals

**Rule 54. How Taken.** An appeal to the Court of Review, as permitted by law, may be taken by filing a petition for review with the Clerk.

**Rule 55. When Taken.**

(a) **Generally.** Except as the Act provides otherwise, a party must file a petition for review no later than 30 days after entry of the decision or order as to which review is sought.

(b) **Effect of En Banc Proceedings.** Following the timely submission of a petition for rehearing en banc permitted under 50 U.S.C. § 1803(a)(2) or the grant of rehearing en banc on the Court's own initiative, the time otherwise allowed for taking an appeal runs from the date on which such petition is denied or dismissed or, if en banc review is granted, from the date of the decision of the en banc Court on the merits.

**Rule 56. Stay Pending Appeal.** In accordance with 50 U.S.C. § 1803(f), the Court may enter a stay of an order or an order modifying an order while an appeal is pending.

**Rule 57. Motion to Transmit the Record.** Together with the petition for review, the party filing the appeal must also file a motion to transmit the record to the Court of Review.

**Rule 58. Transmitting the Record.** The Clerk must arrange to transmit the record under seal to the Court of Review as expeditiously as possible, no later than 30 days after an appeal has been filed. The Clerk must include a copy of the Court's statement of reasons for the decision or order appealed from as part of the record on appeal.

**Rule 59. Oral Notification to the Court of Review.** The Clerk must orally notify the Presiding Judge of the Court of Review promptly upon the filing of a petition for review.

## Title X.  Administrative Provisions

**Rule 60.  Duties of the Clerk.**

(a) **General Duties.** The Clerk supports the work of the Court consistent with the directives of the Presiding Judge. The Presiding Judge may authorize the Clerk to delegate duties to staff in the Clerk's office or other designated individuals.

(b) **Maintenance of Court Records.** The Clerk:

(1) maintains the Court's docket and records — including records and recordings of proceedings before the Court — and the seal of the Court;

-14-

(2) accepts papers for filing;

(3) keeps all records, pleadings, and files in a secure location, making those materials available only to persons authorized to have access to them; and

(4) performs any other duties, consistent with the usual powers of a Clerk of Court, as the Presiding Judge may authorize.

**Rule 61. Office Hours.** Although the Court is always open, the regular business hours of the Clerk's Office are 9:00 a.m. to 5:00 p.m. daily except Saturdays, Sundays, and legal holidays. Except when the government submits an application following an emergency authorization, or when the Court otherwise directs, any filing outside these hours will be recorded as received at the start of the next business day.

**Rule 62. Release of Court Records.**

(a) **Publication of Opinions.** The Judge who authored an order, opinion, or other decision may *sua sponte* or on motion by a party request that it be published. Upon such request, the Presiding Judge, after consulting with other Judges of the Court, may direct that an order, opinion or other decision be published. Before publication, the Court may, as appropriate, direct the Executive Branch to review the order, opinion, or other decision and redact it as necessary to ensure that properly classified information is appropriately protected pursuant to Executive Order 13526 (or its successor).

(b) **Other Records.** Except when an order, opinion, or other decision is published or provided to a party upon issuance, the Clerk may not release it, or other related record, without a Court order. Such records must be released in conformance with the security measures referenced in Rule 3.

(c) **Provision of Court Records to Congress.**

(1) **By the Government.** The government may provide copies of Court orders, opinions, decisions, or other Court records, to Congress, pursuant to 50 U.S.C. §§ 1871(a)(5), 1871(c), or 1881f(b)(1)(D), or any other statutory requirement, without prior motion to and order by the Court. The government, however, must contemporaneously notify the Court in writing whenever it provides copies of Court records to Congress and must include in the notice a list of the documents provided.

(2) **By the Court.** The Presiding Judge may provide copies of Court orders, opinions, decisions, or other Court records to Congress. Such disclosures must be made in conformance with the security measures referenced in Rule 3.

**Rule 63. Practice Before Court.** An attorney may appear on a matter with the permission of the Judge before whom the matter is pending. An attorney who appears before the Court must be a licensed attorney and a member, in good standing, of the bar of a United States district or circuit court, except that an attorney who is employed by and represents the United States or any of its agencies in a matter before the Court may appear before the Court regardless of federal bar membership. All attorneys appearing before the Court must have the appropriate security clearance.