# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| ELECTRONIC FRONTIER ) | |
| FOUNDATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-1441-ABJ |
| ) | |
| ) | |
| DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE DEPARTMENT OF JUSTICE'S RENEWED MOTION FOR SUMMARY JUDGMENT

STUART F. DELERY
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division

JACQUELINE COLEMAN SNEAD (D.C. Bar 459548)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, D.C.  20530
Telephone:  (202) 514-3418
Fax:  (202) 616-8470
E-mail: Jacqueline.Snead@usdoj.gov

**Counsel for the Department of Justice**

# INTRODUCTION

In an effort to strike the right balance between government transparency and the protection of critical intelligence activities, and to facilitate public debate on the reauthorization of the Foreign Intelligence Surveillance Act Amendments Act of 2008 ("FAA"), the government in 2012 declassified four statements concerning its activities pursuant to Section 702 of the FAA. Electronic Frontier Foundation ("EFF" or "Plaintiff") then submitted a Freedom of Information Act ("FOIA") request seeking additional information related to two of the declassified statements, specifically, that on at least one occasion the Foreign Intelligence Surveillance Court ("FISC") "held that some collection carried out pursuant to the Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment" and that "on at least one occasion the FISA Court has reached th[e ] conclusion" that "the government's implementation of Section 702 of FISA has sometimes circumvented the spirit of the law." Notwithstanding that the "government has remedied these concerns and the FISC has continued to approve [] collection [pursuant to Section 702] as consistent with the statute and reasonable under the Fourth Amendment," EFF complained that further information about those statements had not been disclosed.  Thus, EFF invoked FOIA and then this Court's jurisdiction to obtain previously undisclosed and properly classified information about the government's intelligence activities under Section 702.  FOIA exemptions (b)(1) and (b)(3), however, protect such information from disclosure, and thus the government moved for summary judgment on those grounds.

During the pendency of this lawsuit, however, there were a series of unauthorized disclosures by a former government contractor and by certain media outlets of classified information about the government's intelligence activities, including those conducted pursuant to Section 702.  These disclosures have caused exceptionally grave harm to the national security by

1

alerting our adversaries to the government's signals intelligence programs, and threaten long-lasting and potentially irreversible harm to the government's ability to identify and respond to threats.  In the wake of the disclosures, in order to correct misinformation and to reassure the American public as to the numerous safeguards that protect privacy and civil liberties, the Director of National Intelligence ("DNI"), at the direction of the President, undertook a process to determine what additional information could be disclosed consistent with the need to prevent further harm to the national security.  Pursuant to that directive, the DNI declassified discrete information about the government's collection of foreign intelligence pursuant to Section 702 and other programs.

As a result of the DNI's declassification of additional information related to Section 702, the government notified the Court and Plaintiff that it was withdrawing its pending summary judgment motion and re-processing the responsive documents.  Despite the production of newly redacted documents, however, EFF continues to press this lawsuit.  Specifically, EFF challenges the government's withholding of details from the responsive October 2011 FISC Opinion that remain classified under Executive Order 13526 and are exempted from public disclosure by other federal statutes.  EFF's challenge is unwarranted because exemptions (b)(1) and (b)(3) justify the continued withholding of such details.  The Department therefore is entitled to judgment in this action, and the Court accordingly should grant this motion.

## STATUTORY BACKGROUND

Congress enacted the Foreign Intelligence Surveillance Act of 1978 ("FISA") to authorize and establish procedures for "electronic surveillance to obtain foreign intelligence information."  Pub. L. 95-511, 95th Cong., 2d Sess. (Oct. 25, 1978).  In 2008, the Act was amended to include "a new and independent source of intelligence collection authority, beyond

2

that granted in traditional FISA." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1144 (2013);

Pub. L. 110-261, 110th Cong, 2d Sess. (July 10, 2008) ("FISA Amendments Act of 2008" or

"FAA").  That authority, which is set forth in Section 702, empowers the Attorney General and

the DNI to authorize jointly "for a period of up to 1 year from the effective date of the

authorization, the targeting of persons reasonably believed to be located outside the United States

to acquire foreign intelligence information."  50 U.S.C. § 1881a(a).  Such acquisitions of foreign

intelligence information must not "intentionally target any person known at the time of

acquisition to be located in the United States;" "intentionally target a person reasonably believed

to be located outside the United States if the purpose of such acquisition is to target a particular,

known person reasonably believed to be in the United States;" "intentionally target a United

States person reasonably believed to be located outside the United States;" or "intentionally

acquire any communication as to which the sender and all intended recipients are known at the

time of the acquisition to be located in the United States."  *Id.* § 1881a(b).  In addition, the

acquisitions of foreign intelligence authorized by Section 702 "shall be conducted in a manner

consistent with the fourth amendment to the Constitution of the United States."  *Id.*

Section 702 acquisitions additionally are subject to minimization procedures, targeting

procedures, and compliance guidelines adopted by the Attorney General in consultation with the

DNI.  *See* 50 U.S.C. § 1881a(d)-(f).  The minimization procedures are specific measures that,

among other things, are "designed in light of the purpose and technique of the particular

surveillance, to minimize the acquisition and retention, and prohibit the dissemination, of

nonpublicly available information concerning unconsenting United States persons consistent

with the need of the United States to obtain, produce, and disseminate foreign intelligence

information."[1]  50 U.S.C. § 1801(h)(1).  The targeting procedures "ensure that any acquisition

authorized under [Section 702] is limited to targeting persons reasonably believed to be located

outside the United States" and "prevent the intentional acquisition of any communication as to

which the sender and all intended recipients are known at the time of the acquisition to be

located in the United States."  50 U.S.C. § 1881a(d)(1)(A), (B).  Finally, the required compliance

guidelines must ensure "compliance with the limitations [set out in Section 1881a(b)]," and

ensure "that an application for a court order is filed as required by this Act."  50 U.S.C. §

1881a(f)(1)(A), (B).

