UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 12-1441-ABJ<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF JENNIFER L. HUDSON, DIRECTOR, INFORMATION MANAGEMENT DIVISION, OFFICE OF THE CHIEF INFORMATION OFFICER, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE

Pursuant to 28 U.S.C. § 1746, I, Jennifer L. Hudson, declare the following to be true and correct:

1.     I am the Director of the Information Management Division ("IMD") for the Office of the Director of National Intelligence ("ODNI"). I have held this position since May, 2013. I joined ODNI in 2007 as the Chief, Information Review and Release Branch, and was directly involved in the creation of ODNI's IMD. After a one-year assignment working in the ODNI's Office of Legislative Affairs, I returned to IMD and assumed my current position as the Director of that office. Prior to my arrival in ODNI, I held information management positions in the Joint Personnel Recovery Agency, the Defense Prisoner of War/Missing Persons Office, and later in the Public Access Branch at the Defense Intelligence Agency. In my current position, I

am the final decision-making authority for the ODNI/IMD.

2.     IMD is responsible for facilitating the implementation of information

management-related Executive orders, laws, regulations, and ODNI policy.  This function entails

controlling information throughout its life cycle and includes the areas of records management,

classification management and declassification, pre-publication reviews, and responding to

requests under the Freedom of Information Act ("FOIA") and the Privacy Act.

3.     Under a written delegation of authority by the Director of National Intelligence

("DNI") pursuant to section 1.3(c) of Executive Order 13526, I hold original classification

authority ("OCA") at the TOP SECRET level.  I am authorized, therefore, to conduct

classification reviews and to make original classification and declassification decisions for

intelligence information up to and including the TOP SECRET level.

4.     Through the exercise of my official duties, I have become familiar with this civil

action and the underlying FOIA request.  I make the following statements based upon my

personal knowledge and information made available to me in my official capacity.

5.     I submit this declaration in support of the U.S. Department of Justice's ("DoJ")

Motion for Summary Judgment in this proceeding.  The purpose of this declaration is to explain

and justify, to the extent possible on the public record, the actions taken by the Intelligence

Community ("IC")[1] in responding to plaintiff's request for information under the FOIA, 5 U.S.C.

§ 552, as well as describe the overall declassification review initiative that the IC is currently

involved in concerning certain sensitive U.S. Government surveillance programs.

## I.     ODNI BACKGROUND

6.     Congress created the position of the DNI in the Intelligence Reform and

---

[1] The National Security Agency ("NSA") is filing a separate supporting declaration in this case, and therefore I will not address its specific equities in this declaration.

Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1101(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending Sections 102 through 104 of Title 1 of the National Security Act of 1947). Subject to the authority, direction, and control of the President, the DNI serves as the head of the U.S. Intelligence Community, and as the principal adviser to the President and the National Security Council for intelligence matters related to the national security. 50 U.S.C. §§ 3023(b)(1), (2).

7. The responsibilities and authorities of the DNI are set forth in the National Security Act of 1947, as amended. These responsibilities include ensuring that national intelligence is provided to the President, heads of the departments and agencies of the Executive Branch, the Chairman of the Joint Chiefs of Staff and senior military commanders, and the Senate and House of Representatives and committees thereof. 50 U.S.C. § 3024(a)(1). The DNI is charged with establishing the objectives of; determining the requirements and priorities for; and managing and directing the tasking, collection, analysis, production, and dissemination of national intelligence by elements of the IC. 50 U.S.C. §§ 3024(f)(1)(A)(i) and (ii).

8. In addition, the National Security Act of 1947, as amended, provides that the DNI "shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). Consistent with this responsibility, the DNI establishes and implements guidelines for the IC for the classification of information under applicable law, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. § 3024(i)(2)(A), (B).

9. The function of the Office of the Director of National Intelligence is to assist the DNI in carrying out his duties and responsibilities under the Act and other applicable provisions of law, and to carry out such other duties as may be prescribed by the President or by law.