Thus, in general, before an authorization under Section 702 can be implemented, the

Attorney General and the DNI "shall provide to the Foreign Intelligence Surveillance Court" a

written certification and any supporting affidavit attesting that all necessary procedures are in

place and the required guidelines adopted "consistent with the requirements of the fourth

amendment."  50 U.S.C. § 1881a(g)(1)(A), (g)(2)(A)(iv).  The certification additionally must

attest that "a significant purpose of the acquisition is to obtain foreign intelligence information"

and that "the acquisition involves obtaining foreign intelligence information from or with the

assistance of an electronic communication service provider."  *Id.* § 1881a(g)(2)(A)(v)-(vi).

The FISC has jurisdiction to review certifications and targeting and minimization

procedures.  That court reviews targeting and minimization procedures to ensure that they

comply with all statutory requirements and are consistent with the Fourth Amendment.  The

---

[1]  The minimization procedures also should:

(1)  "require that nonpublicly available information, which is not foreign intelligence information . . . not be disseminated in a manner that identifies any United States person, without such person's consent, unless such person's identity is necessary to understand foreign intelligence information or assess its importance;" and

(2)  "allow for the retention and dissemination of information that is evidence of a crime which has been, is being, or is about to be committed and that is to be retained or disseminated for law enforcement purposes."

50 U.S.C. § 1801(h)(2)-(3); *see also* 50 U.S.C. § 1821(4)(A)-(D).

FISC reviews Section 702 certifications to ensure that they contain all required elements.  *Id.* § 1881a(i).  If the FISC concludes that a certification "contains all the required elements" and that "the targeting and minimization procedures adopted" satisfy their statutory requirements and are consistent with the Fourth Amendment, that court "shall enter an order approving the certification and the use . . . of the procedures for the acquisition."  *Id.* § 1881a(i)(2)(A).  However, if the FISC determines that the certification is deficient in any respect, the Court "shall issue an order directing the Government to . . . (i) correct any deficiency identified by the Court's order not later than 30 days after the date on which the Court issues the order; or (ii) cease, or not begin, the implementation of the authorization for which [the] certification was submitted."  *Id.* § 1881a(i)(3)(B)(i)-(ii).  A written statement explaining the reasons for the FISC's determination shall issue simultaneously with the order.  Neither the statement nor the order can be released publicly except by the FISC and Executive Branch.  *See* FISC Rules of Procedure ("FISC R. P.") 62(b); 50 U.S.C. § 1803(c).

       No targeting pursuant to Section 702 can commence except upon an order of the FISC or a determination by the Attorney General and the DNI that "exigent circumstances exist" that do not permit "the issuance of an order" and that "without immediate implementation of [the Section 702] authorization . . . intelligence important to the national security of the United States may be lost or not timely acquired."  *Id.* § 1881a(c)(2).  In the event Section 702 authorization is based on such a determination, the Attorney General and the DNI "shall submit to the [FISC] a certification for authorization as soon as practicable but in no event later than 7 days after such determination is made."  50 U.S.C. § 1881a(g)(1)(B).

Although Section 702 was scheduled to sunset at the end of 2012, Congress extended the

FISA Amendments Act of 2008 for another five years or until December 31, 2017.  *See* Pub. L.

No. 112-238, 112th Cong., 2d Sess. (Dec. 30, 2012).

### DNI DECLASSIFICATION OF INFORMATION CONCERNING INTELLIGENCE COLLECTION PURSUANT TO SECTION 702

In advance of Congress's reauthorization decision last year and at the request of Senator

Ron Wyden, the Office of the DNI declassified the following statements concerning the

government's surveillance activities pursuant to Section 702:

(1) A recent unclassified report noted that the Foreign Intelligence Surveillance Court has repeatedly held that collection carried out pursuant to the FISA Section 702 minimization procedures used by the government is reasonable under the Fourth Amendment.

(2) It is also true that on at least one occasion the Foreign Intelligence Surveillance Court held that some collection carried out pursuant to the Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment.

(3) [According to Senator Wyden,] the government's implementation of Section 702 of FISA has sometimes circumvented the spirit of the law, and on at least one occasion the FISA Court has reached this same conclusion.

(4) The government has remedied these concerns and the FISC has continued to approve the collection as consistent with the statute and reasonable under the Fourth Amendment.

*See* Compl. for Inj. Relief ¶ 10, Aug. 20, 2012, ECF No. 1; *see also*

http://www.wyden.senate.gov/download/letter-from-odni-responding-to-wyden-concerns-about-

fisa-amendments.

Recently, and in response to unauthorized disclosures in June 2013 of classified

information concerning the government's collection of intelligence pursuant to FISA as

amended, the President directed the DNI to declassify and make public as much information as

possible about such collection while being mindful of the need to protect sensitive classified

intelligence activities and national security.  *See* Declaration of Jennifer Hudson ("Hudson

Decl.") ¶¶ 15-21, filed herewith; *see also* Declaration of Dr. David Sherman ("Sherman Decl.") ¶ 15, filed herewith.  The U.S. Intelligence Community therefore undertook a coordinated, multi-agency review of information that concerned the collection of intelligence pursuant to FISA.  *See* Hudson Decl. ¶ 19.  The DNI subsequently authorized the declassification and public release of previously classified information and documents concerning the collection of foreign intelligence pursuant to Section 702.  *See* Hudson Decl. ¶ 21.  This recently declassified information is posted on the website www.dni.gov as well as the Tumblr website www.icontherecord.tumblr.com, which is intended to provide immediate and direct public access to factual information related to the lawful foreign surveillance activities carried out by the U.S. Intelligence Community.  *See* Hudson Decl. ¶ 21.

Other details concerning the government's intelligence activities pursuant to Section 702 remain classified.  *See* Hudson Decl. ¶ 16; *see also* Sherman Decl. ¶ 16.