II.    **PLAINTIFF'S FOIA REQUEST**

10.    By letter sent to the National Security Division ("NSD") of DoJ dated July 26, 2012, plaintiff, the Electronic Frontier Foundation ("EFF"), requested the following:

1.    Any written opinion or order, … in which "the Foreign Intelligence Surveillance Court held that some collection carried out pursuant to the Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment";

2.    Any written opinion or order, … reflecting or concerning a FISC determination that "the government's implementation of Section 702 of FISA has sometimes circumvented the spirit of the law"; and,

3.    Any briefing provided to the Senate Select Committee on Intelligence or the House Permanent Select Committee on Intelligence concerning the FISC opinions or orders, described in items (1) and (2) above.

11.    By letter dated January 3, 2013, NSD informed EFF that it had searched its files and located the following five responsive records:

A.    Foreign Intelligence Surveillance Court ("FISC") Opinion and Order dated October 3, 2011, totaling 86 pages, and responsive to items 1 and 2 of plaintiff's request.  This Document was initially withheld in full pursuant to FOIA Exemptions 1 and 3.

B.    A redacted version of Document A which was produced to Congress as required by the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1871(c).  Highly sensitive information was redacted from this version of the order, but this version still contains information classified at the TOP SECRET level.  This Document was initially withheld in full pursuant to FOIA Exemptions 1 and 3.

C.    An undated, classified white paper prepared by DoJ for Congress, totaling nine pages, only one paragraph of which is responsive to item 3 of the request.  The responsive paragraph was initially withheld in full pursuant to FOIA Exemptions 1 and 3.

D.    Joint Statement of Lisa Monaco, Assistant Attorney General for the National Security Division, U.S. Department of Justice; John C. (Chris) Inglis, Deputy Director for the National Security Agency; and Robert Litt, General Counsel, Office of the Director

4

of National Intelligence for a hearing before the Permanent Select Committee on Intelligence, United States House of Representatives concerning "FISA Amendments Act Reauthorization" on December 8, 2011. Portions of this statement are responsive to item 3 of the request and initially were released in part with redactions made pursuant to FOIA Exemptions 1 and 3.

E.    Joint Statement of Lisa Monaco, Assistant Attorney General for the National Security Division, U.S. Department of Justice; John C. (Chris) Inglis, Deputy Director for the National Security Agency; and Robert Litt, General Counsel, Office of the Director of National Intelligence for a hearing before the Senate Select Committee on Intelligence, United States Senate concerning "FISA Amendments Act Reauthorization" on February 9, 2012. Portions of this statement are responsive to item 3 of the request and were initially released in part with redactions made pursuant to FOIA Exemptions 1 and 3.

12.    By a letter dated August 21, 2013, NSD informed EFF that the Government reprocessed the documents at issue in light of the recent declassification of information related to the Government's collection of intelligence pursuant to FISA, including Section 702 of FISA. 50 U.S.C. § 1881a. With the letter, the Government released in part the documents listed above, redacting portions that continue to be protected pursuant to FOIA Exemptions 1 and 3, or that were not responsive to the request. NSD further noted that as part of the ongoing declassification review, additional documents, not responsive to EFF's request, have also been released in part.

13.    According to representations made by EFF to DoJ, the only document at issue at this point in the litigation is Document A above, the October 3, 2011 FISC Opinion and Order, and the only redactions that the IC is required to defend are those taken on the basis of FOIA Exemptions 1 and 3 in that document, except to the extent that the redacted information identifies an individual or company.

14.    In Part III of this declaration, I will explain the overall declassification initiative

that the IC is currently undertaking with respect to certain Government surveillance programs. In Part IV, I will describe the continued withholdings by the IC in the October 3, 2011 FISC Opinion and Order, and the bases for the FOIA exemptions asserted to support these withholdings.

### III.   IC DECLASSIFICATION INITIATIVE

15.    As the Court is aware, on or about June 6, 2013, *The Guardian* and *The Washington Post* published articles and documents received from former NSA contractor Edward Snowden. This unprecedented unauthorized disclosure of TOP SECRET documents and parts of documents touched on some of the Government's most sensitive national security programs, including highly classified and ongoing signals intelligence collection programs.