## STATEMENT OF FACTS

By letter dated July 26, 2012, Plaintiff submitted a FOIA request to the Department of Justice's National Security Division ("NSD") seeking records related to certain of the statements declassified last year concerning the government's surveillance activities pursuant to Section 702.  *See* Hudson Decl. ¶ 10.  Specifically, EFF requested the following records:

(1) Any written opinion or order, as described in the statement quoted above, in which "the Foreign Intelligence Surveillance Court held that some collection carried out pursuant to the Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment";

(2) Any written opinion or order, as described in the statement quoted above, reflecting or concerning a FISC determination that "the government's implementation of Section 702 of FISA has sometimes circumvented the spirit of the law"; and

(3) Any briefing provided to the Senate Select Committee on Intelligence or the House Permanent Select Committee on Intelligence concerning the FISC opinions or orders, described in items (1) and (2) above.

Hudson Decl. ¶ 10.  NSD informed Plaintiff, by letter dated January 3, 2013, that five documents responsive to its request had been located, (Hudson Decl. ¶ 11):

> (1) a FISC order responsive to Item 1 of Plaintiff's FOIA request ("Document A");
>
> (2) the redacted copy of the same FISC order that was provided to Congress pursuant to 50 U.S.C. § 1871 ("Document B");
>
> (3) a classified white paper prepared for Congress, only one paragraph of which was responsive to Plaintiff's FOIA request ("Document C");
>
> (4) a Joint Statement Before the Permanent Select Committee on Intelligence, United States House of Representatives ("Document D"), one section of which was responsive to Plaintiff's FOIA request; and
>
> (5) a Joint Statement Before the Senate Select Committee on Intelligence, one section of which was responsive to Plaintiff's FOIA request ("Document E").

See Hudson Decl. ¶ 11; see also Def.'s Statement of Material Facts ("Def. SOMF") ¶ 1, filed herewith.  The Department originally withheld from Plaintiff in full Documents A and B pursuant to exemptions (b)(1) and (b)(3) and, alternatively, a jurisdictional argument not advanced here.  See Hudson Decl. ¶ 11.  The one responsive paragraph of Document C and the non-segregable, responsive portions of Documents D and E also were withheld pursuant to those exemptions.  See Hudson Decl. ¶ 11.  On April 1, 2013, the Department moved for summary judgment and an order upholding those withholdings under FOIA.  See Mot. for Summ. J., Apr. 1, 2013, ECF No. 11; Mem. of Points & Authorities in Supp. of Dep't of Justice's Mot. for Summ. J., Apr. 1, 2013, ECF No. 11-1.  At the time of that filing, the government's withholdings were warranted under exemptions (b)(1) and (b)(3) based on the then classification level of the records and then existing circumstances.  See Hudson Decl. ¶ 22 (explaining that "properly classified TOP SECRET and SECRET information was discretionarily released as part of th[e multi-agency] review process that technically could and would have been withheld under FOIA"); Sherman Decl. ¶13 (explaining that "NSA's withholdings, as stated in its 1 April 2013

declaration, were appropriate and consistent with the FOIA's requirements under the circumstances as they existed on the date NSA's declaration was filed with this Court."); Sherman Decl. ¶ 12 (explaining that NSA previously "provided a declaration to this Court justifying the withholding in full of the 3 October 2011 FISC Opinion as exempt from release based upon Exemptions 1 and 3").

While that motion was pending, and in response to certain unauthorized disclosures of classified information concerning the government's collection of foreign intelligence, including pursuant to Section 702, the U.S. Intelligence Community commenced a coordinated, multi-agency review of information concerning such collection for the purpose of declassifying and making public as much information as possible. The documents identified as responsive to Plaintiff's FOIA request were among the many documents reviewed during that multi-agency effort. The Department advised the Court of the likely impact of any declassification decisions on the withholdings in this case and subsequently withdrew its original motion for summary judgment on that basis. *See* Def.'s Consolidated Status Rpt. & Unopposed Mot. for Nine-Day Extension of Time, Aug. 9, 2013, ECF No. 15.

On August 21, 2013, the Department produced to Plaintiff redacted versions of the five documents previously at issue in this lawsuit; the newly released information therein consisted of segregable information that the government recently declassified and made publicly available on www.dni.gov. *See* Hudson Decl. ¶ 12. The government continues to withhold information that is classified and thus exempt under (b)(1) and (b)(3).

By email dated August 27, 2013, EFF advised the Department that the only withholdings still in contention are those in the October 2011 FISC opinion, except the names of individuals or companies, including communications service providers.  *See* Hudson Decl. ¶ 13.  The Department now moves for summary judgment and an order upholding those withholdings.

## ARGUMENT

FOIA represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'"  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted).  While FOIA generally requires agency disclosure, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused."  *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also* 5 U.S.C. § 552(b).  Although these exemptions should be "narrowly construed," (*Abramson*, 456 U.S. at 630), they should be given "meaningful reach and application," (*John Doe*, 493 U.S. at 152).  The Act "confers jurisdiction on the district courts 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld.'"  *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *see also* 5 U.S.C. § 552(a)(4)(B).

An agency is entitled to summary judgment when, as here, "the agency demonstrates that it has fully discharged its obligations under FOIA."  *Wilbur v. CIA*, 273 F. Supp. 2d 119, 124 (D.D.C. 2003).  "In determining whether the agency has satisfied this burden, the Court may rely solely on agency affidavits," (*Grove v. Department of Justice*, 802 F. Supp. 506, 509 (D.D.C. 1992) (internal citations omitted)), and should award summary judgment "solely on the basis of information provided by the agency in declarations," (*Darui v. United States Dep't of State*, 798

F. Supp. 2d 32, 37 (D.D.C. 2011)).  Such declarations should "describe 'the [responsive] documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Mack v. Department of Navy*, 259 F. Supp. 2d. 99, 104 (D.D.C. 2003); *see also Wheeler v. CIA*, 271 F. Supp. 2d 132, 136 (D.D.C. 2003).