16.    The recent unauthorized disclosures include classified information regarding Section 702 of FISA. Section 702 is designed to facilitate the acquisition of foreign intelligence information concerning non-U.S. persons located outside the United States. It created new statutory authority and procedures that permit targeting of non-U.S. persons reasonably believed to be located outside the United States without individual FISC orders, but pursuant to directives issued to telecommunications carriers by the DNI and the Attorney General. *See* 50 U.S.C. § 1881a(h). While the existence of this authority is set forth in public statutory provisions, and as stated below certain information about the program has been declassified, the operational details as to specific applications of the sources and methods used by the Government to carry out that authority remain highly classified. Information collected under this program is among the most important and valuable foreign intelligence information the Government collects, and is used to protect the country from a wide variety of threats.

17.    The unauthorized disclosures regarding this program have caused exceptionally

grave harm to our national security and threaten long-lasting and potentially irreversible harm to

our ability to identify and respond to threats. In order to correct misinformation flowing from

the unauthorized disclosures, and to reassure the American public as to the numerous safeguards

that protect privacy and civil liberties, the DNI ordered the declassification of certain information

regarding the program authorized under Section 702, as well as other programs. *See, e.g.*, DNI

Statement on Recent Unauthorized Disclosures of Classified Information (June 6, 2013);[2] DNI

Statement on Activities Authorized under Section 702 of FISA (June 6, 2013);[3] DNI Statement

on the Collection of Intelligence Pursuant to Section 702 of the Foreign Intelligence Surveillance

Act (June 8, 2013).[4]

18.   In addition, to reassure the American people that the Section 702 program is

lawfully authorized and operated, and to inform the discussion surrounding it, on June 20, 2013,

the President directed the DNI to continue to review if further information can be declassified,

and to reassess the extent to which there may be information that can be released regarding the

legal rationale, protections, and nature of the oversight of this surveillance program consistent

with the interests of national security. To that end, the DNI was directed to review the FISC

opinions and filings relevant to the program to determine what information can be declassified.

19.   The Government has since engaged in a large-scale, multi-agency review process

led by ODNI to determine what further information concerning the Section 702 and other

---

[2] (U) *Available at* http://www.dni.gov/index.php/newsroom/press-release/191-press-releases-2013/868-dni-statement-on-recent-unauthorized-disclosures-of-classified-information.

[3] (U) *Available at* http://www.dni.gov/index.php/newsroom/press-release/191-press-releases-2013/869-dni-statement-on-activities-authorized-under-section-702-of-fisa.

[4] (U) *Available at* http://www.dni.gov/index.php/newsroom/press-release/191-press-releases-2013/872-dni-statement-on-the-collection-of-intelligence-pursuant-to-section-702-of-the-foreign-intelligence-surveillance-act.

surveillance programs could be declassified and released consistent with the national security for

the purpose of restoring public confidence and better explaining the legal rationale and

protections surrounding the programs.  The latter consideration is a policy decision that must be

weighed and decided at the highest levels of government.  The overarching policy goal of this

effort, though, is to inform the public as much as possible, consistent with protecting the national

security, for the purpose of fostering an informed public debate and restoring public confidence

that surveillance intelligence programs are lawful, properly authorized, and conducted in a

manner consistent with the privacy and civil liberties of Americans.

      20.     The complexities of this review cannot be overstated.  Each component of the

national security community must consider each piece of information identified for possible

declassification and anticipate the ramifications such declassification might have on its

operations, including the ability to gather intelligence in the future.  An important component of

the analysis is consideration of the information already in the public domain, and how additional

disclosures may allow our adversaries to fit new pieces of information together with those

already in the public domain to create an even more revealing picture of our nation's intelligence

capabilities, including its signals intelligence capabilities.