Unless the declarations are "deficient, the court need not conduct further inquiry into their veracity." *Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F. Supp. 2d 41, 45 (D.D.C. 2001).  Rather, they "enjoy a presumption of good faith, which may not be rebutted by purely speculative claims." *Mack v. Department of Navy*, 259 F. Supp. 2d. 99, 105 (D.D.C. 2003) (internal quotations omitted).  That is especially true in cases implicating, as here, national security concerns.  Courts in such cases "have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." *Center for Nat'l Sec. Studies v. United States Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003); *ACLU v. United States Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (noting that courts "'must accord substantial weight to an agency's affidavit concerning the details of the classified status of [a] disputed record" because they "'lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case'"); *see also Wolf v. CIA*, 473 F.3d 370, 375 (D.C. Cir. 2007); *Krikorian v. Department of State*, 984 F.2d 461, 464 (D.C. Cir. 1993).  Affording such deference to the Declarations of Jennifer Hudson and Dr. David Sherman, the Court should uphold the government's actions in this case and enter judgment in favor of the Department.  *See generally* Hudson Decl. ¶¶ 6-51; Sherman Decl. ¶¶ 3-31; *see also generally* Def. SOMF ¶¶ 3-8.

11

## I.   THE COURT SHOULD UPHOLD THE CONTINUED WITHHOLDINGS FROM THE OCTOBER 2011 FISC OPINION UNDER EXEMPTION (B)(1).

The challenged withholdings from the October 2011 FISC opinion are exempt from disclosure under exemption (b)(1).  The Department has invoked exemption (b)(1) to protect information properly classified pursuant to Executive Order 13526.  This exemption protects records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy, and (B) are in fact properly classified pursuant to such Executive order."  *See* 5 U.S.C. § 552 (b)(1).  Exemption (b)(1) thus "establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by executive order."  *Military Audit Project v. Casey*, 656 F.2d 724, 737 (D.C. Cir. 1981).  An agency can demonstrate that it has properly withheld information under exemption (b)(1) if it establishes that it has met the requirements of the applicable Executive Order.  Substantively, the agency must show that the information at issue logically falls within the exemption, i.e., the Executive Order authorizes the classification of the information at issue.  Procedurally, the agency must demonstrate that it followed the proper procedures in classifying the information.  *See Salisbury v. United States*, 690 F.2d 966, 970-73 (D.C. Cir. 1982); *Military Audit Project*, 656 F.2d at 737-38.  An agency that demonstrates substantive and procedural compliance with an applicable Executive Order is entitled to summary judgment.  *See Abbotts v. Nuclear Regulatory Comm'n*, 766 F.2d 604, 606-08 (D.C. Cir. 1985).  Here that order is Executive Order No. 13526, "Classified National Security Information."  Under Section 1.1(a) of that order, information may be classified if:

(1) an original classification authority is classifying the information;

(2) the information is owned by, produced by or for, or is under the control of the United States Government;

(3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

75 Fed. Reg. 707, 707 (Dec. 29, 2009) ("Executive Order No. 13526").  As demonstrated by the Declarations of Jennifer Hudson and Dr. David Sherman, these conditions are met by the information the government continues to withhold from the October 2011 FISC Opinion.  *See Judicial Watch v. United States Dep't of Def.*, 715 F.3d 937, 940 (D.C. Cir. 2013) ("Agencies may establish the applicability of Exemption 1 by affidavit (or declaration)."); *see also* Hudson Decl. ¶¶ 23-42; Sherman Decl. ¶¶ 17-23; Def. SOMF ¶ 6.

### A. An Original Classification Authority Has Properly Classified the Information Withheld From the October 2011 FISC Opinion as Exempt Under (b)(1).

Ms. Hudson and Dr. Sherman have original classification authority and have determined that the challenged information withheld from the October 2011 FISC Opinion is properly classified.  *See* Hudson Decl. ¶ 27; Sherman Decl. ¶ 19.  Section 1.3(a) of Executive Order 13526 provides that the authority to classify information "may be exercised . . . [by] United States Government officials delegated this authority pursuant to [Section 1.3(c)]."  75 Fed. Reg. at 708.  Section 1.3(c)(2) provides that "'Top Secret' original classification authority may be delegated only by the President, the Vice President, or an agency head or official designated pursuant to [Section 1.3(a)(2)]."  75 Fed. Reg. at 708.  Ms. Hudson, pursuant to "a written delegation of authority by the Director of National Intelligence ('DNI') pursuant to section 1.3(c) of Executive Order 13526, [] hold[s] original classification authority ('OCA') at the TOP SECRET level."  Hudson Decl. ¶ 3.  Likewise, Dr. Sherman has TOP SECRET classification authority pursuant to Section 1.3 of Executive Order of 13526.  *See* Sherman Decl. ¶ 2.

13

As to all withholdings challenged by Plaintiff in the October 2011 FISC Opinion, Ms. Hudson and Dr. Sherman have examined the underlying information and determined that it is currently and properly classified under Executive Order 13526.  *See* Hudson Decl. ¶ 27 (explaining that "as an OCA at ODNI, [I] personally and independently examined the portions of the document that have been redacted and agreed with those redactions"); Sherman Decl. ¶ 19 ("I have reviewed the 3 October 2011 FISC Opinion and . . . have determined that all of the information withheld by NSA is currently and properly classified at the TOP SECRET-SCI level in accordance with E.O. 13526.").  Thus, condition (1) of Executive Order 13526 is satisfied here.

### B.    All of the Information Withheld From the October 2011 FISC Opinion is Government Information.

The second condition of Executive Order 13526 is also met by the challenged withholdings from the October 2011 FISC Opinion.  *See* 75 Fed. Reg. at 707 (requiring that information originally classified under Executive Order 13526 be "owned by, produced by or for, or [be] under the control of the United States Government").  The information withheld is owned by, was produced by, and clearly is under the control of the United States Government. *See* Hudson Decl. ¶ 28 (declaring that the "withheld information contains specific descriptions of the manner and means by which the Government targets non-U.S. persons located overseas to acquire foreign intelligence information under Section 702 of FISA"); Sherman Decl. ¶ 20 (declaring that the "information withheld by NSA in the 3 October 2011 FISC Opinion that the Plaintiff challenges can be generally described to pertain to operational details of NSA's collection activities under Section 702 of the FAA").

### C.   All of the Challenged Withholdings From the October 2011 FISC Opinion Are Within a Category Identified in Section 1.4 of Executive Order No. 13526.