      21.     Consistent with this initiative, on August 21, 2013, the DNI authorized the

declassification and public release of a number of documents pertaining to collection under

Section 702 of FISA.  These documents included documents previously withheld in full in this

FOIA litigation, as well as additional documents not part of this FOIA litigation that were

released on a discretionary basis.  The documents and other unclassified information related to

foreign intelligence surveillance activities were made available to the public on a new ODNI

website established at the direction of the President.  This site, www.iconthe record.tumblr.com,

is designed to provide immediate, on-going, and direct access to factual information related to the lawful foreign surveillance activities carried out by the IC. It provides a single online location to access new information as it is made available from across the IC.

**IV.    EXPLANATION OF WITHHELD MATERIAL**

22.    As mentioned above, the only remaining document at issue is the October 3, 2011 FISC Opinion and Order identified in paragraph 11 as Document A. That document has now been released in part with redactions made on the basis of FOIA Exemptions 1 and 3, 5 U.S.C. §§ 552(b)(1) and (b)(3). Pursuant to the overall IC declassification initiative, various agencies have reviewed the document and redacted various equities within it, and the DNI declassified the October 3, 2011 FISC Opinion and Order as redacted. It should be noted that properly classified TOP SECRET and SECRET information was discretionarily released as part of this review process that technically could and would have been withheld under FOIA. This portion of the declaration will address the remaining withholdings taken on that document pursuant to FOIA Exemptions 1 and 3.

**A.    FOIA EXEMPTION 1**

23.    Exemption 1 of the FOIA protects from release matters that are specifically authorized under criteria established by an Executive order to be kept classified in the interest of the national defense or foreign policy, and are in fact properly classified pursuant to such Executive order. 5 U.S.C. § 552(b)(1). The current Executive order which establishes such criteria is E.O. 13526.

24.    Section 1.1 of E.O. 13526 provides that information may be originally classified if:  1) an original classification authority is classifying the information; 2) the information is owned by, produced by or for, or is under the control of the Government; 3) the information falls

within one or more of the categories of information listed in section 1.4 of the Executive Order; and 4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, and the original classification authority is able to identify or describe the damage.

25.     Section 1.2(a) of E.O. 13526 provides that information shall be classified at one of three levels.  Information shall be classified at the TOP SECRET level if its unauthorized disclosure reasonably could be expected to cause exceptionally grave damage to the national security.  Information shall be classified at the SECRET level if its unauthorized disclosure reasonably could be expected to cause serious damage to the national security.  Information shall be classified at the CONFIDENTIAL level if its unauthorized disclosure reasonably could be expected to cause damage to the national security.

26.     In addition, information shall not be considered for classification unless it falls within one of the categories described in Section 1.4 of E.O. 13526.  The relevant category for purposes of this case is § 1.4(c), which allows information to be classified if it pertains to "intelligence activities (including covert action), intelligence sources or methods, or cryptology."

27.     The ODNI, in consultation with the relevant agencies that maintain equities in the information, determined that all of the withheld responsive information remains currently and properly classified at the TOP SECRET or SECRET levels.  After reviewing Document A, I, as an OCA at ODNI, personally and independently examined the portions of the document that have been redacted and agreed with those redactions.  As a result of this examination, ODNI, in consultation with the relevant agencies which maintain equities in the information, determined that all of the responsive information withheld remains currently and properly classified at the TOP SECRET or SECRET levels.  Accordingly, the release of this information could be

expected to cause exceptionally grave damage to serious damage, respectively, to the national

security of the United States.  Therefore, the withheld information in Document A is properly

classified TOP SECRET or SECRET, and is exempt from disclosure pursuant to FOIA

Exemption 1.

28.     In Document A, information that was redacted and remains classified includes a)

certification names and docket information for FISC opinions and order under Section 702 and

Section 402 of FISA; b) the number of certifications; c) certification targets; d) details of FBI's

targeting procedures, and e) details of CIA's minimization procedures.  The withheld

information contains specific descriptions of the manner and means by which the Government

targets non-U.S. persons located overseas to acquire foreign intelligence information under

Section 702 of FISA.  As such it describes highly sensitive intelligence activities, sources and

methods, and disclosure of this information would provide our adversaries and foreign

intelligence targets with insight into the Government's foreign intelligence collection

capabilities, which in turn could be used to develop the means to degrade and evade those

collection capabilities.