The challenged information withheld from the October 2011 FISC Opinion satisfies the third condition of Executive Order 13526.  *See* 75 Fed. Reg. at 707 (requiring that information originally classified under this order be within a category identified in Section 1.4).  Section 1.4's categories include information concerning "intelligence activities (including covert action), intelligence sources or methods or cryptology" and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to national security." *Id.* at 709.  The information whose withholding Plaintiff challenges concerns these subjects.  *See* Sherman Decl. ¶ 18 (declaring that "[t]he categories of classified information in the document at issue here are those found in Section 1.4(c), which includes intelligence activities (including covert action), intelligence sources and methods, or cryptology; and Section 1.4(g), which includes vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security").

The withholdings of NSA information "pertain to operational details of NSA's collection activities under Section 702 of the FAA."  Sherman Decl. ¶ 20.  Specifically, that information falls into four categories:

> First, certain of the withheld information identifies the specific types of communications that NSA is able to successfully target and acquire pursuant to Section 702, and the means by which NSA performs its targeting and collection activities.[2]  Second, certain of the withheld information consists of specific technological limitations that impact NSA's capability to target and acquire certain communications pursuant to Section 702 of the FAA as well as the technological solutions that NSA employs to overcome such limitations, to the

---

[2]  Withholdings falling under this category of information can be found on pages 5, 30, 34, 36, 43, and 73 of the October 2011 FISC opinion.  *See* Sherman Decl. ¶ 20 n.3.

extent available. . . .[3]  Third, certain of the withheld information consists of
specific technical measures that NSA implements when targeting communications
pursuant to Section 702 of the FAA to ensure that the collection is targeted at
non-United States persons reasonably believed to be located outside of the United
States. . . .[4]  Finally, certain of the withheld information describes the specific
impact of changing Internet service provider protocols and services to NSA
targeting and acquisition activities carried out pursuant to Section 702 of the
FAA.[5]

Sherman Decl. ¶¶ 20-22.  Such information clearly satisfies the substantive requirements of

Executive Order 13526.

Likewise, the other challenged withholdings from the October 2011 FISC Opinion fall

within Section 1.4(c) of Executive Order 13526.  *See* Hudson Decl. ¶ 26.  As explained in the

Hudson Declaration, this information consists of "a) certification names and docket information

for FISC opinions and order under Section 702 and Section 402 of FISA;[6] b) the number of

certifications;[7] c) certification targets;[8] d) details of FBI's targeting procedures,[9] and e) details of

CIA's minimization procedures."[10]  Hudson Decl. ¶ 28.  "Th[is] withheld information contains

---

[3]  Withholdings falling under this category of information can be found on pages 30-31, 32, 35, 40, 47, 48, 57, 58, and 63 of the October 2011 FISC opinion.  *See* Sherman Decl. ¶ 20 n.4.

[4]  Withholdings falling under this category of information can be found on pages 5, 31, 33, and 58 of the October 2011 FISC opinion.  *See* Sherman Decl. ¶ 21 n.5.

[5]  Withholdings falling under this category of information can be found on pages 32 and 63 of the October 2011 FISC opinion.  *See* Sherman Decl. ¶ 22 n.6.

[6]  Such redacted information appears on pages 1; 2; 3 and n.2; 4; 5; 6; 7; 8 and n.6; 9; 11 and nn.7-9; 12 and n.11; 13 and nn.12-13; 18 and n.18; 19; 22; and 79 of the FISC Opinion, as well as pages 1 and 2 of the FISC Order.  *See* Hudson Decl. ¶ 29; *see also* Hudson Decl. ¶ 30 (explaining that "the docket information of prior FISC opinions and orders related to the 702 program, and in particular as that information appears on pages 3 and n.3; 10; 12 and n.11; 15; 16 and n.14; 17 and n.15; 18; 19 and n.19; 22; 28; 33; 36; 42; 44; 63 and n.57; 67; 68; 70; 72; 75; 77; and 80 and n.69 of the [October 2011 FISC Opinion] . . . continues to remain properly classified").

[7]  Such redacted information appears on pages 3 and 16 of the October 2011 FISC Opinion.  *See* Hudson Decl. ¶ 31.

[8]  Such redacted information appears on page 4 of the October 2011 FISC Opinion.  *See* Hudson Decl. ¶ 32.

[9]  Such redacted information appears on pages 20-24 of the October 2011 FISC Opinion.  *See* Hudson Decl. ¶¶ 37-38.

[10]  Such redacted information appears on pages 25-27 of the October 2011 FISC Opinion.  *See* Hudson Decl. ¶ 42.

specific descriptions of the manner and means by which the Government targets non-U.S.

persons located overseas to acquire foreign intelligence information under Section 702 of FISA.

As such it describes highly sensitive intelligence activities, sources and methods . . . ." *Id.*

Accordingly, this information too is within the scope of Section 1.4 and satisfies the third

requirement for classification under Executive Order 13526.

> **D.**     **The Unauthorized Disclosure of the Information the Government Continues to Withhold From the October 2011 FISC Opinion Reasonably Could Be Expected to Damage National Security.**

Notwithstanding that the government has declassified certain information related to the

government's surveillance activities pursuant to Section 702, (*see* Hudson Decl. ¶ 21), other

information continues to be classified at the TOP SECRET-SENSITIVE COMPARTMENTED

INFORMATION and SECRET levels.  *See* Hudson Decl. ¶ 27; Sherman Decl. ¶ 19.  That

information consists of previously undisclosed and classified information that if disclosed could

be expected to cause exceptionally grave or serious damage to the national security of the United

States.  *See* Hudson Decl. ¶ 27; Sherman Decl. ¶ 19.  The D.C. Circuit has recognized that

"[m]inor details of intelligence information may reveal more information than their apparent

insignificance suggests because much like a piece of jigsaw puzzle, each detail may aid in

piecing together other bits of information even when the individual piece is not of obvious

importance itself."  *Larson v. Department of State*, 565 F.3d 857, 864 (D.C. Cir. 2009) (internal

quotations and citations omitted); *ACLU v. Department of Justice*, 681 F.3d 61, 71 (2d Cir. 2012)

(same); *see also ACLU v. CIA*, 892 F. Supp. 2d 234, 247 (D.D.C. 2012).  Thus, the government's

declassification of certain information concerning its activities pursuant to Section 702 does not

suggest anything about the harm that could result from the disclosure of the previously

undisclosed information at issue in this case.  *See* Hudson Decl. ¶¶ 39-40.