29.     Certification Names and Docket Information:  The redacted information on pages

1; 2; 3 and n.2; 4; 5; 6; 7; 8 and n.6; 9; 11 and n.7-9; 12 and n.11; 13 and n.12-13; 18 and n.18;

19; 22; and 79 of Document A, as well as the last two pages of Document A, discusses

certifications that have been approved by the FISC under Section 702 in the past and continues to

remain properly classified.  The disclosure of certification names and docket information could

reasonably be expected to cause serious damage to the national security because such disclosure

would reveal the specific foreign intelligence information the IC sought to obtain via its Section

702 collection efforts and its priorities in such collection.  It would also reveal the foreign

intelligence information the IC did not seek to obtain via such collection and the intelligence

collection that was not prioritized, which could be even more useful to the U.S.'s adversaries.

Using this information, entities hostile to the U.S. could identify which of their activities the IC

may or may not have monitored via Section 702.  Adversarial intelligence services and hostile

entities search continually for information regarding the activities of the IC and are able to gather

information from myriad sources.  Providing an additional piece of information regarding the

specific foreign intelligence information the IC seeks pursuant to Section 702 could allow these

entities to analyze this and other information, and devise ways to defeat IC activities from

seemingly disparate pieces of information.  Further, to reveal targets would alert targets that their

communications were subject to capture and would cause them to take countermeasures.

Similarly, disclosing dates would allow targets to know when their communications were subject

to capture and would alert them as to whether the U.S. is aware of specific communications that

may have been captured during that time period.  Conversely, if gaps in coverage were disclosed,

our adversaries would know that specific communications during that time were safe.  Further,

disclosing the number of certifications, which is reflected in the redacted docket numbers, could

provide information that would assist an informed adversary in deducing what content is subject

to coverage by Section 702 surveillance, and conversely, what content may not be subject to

coverage.  This information is properly classified at the SECRET level, withheld pursuant to

E.O. 13526, § 1.4(c), and is exempt from disclosure pursuant to FOIA Exemption 1.

30.    For similar reasons, the docket information of prior FISC opinions and orders

related to the Section 702 program, and in particular as that information appears on pages 3 and

n.3; 10; 12 and n.11; 15; 16 and n.14; 17 and n.15; 18; 19 and n.19; 22; 28; 33; 36; 42; 44; 63

and n.57; 67; 68; 70; 72; 75; 77; and 80 and n.69 of Document A, reflects the dates and targets of

collection, and continues to remain properly classified.[5]  The disclosure of this information could

reasonably be expected to cause serious damage to the national security as described in the

previous paragraph.  This information is properly classified at the SECRET level, withheld

pursuant to E.O. 13526, § 1.4(c), and is exempt from disclosure pursuant to FOIA Exemption 1.

      31.    Number of Prior Certifications and Targets of Certifications:  The redacted

information on pages 3 and 16 of Document A provides the total number of certifications issued

in the past by the FISC and continues to remain properly classified.  The disclosure of the

number of prior certifications and target certifications could reasonably be expected to cause

serious damage to the national security because such disclosure could reveal to an informed

adversary what content is subject to coverage by Section 702 surveillance, and conversely, what

content may not be subject to coverage.  This information is properly classified at the SECRET

level, withheld pursuant to E.O. 13526, § 1.4(c), and is exempt from disclosure pursuant to FOIA

Exemption 1.