The fourth condition of information classified pursuant to Executive Order 13526 requires, as here, that "the original classification authority determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security."  75 Fed. Reg. at 707.  Recognizing that national security is a uniquely executive purview, courts typically defer to such an agency determination.  *Center for Nat'l Sec. Studies*, 331 F.3d at 927 ("[I]n the FOIA context, we have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review."); *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977) ("Few judges have the skill or experience to weigh the repercussions of disclosure of intelligence information."); *see also Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) ("Judges . . . lack the expertise necessary to second-guess [] agency opinions in the typical national security FOIA case").  Thus, the Court should defer here to Ms. Hudson's and Dr. Sherman's assessments of the likely repercussions to the national security from disclosure of the information the government continues to withhold from the October 2011 FISC Opinion.

In his declaration, Dr. Sherman identifies several harms that would attend the unauthorized disclosure of the four categories of NSA information withheld from that Opinion. *See* Sherman Decl. ¶¶ 7, 20-23.  The public disclosure of the "specific types of communication that NSA is able to successfully target and acquire" or the "specific technological limitations that impact NSA's capability to target and acquire certain communications" "would reveal information to adversaries that could be used to develop technical countermeasures to NSA's Section 702 targeting and collection activities."  Sherman Decl. ¶ 20.  Additionally, such disclosure "would allow targeted adversaries to frustrate SIGINT collection by using different communications techniques that they now know to be safe or developing customized methods of

communication that exploit technical limitations impairing NSA's collection capabilities."
Sherman Decl. ¶ 20.  NSA thereby might "be denied access to adversaries' communications and
[] suffer a loss of access to information crucial to the national security and defense of the United
States."  Sherman Decl. ¶ 20.

The unauthorized disclosure of information that Dr. Sherman characterizes as "specific
technical measures that NSA implements when targeting communications pursuant to Section
702 of the FAA to ensure that the collection is targeted at non-United States persons reasonably
believed to be located outside of the United States" would "provide persons targeted by NSA
using Section 702 of the FAA . . . with a roadmap for evading NSA's acquisition of their
communications pursuant to Section 702" and "would enable an adversary to take
countermeasures and potentially avoid the acquisition of [such] communications."  Sherman
Decl. ¶ 21.  Similar harms would follow the unauthorized disclosure of the withheld descriptions
of "the specific impact of changing Internet service provider protocols and services to NSA
targeting and acquisition activities."  Sherman Decl. ¶ 22; *see also id.* (explaining that the
unauthorized disclosure of such information "would provide adversaries with insights into which
of their methods of communication are vulnerable to NSA's surveillance" and "provide
adversaries with a roadmap for evading NSA's acquisition of their communications pursuant to
Section 702").

The unauthorized disclosure of the FBI information withheld from the October 2011
FISC Opinion likewise reasonably could be expected to cause exceptionally grave or serious
damage to the national security.  *See* Hudson Decl. ¶ 27; *see also* Hudson Decl. ¶ 28 (explaining
that "disclosure of this information would provide our adversaries and foreign intelligence
targets with insight into the Government's foreign intelligence collection capabilities, which in

turn could be used to develop the means to degrade and evade those collection capabilities"). Specifically, the public disclosure of intelligence activities and methods in use today by the FBI would "reveal potential targets of the FBI's national security investigations" and "the determination of the criteria used and priorities assigned to current intelligence or counterintelligence investigations."  Hudson Decl. ¶ 36.  "With the aid of this detailed information, hostile entities could develop countermeasures, conceal their activities, alter their methods of operation, or otherwise counter, thwart or frustrate the ability of the FBI to pursue them.  This would, in turn, severely disrupt the FBI's current and future intelligence-gathering efforts.  This disruption would also result in severe damage to the FBI's efforts to detect, obtain information about, and apprehend violators of U.S. national security and criminal laws, as well as prevent or protect against any other threats to the national security."  *Id.*; *see also* Hudson Decl. ¶ 37 (describing the harm from the unauthorized disclosure of the FBI's targeting procedures as including "(a) reveal[ing] specific intelligence activities and methods used by the FBI against specific targets; (b) disclos[ing] the intelligence-gathering capabilities of the methods used; and (c) provid[ing] an assessment of the effectiveness of intelligence-gathering efforts as part of the 702 program"); *id.* ¶¶ 29-32 (describing the harm from the authorized disclosure of docket information and target certifications as exposing intelligence activities and methods and intelligence-gathering capabilities).

Finally, the unauthorized disclosure of the CIA information withheld from the October 2011 FISC Opinion, specifically, its minimization procedures, would provide "CIA's intelligence adversaries as well as hostile entities such as terrorist organizations a road map to detect, prevent, and counter CIA intelligence activities.  Such efforts by intelligence adversaries and hostile entities could significantly degrade CIA intelligence operations and capabilities and

thus significantly degrade CIA's ability to detect and prevent hostile activities against the United

States." Hudson Decl. ¶ 42. The last condition for classification under Executive Order 13526

therefore clearly is satisfied by the challenged withholdings in the October 2011 FISC Opinion.

Because the information withheld here satisfies all four conditions of that order, it is exempt

under (b)(1).

## II.  THE COURT SHOULD UPHOLD THE CONTINUED WITHHOLDINGS FROM THE OCTOBER 2011 FISC OPINION UNDER EXEMPTION (B)(3).

Although the Court need not reach the Department's exemption (b)(3) argument, that

exemption too is dispositive of this case. That exemption exempts from FOIA information

whose disclosure is prohibited by *another* statute, if that statute either: (A) "requires that the

matters be withheld from the public in such a manner as to leave no discretion on the issue;" or

(B) "establishes a particular criteria for withholding or refers to particular types of matters to be

withheld." 5 U.S.C. § 552(b)(3)(A)(i)-(ii). This other statute "must, on its face, exempt matters

from disclosure." *Reporters Comm. for Freedom of Press v. Department of Justice*, 816 F.2d

730, 735 (D.C. Cir.), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other

grounds*, 489 U.S. 749 (1989); *see also Essential Info., Inc. v. USIA*, 134 F.3d 1165, 1168 (D.C.