      32.    In addition, the specific details of the prior certifications issued by the FISC as

discussed on page 4 of Document A continue to remain properly classified.  Disclosure could

reasonably be expected to cause serious damage to the national security because it would reveal

the specific foreign intelligence information the IC sought to obtain via its Section 702 collection

efforts.  It would also reveal the foreign intelligence information the IC is did not seek to obtain

via such collection and the intelligence collection that was not prioritized, which could be even

more useful to the U.S.'s adversaries.  Using this information, entities hostile to the U.S. could

identify which of their activities the IC may or may not have monitored via Section 702 and our

adversaries could determine what specific communications were safe.  Further, disclosing the

---

[5] Historical docket information for the bulk telephony metadata program under Section 215 of the U.S.A. PATRIOT Act has been declassified as part of the DNI-led review process and is not being withheld.  Accordingly, in footnote 14, line 10, Docket No. BR 08-13 was inadvertently redacted.

number of certifications, which is reflected in the redacted docket numbers, would reveal to an informed adversary what content is subject to coverage by 702 surveillance, and conversely, what content may not be subject to coverage. Similarly, disclosing the targets of 702 surveillance, even in the most general terms, would alert our adversaries about our targets and collection priorities. This information is properly classified at the SECRET level, withheld pursuant to E.O. 13526, § 1.4(c), and is exempt from disclosure pursuant to FOIA Exemption 1.

### FBI Intelligence, Activities, Sources and Methods

33.    Information specific to FBI intelligence activities, sources and methods is properly withheld because unauthorized disclosure reasonably could be expected to cause serious damage to the national security including, specifically, details of the FBI's targeting and minimization procedures. This classified information is properly classified at the SECRET level, and is exempt from disclosure pursuant to E.O. 13526, §1.4(c) – "intelligence activities (including covert action), intelligence sources or methods, or cryptology," the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security" (E.O. 13526, §1.2(a)(2)) as further described herein, and is exempt from disclosure pursuant to FOIA Exemption 1.

34.    Pursuant to Section 1.4(c) of E.O. 13526, intelligence activities (including covert action), intelligence sources or methods, or cryptology may be properly classified. Further, the term "intelligence methods" is not limited to sophisticated techniques or electronic devices. Rather, "intelligence methods" also include the standard practices and procedures of an intelligence agency. The specific pieces of information in Document A have been properly withheld pursuant to FOIA Exemption 1 in order to protect details related to the intelligence methods used by the FBI in connection with the government's acquisition of certain

communications pursuant to Section 702 of FISA.

35.     The assertion of FOIA Exemption 1 over information contained in Document A

protects from disclosure information that would reveal the FBI's targeting and minimization

procedures, and methods used by the FBI against specific targets of foreign counterterrorism

investigations or operations; that would identify targets of foreign counterterrorism

investigations; and that would disclose the intelligence-gathering capabilities of the activities or

methods directed at specific targets.  The information obtained from the intelligence activities or

methods is very specific in nature, provided during a specific time period, and known to a limited

number of people within the Government holding the appropriate security clearances.

36.     Disclosure of the specific information in Document A would reveal intelligence

activities and methods that the FBI continues to use.  As a result, the disclosure of this

information reasonably could be expected to cause serious damage to the national security for the

following reasons: (1) disclosure would allow hostile entities to discover the current intelligence-

gathering methods used; (2) disclosure would reveal potential targets of the FBI's national

security investigations; and (3) disclosure would reveal the determination of the criteria used and

priorities assigned to current intelligence or counterintelligence investigations.  With the aid of

this detailed information, hostile entities could develop countermeasures, conceal their activities,

alter their methods of operation, or otherwise counter, thwart or frustrate the ability of the FBI to

pursue them.  This would, in turn, severely disrupt the FBI's current and future intelligence-

gathering efforts.  This disruption would also result in severe damage to the FBI's efforts to

detect, obtain information about, and apprehend violators of U.S. national security and criminal

laws, as well as prevent or protect against any other threats to the national security.

37.     Details Concerning the FBI's Targeting Procedures:  The redacted information on

pages 20-22 of Document A, which discusses specific details regarding the FBI's amended
targeting procedures as part of the 702 program, continues to remain properly classified. The
disclosure of this information could reasonably be expected to cause serious damage to the
national security, as it would: (a) reveal specific intelligence activities and methods used by the
FBI against specific targets; (b) disclose the intelligence-gathering capabilities of the methods
used; and (c) provide an assessment of the effectiveness of intelligence-gathering efforts as part
of the 702 program. This information is properly classified at the SECRET level, withheld
pursuant to E.O. 13526, § 1.4(c), and is exempt from disclosure pursuant to FOIA Exemption 1.