Cir. 1998) (noting that a statute that prohibits "dissemination" and "distribution" of certain

information within the United States qualifies as an exemption (b)(3) "nondisclosure" statute).

Unlike the requirements for exemption (b)(1), exemption (b)(3) does not require the government

to demonstrate harm to the national security. Exemption (b)(3)'s "applicability depends less on

the detailed factual contents of specific documents; the sole issue for decision is the existence of

a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland

v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 761-62

(D.C. Cir. 1990) (same). Here again, deference to the agency's determination that withheld

21

material is within the coverage of an exemption (b)(3) statute is appropriate.  *See Reporters Comm.*, 816 F.2d at 735 n.5 (noting that "it may be proper to give deference to an agency's interpretation of what matters are covered by a statute, once the court is satisfied that the statute is in fact an Exemption 3 withholding statute"); *see also CIA v. Sims*, 471 U.S. 159, 179 (1985) (noting that "decisions of the Director [of the CIA], who must of course be familiar with 'the whole picture,' as judges are not, are worthy of great deference given the magnitude of the national security interests and potential risks at stake"); *Halperin*, 629 F.2d at 148.  Four such statutes clearly are implicated by the information withheld from the October 2011 FISC Opinion: (1) the National Security Agency Act of 1959, 50 U.S.C. § 3605, (2) 18 U.S.C. § 798, (3) the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024(i)(1), and (4) the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507.  Together, these statutes prohibit the disclosure of any of the withheld information still in dispute.

     A.     **The National Security Agency Act of 1959, 18 U.S.C. § 798, and the National Security Act of 1947 Prohibit the Disclosure of the NSA Information Withheld from the October 2011 FISC Opinion.**

The first of these statutes, a statutory privilege unique to NSA, provides that "[n]othing in this chapter or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof."  50 U.S.C. § 3605; *see also* Sherman Decl. ¶ 25.  This language thus provides absolute protection from disclosure of *any* information concerning NSA activities.  *Linder v. NSA*, 94 F.3d 693, 696 (D.C. Cir. 1996); *Hayden v. NSA*, 608 F.2d 1381, 1389 (D.C. Cir. 1979); *see also* Sherman Decl. ¶ 25.  As explained in the Sherman Declaration, the withheld NSA information "identifies the specific types of communication that NSA is able to successfully target and acquire pursuant to Section 702, and the means by which NSA performs its Section 702 targeting

and collection activities," "consists of specific technological limitations that impact NSA's capability to target and acquire certain communications pursuant to Section 702 of the FAA as well as the technological solutions that NSA employs to overcome such limitations, to the extent available," "consists of specific technical measures that NSA implements when targeting communications pursuant to Section 702 of the FAA to ensure that the collection is targeted at non-United States persons reasonably believed to be located outside of the United States," and "describes the specific impact of changing Internet service provider protocols and services to NSA targeting and acquisition activities carried out pursuant to Section 702 of the FAA." Sherman Decl. ¶ 30.  Each of these categories of information clearly relates to a function or activity of the NSA.  Sherman Decl. ¶ 30.  Accordingly, that information is within the protection of the National Security Agency Act of 1959 and cannot be compelled here.

Such information alternatively is prohibited from disclosure by the second applicable statute, 18 U.S.C. § 798.  That statute prohibits "the unauthorized disclosure of classified information: (1) concerning the communications intelligence activities of the United States; or (ii) obtained by the process of communication intelligence derived from the communications of any foreign government."  Sherman Decl. ¶ 26.  The term "communications intelligence" encompasses "all procedures and methods used in the interception of communications and the obtaining of information from such communications by other than the intended recipients." Sherman Decl. ¶ 26; *see also* 18 U.S.C. § 798(b).  The already-identified categories of withheld NSA information are also clearly within that definition as well.  *See* Sherman Decl. ¶ 30 (characterizing the withheld NSA information as identifying, consisting of, or describing "the specific types of communication that NSA is able to successfully target and acquire pursuant to Section 702, and the means by which NSA performs its Section 702 targeting and collection

activities," "specific technological limitations that impact NSA's capability to target and acquire certain communications pursuant to Section 702 of the FAA as well as the technological solutions that NSA employs to overcome such limitations, to the extent available," "specific technical measures that NSA implements when targeting communications pursuant to Section 702 of the FAA to ensure that the collection is targeted at non-United States persons reasonably believed to be located outside of the United States," and "the specific impact of changing Internet service provider protocols and services to NSA targeting and acquisition activities carried out pursuant to Section 702 of the FAA").  Thus, 18 U.S.C. § 798 is an independent and alternative prohibition against their disclosure here.

Finally, Section 102A(i)(1) of the National Security Act of 1947, as amended by the IRTPA, 50 U.S.C. § 3024(i)(1), "protect[s] intelligence sources and methods from unauthorized disclosure," and thus provides an absolute protection similar that protection in the National Security Agency Act of 1959.  *See* Sherman Decl. ¶ 27 ("Like the protection afforded to core NSA activities by Section 6 of the NSA Act of 1959, the protection afforded [by Section 102A(i)(1)] to intelligence sources and methods is similarly absolute.").  As evident from their descriptions, the NSA withholdings constitute intelligence sources and methods and their disclosure accordingly is prohibited alternatively by Section 102A(i)(1).