38.   Additional Redactions in the FISC Decision. Finally, several additional sensitive
methods remain properly classified, specifically redactions on pages 23 and 24 of Document A.
Disclosure of this information would expose intelligence-gathering capabilities, and provide an
assessment of the effectiveness of intelligence-gathering efforts as part of the 702 program. In
addition, the redacted information in n. 24 on page 29 of Document A continues to remain
properly classified, as its release would expose specific FBI methods of collection and could
reasonably be expected to cause serious damage to the national security. As a result, this
information is properly classified at the SECRET level, withheld pursuant to E.O. 13526, §
1.4(c), and is exempt from disclosure pursuant to FOIA Exemption 1.

39.   Information was withheld in Document A pursuant to FOIA Exemption 1 in light
of the body of information available concerning the national defense and foreign relations of the
United States. This information was not examined in isolation. Instead, each piece of
information was evaluated with careful consideration given to the impact that disclosure of this
information will have on other sensitive information contained elsewhere in the U.S. Intelligence
Community's files. Equal consideration was given to the impact that other information either in

the public domain or likely known or suspected by present or potential adversaries of the United

States would have upon the information at issue.

### CIA Intelligence, Activities, Sources and Methods

40.     Information redacted from the document at issue involves specific provisions of

CIA's minimization procedures pursuant to Section 702(e), 50 U.S.C. § 1881a(e).  Public

disclosure of this redacted information could be expected to expose intelligence methods,

including specific legal requirements and processes the CIA must follow in its retention and

dissemination of foreign intelligence information obtained pursuant to Section 702.  The full

spectrum of CIA's intelligence methods must be protected from disclosure because such

information would be of material assistance to those who would seek to penetrate, detect, prevent

or damage U.S. intelligence operations.

41.     As explained in Section III above, the IC declassification initiative seeks to

inform the public as much as possible while avoiding additional disclosures that allow

intelligence adversaries and hostile entities to fit pieces of publically revealed and confirmed

information together with information already in the public domain to create an even more

revealing picture of our intelligence capabilities.  Implementation of this policy effort with

regard to CIA's information and operations required a balance between further transparency and

reasonably anticipated negative ramifications for its future intelligence gathering activities and

operations.  In striking this balance, it was determined, and I concurred, that while the public

interest weighed in favor of revealing the fact that CIA receives unminimized section 702

information from NSA to which it applies CIA minimization procedures, most of the specifics of

the CIA procedures must be withheld because such information could be of material assistance to

intelligence adversaries and hostile entities.

17

42.    The specifics of CIA's minimization procedures at issue, discussed on pages 25-27

of the FISC Opinion, go beyond the general requirements of the FISA statute.  They include

legally-mandated procedures and policy-directed process, which in many cases are based on

classified Executive branch directives.  They include information about the internal workings of

CIA systems and the day-to-day mechanisms by which CIA operates with regard to Section 702

collected intelligence information.  Public disclosure of such information could give CIA's

intelligence adversaries as well as hostile entities such as terrorist organizations a road map to

detect, prevent, and counter CIA intelligence activities.  Such efforts by intelligence adversaries

and hostile entities could significantly degrade CIA intelligence operations and capabilities and

thus significantly degrade CIA's ability to detect and prevent hostile activities against the United

States.  For these reasons, disclosure of the redacted CIA information could reasonably be

expected to cause serious damage to the national security of the United States.  This information

is properly classified at the SECRET level, withheld pursuant to E.O. 13526, § 1.4(c), and is

exempt from disclosure pursuant to FOIA Exemption 1.