> **B.      The Disclosure of the Remaining Withholdings Challenged by Plaintiff Also Is Prohibited by (b)(3) Statutes.**

Like the withholdings of NSA information, the other withholdings from the October 2011 FISC Opinion are protected from disclosure by (b)(3) statutes.  Section 102A(i)(1) of the National Security Act of 1947, as amended by the IRTPA, which "protect[s] intelligence sources and methods from unauthorized disclosure," prohibits the disclosure of those withholdings related to a) certification names and docket information; b) the number of certifications; c)

certification targets; d) details of FBI's targeting procedures, and e) details of CIA's minimization procedures. *See* Hudson Decl. ¶ 46 ("I have determined that the withheld information in document A pertains to intelligence sources and methods that clearly fall within the ambit of and therefore must be protected by the National Security Act, as amended."). As explained in the Hudson Declaration, such information constitutes or exposes U.S. government intelligence sources and methods. *See* Hudson Decl. ¶ 28 (characterizing this information as containing "specific descriptions of the manner and means by which the Government targets non-U.S. persons located overseas to acquire foreign intelligence information under Section 702 of FISA"); *see also* Hudson Decl. ¶¶ 29-42.

An additional and alternative prohibition attaches to the CIA-specific information withheld from the October 2011 FISC Opinion. Section 6 of Central Intelligence Agency Act of 1949 provides that the CIA shall be exempt from the provisions of any law which requires the publication or disclosure of, among other things, the functions of the CIA. *See* 50 U.S.C. § 3507; *see also* Hudson Decl. ¶ 49 (explaining that Section 6 of the CIA Act provides that "in the interests of the security of the foreign intelligence activities of the United States and in order to further implement section 3024(i) of Title 50, the CIA shall be exempted from the provisions of 'any other law' that requires the publication or disclosure of, inter alia, CIA organization, functions, names, official titles, salaries, or numbers of personnel employed by the CIA"). Among the foremost core functions of the CIA are the collection, analysis, and dissemination of foreign intelligence. *See* Hudson Decl. ¶ 49 (explaining that "foremost of [the CIA's functions] is foreign intelligence collection through its intelligence activities, sources and methods"). As explained in the Hudson Declaration, some of the challenged withholdings from the October 2011 FISC opinion concern that subject matter and therefore are prohibited from disclosure by

the CIA Act.  *See* Hudson Decl. ¶ 40 (explaining that the CIA information redacted from the October 2011 FISC Opinion "involves specific provisions of CIA's minimization procedures pursuant to Section 702(e), 50 U.S.C. § 1881a(e)").

*   *   *   *   *

Because all of the withholdings still in contention fall within one or more of the (b)(3) statutes identified and discussed in this Part, none of the withheld information can be disclosed, and the government appropriately invoked exemption (b)(3) as to that information.

## III.    THE DEPARTMENT SATISFIED FOIA'S SEGREGABILITY REQUIREMENT.

As apparent from the face of the October 2011 FISC Opinion, the government has not withheld information here with broad strokes.  Indeed, FOIA requires that "[a]ny reasonably segregable portion of a record [] be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b); *see also Mead Data Cent., Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  ("It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.").  The agency "bears the burden of demonstrating that no reasonably segregable material exists in the withheld documents."  *Soghoian v. United States Dep't of Justice*, 885 F. Supp. 2d 62, 76 (D.D.C. 2012) (citation omitted).  "With the segregability analysis, as with the exemption analyses, the Court affords government affidavits a rebuttable presumption of good faith, and may rely on those affidavits so long as they show 'with reasonable specificity' why withheld information cannot be further segregated."  *ACLU v. CIA*, 892 F. Supp. 2d at 250 (citation omitted).  The declarations filed herewith clearly make the requisite showing.

With few exceptions, the challenged redactions in the October 2011 FISC Opinion consist of small areas within paragraphs or blacked-out areas self-contained on a page.  The precision with which the redactions were applied reflect the U.S. Intelligence Community's faithful adherence to the President's directive to "declassify and make public as much information as possible about certain sensitive programs while being mindful of the need to protect sensitive classified intelligence activities and national security."  Sherman Decl. ¶ 14; *see also* Hudson Decl. ¶ 39 (explaining that "each piece of information was evaluated with careful consideration given to the impact that disclosure of this information will have on other sensitive information contained elsewhere in the U.S. Intelligence Community's files" and "[e]qual consideration was given to the impact that other information either in the public domain or likely known or suspected by present or potential adversaries of the United States would have upon the information at issue").  The October 2011 FISC Opinion was reviewed line-by-line as part of a coordinated, multi-agency review process, and its "declassification [wa]s not done lightly." Sherman Decl. ¶ 15; *see also* Hudson Decl. ¶ 51 ("A line-by-line review of Document A was performed and all reasonably segregable, non-exempt information has been released.").  The government continues to withhold only that information properly withheld pursuant to the FOIA exemptions discussed herein.  *See* Hudson Decl. ¶ 16 (explaining that "the operational details as to specific applications of the sources and methods used by the Government to carry out [Section 702] authority remain highly classified"); *see also* Sherman Decl. ¶ 15 (quoting the DNI as stating publicly that "[b]ecause these documents [among them the October 2011 FISC Opinion] include discussion of matters that remain appropriately classified so as to protect national security, it was necessary to redact some information from them").  That is all FOIA requires, and thus the Department is entitled to judgment in its favor.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant this

motion and enter judgment in favor of the Department of Justice.

Dated:  September 4, 2013       Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division

/s/ Jacqueline Coleman Snead
JACQUELINE COLEMAN SNEAD (D.C. Bar 459548)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, D.C.  20530
Telephone:  (202) 514-3418
Fax:  (202) 616-8470
E-mail: Jacqueline.Snead@usdoj.gov

**Counsel for the Department of Justice**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                                )
ELECTRONIC FRONTIER                          )
FOUNDATION,                                          )
                                                                )
      Plaintiff,                                    )
                                                                )
           v.                                         )          Civil Action No. 12-1441-ABJ
                                                                )
                                                                )
DEPARTMENT OF JUSTICE,                      )
                                                                )
      Defendant.                                 )
                                                                )
_____)

**PROPOSED ORDER**

Upon consideration of the Department of Justice's Renewed Motion for Summary

Judgment, the opposition thereto, and the complete record in the case, it is hereby

ORDERED that the government's motion is GRANTED.  Judgment is entered in favor of

the Department of Justice.

SO ORDERED.

Date: _____          _____
                                                            United States District Court Judge