**B.    FOIA EXEMPTION 3**

43.    Exemption 3 provides that FOIA does not require the production of records that

are: "specifically exempted from disclosure by statute (other than section 552b of this title),

provided that such statute (A)(i) requires that the matters be withheld from the public in such a

manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding

or refers to particular types of matters to be withheld; and (B) if enacted after the date of

enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. §

552(b)(3).[6]  Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. §

---

[6] The OPEN FOIA Act of 2009 was enacted on October 28, 2009, Pub. L. 111-83, 123 Stat. 2142, 2184; 5
U.S.C. § 552(b)(3)(B), after the applicable National Security Act provision was enacted.

3024(i)(1) provides that "the Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure," and has long been held to qualify as an Exemption 3 statute.

44.   In contrast to information withheld pursuant to FOIA Exemption 1, agencies are not required to identify and describe the damage to national security that reasonably could be expected to result from the unauthorized disclosure of intelligence  sources and methods under FOIA Exemption 3.  Agencies are only required to establish that the withheld information constitutes intelligence sources and methods.

45.   I have determined that the withheld information in Document A pertains to intelligence sources and methods that clearly fall within the ambit of and therefore must be protected by the National Security Act, as amended.  It also reveals certain operational details on how the IC acquires communications under Section 702 of FISA.

### FBI Intelligence Sources and Methods

46.   In addition to continuing to be properly classified, the redacted FBI information in Document A also addresses FBI intelligence sources and methods.[7]  Consequently, disclosure of that information would improperly reveal those sources and methods.

47.  Although FOIA Exemption 3 does not require a showing of damage to national security that reasonably could be expected to result from the unauthorized disclosure of intelligence sources and methods, I refer the Court to the paragraphs above for a description of the damage that reasonably could be expected to result from the disclosure of this information.

---

[7] The FBI has withheld information pursuant to FOIA Exemption 3, in conjunction with FOIA Exemption 1 as described *supra*, on the following pages of Document A: 2; 3 and n.2-3; 4; 5; 6; 7; 8 and n.6; 9; 10; 11 and n.7-9; 12 and n.11; 13 and n.12-13; 15; 16 and n.14; 17 and n.15; 18 and n.18; 19 and n.19; 20-22; 23; 24; 28; 29 and n.24; 33; 36; 42; 44; 63 and n.57; 67; 68; 70; 72; 75; 77; 79; and 80 and n.69; as well as pages 1-2 at the end of Document A.

## CIA Intelligence Sources and Methods

48.     In addition to continuing to be properly classified the redacted CIA information in Document A addresses CIA intelligence sources and methods under the National Security Act, as amended, and is exempt from disclosure under FOIA Exemption 3.

49.     Further, Section 6 of the Central Intelligence Agency Act of 1949, as amended ("CIA Act") provides that in the interests of the security of the foreign intelligence activities of the United States and in order to further implement section 3024(i) of Title 50, the CIA shall be exempted from the provisions of "any other law" that requires the publication or disclosure of, inter alia, CIA organization, functions, names, official titles, salaries, or numbers of personnel employed by the CIA. 50 U.S.C. § 3507. Accordingly, under Section 6 of the CIA Act, the CIA is exempt from disclosing information relating to its core functions, foremost of which is foreign intelligence collection through its intelligence activities, sources and methods. All of the information withheld by the CIA in this case is exempt from disclosure pursuant to Section 6 of the CIA Act.

50.     Although FOIA Exemption 3 and section 6 of the CIA Act do not require CIA to identify or describe the damage to national security that reasonably could be expected to result from the unauthorized disclosure of intelligence sources and methods or CIA organization and functions, I refer the Court to the paragraphs above for a description of the damage that reasonably could be expected to result from the disclosure of this information.

### C.     SEGREGABILITY

51.     I reviewed Document A for purposes of complying with FOIA's segregability provision which requires the Government to release "any reasonably segregable portion of a record" after proper application of the FOIA exemptions. 5 U.S.C. § 552(b). A line-by-line review of Document A was performed and all reasonably segregable, non-exempt information

20

has been released.

## CONCLUSION

I certify under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Executed this 4th day of September, 2013

_____

Jennifer L. Hudson
Director, Information Management Division
Office of the Director of National Intelligence