**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**ELECTRONIC FRONTIER FOUNDATION**,   )
                                                    )
         Plaintiff,                             )
                                                    )
v.                                               )         C.A. No. 12-cv-1441 (ABJ)
                                                    )
**DEPARTMENT OF JUSTICE**,                )
                                                    )
         Defendant.                           )
_____)

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In the only document remaining at issue in this case — an opinion of the Foreign

Intelligence Surveillance Court ("FISC") issued in October 2011 — Judge John D. Bates wrote:

> The Court is troubled that the government's revelations . . . mark the third
> instance in less than three years in which the government has disclosed a
> substantial misrepresentation regarding the scope of a major [intelligence]
> collection program.

Memorandum Opinion of the FISC, Oct. 3, 2011, ("Opinion") at 16 n. 14 (filed herewith as

Exhibit A). According to defendant Department of Justice ("DOJ"), as of June 6, 2013, that

sentence was properly classified at the "TOP SECRET" level and exempt from the broad

disclosure requirements of the Freedom of Information Act ("FOIA"). At no time, however, did

the FOIA — or any other law — permit withholding such significant information from the

American public. Such determinations raise serious questions concerning the propriety of the

classification and withholding claims advanced by DOJ earlier in this proceeding.

Other information was likewise improperly withheld from the Opinion. For instance,

Judge Bates noted that FISC-imposed requirements "had been 'so frequently and systemically

violated [by the government] that it can fairly be said that this critical element of the overall . . . regime has never functioned effectively.'" *Id*. (elipses in original). According to DOJ, that sentence, too, was appropriate to withhold from the public on "national security" grounds.

Indeed, for over two years, the agency's demonstrably overbroad classification and withholding claims shielded from public scrutiny *every word* of the FISC's 85-page Opinion, which held the government's surveillance practices violated the Fourth Amendment and the spirit of Section 702 of the FISA Amendments Act.

 On August 21, 2013, DOJ belatedly released substantial portions of the Opinion. Nevertheless, the agency continues to withhold significant material from EFF and the public. In particular, some redactions still appear calculated not to protect legitimate national security interests, but to shield government agencies and officials from embarrassment and to prevent further public scrutiny of controversial government surveillance practices. While some limited withholdings may, ultimately, be justified, DOJ's prior representations in this case preclude an unquestioning acceptance of its asserted justifications for continued secrecy. On the record here, acceptance of the agency's withholding claims would run contrary to the very purpose of FOIA — "ensur[ing] an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

For the reasons that follow, EFF respectfully urges the Court to require the production of the Opinion for the Court's *in camera* inspection and to reject the overbroad withholding claims DOJ continues to assert.

# BACKGROUND

## I.     The Reauthorization of the FISA Amendments Act and EFF's FOIA Request

The Foreign Intelligence Surveillance Act Amendments Act of 2008 ("FAA") broadly expanded the government's authority to conduct foreign intelligence surveillance within the United States. *See* Pub. L. 110-261, 110th Cong., 2d Sess. (July 10, 2008). Because of the controversial nature of the expansion, Congress scheduled the FAA to sunset on December 31, 2012, giving Congress and the public the opportunity to reexamine the propriety of, and need for, such a sweeping expansion of federal surveillance law.

While the FAA's reauthorization was pending in Congress, Senator Ron Wyden, a member of the Senate Select Committee on Intelligence, sought the declassification and public release of information concerning the government's surveillance activities under Section 702 of the FAA, including the fact that the FISC had determined "some collection carried out pursuant to the Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment" and that the government's implementation of Section 702 "has sometimes circumvented the spirit of the law." Compl. ¶ 10 (ECF No. 1). In a July 20, 2012 letter to Senator Wyden, the Director of National Intelligence ("DNI") declassified those statements, and others, for public release. *Letter from Kathleen Turner, Director of Legislative Affairs, Office of Director of National Intelligence, to Senator Ron Wyden* (July 20, 2012).[1]

Six days after the release of information Senator Wyden requested, EFF submitted a FOIA request to DOJ. The request sought the expedited processing and release of any "written opinion or order" of the FISC holding that government surveillance under Section 702 violated the Fourth Amendment or the spirit of federal law. *See* Declaration of Mark Bradley ("Bradley

---

[1] *Available at* http://www.fas.org/irp/news/2012/07/dni072012.pdf.

Decl."), Ex. A at 10 (EFF FOIA Request) (ECF No. 11-3). After the agency failed to respond to

EFF's request within the statutorily mandated timeframe, EFF filed this suit. *See* Compl., ¶¶ 17-

19 (ECF No. 1). Despite EFF's prompt prosecution of this case and its best effort to obtain

disclosure of responsive records in time to contribute to the FAA reauthorization debate, through

a series of delays, *see* Status Reports by Department of Justice (ECF Nos. 6, 7), DOJ deferred

production of responsive records until after Congress passed, and the President signed, the

FAA's reauthorization. *See* FISA Amendments Act Reauthorization Act of 2012, Pub. L. 112-

238, 126 Stat. 1631 (Dec. 30, 2012). On January 3, 2013, four days after the FAA was

reauthorized, the agency released responsive records to EFF: the documents, however, were

almost entirely redacted. *See* Bradley Decl., Ex. B at 28-56 (Responsive Records Produced by

DOJ). Even then, the FISC Opinion itself was not produced, even in redacted form.

## II.       Defendant's First Motion for Summary Judgment

Following its initial "disclosure" of responsive records, DOJ moved for summary

judgment. Def. Mot. for Summ. J. (ECF No. 11). The affidavit filed in support of the agency's

motion publicly identified and acknowledged the existence of the Opinion for the first time. *See*

Bradley Decl., ¶ 5(A). According to DOJ, not only was the Opinion exempt in its entirety under

Exemptions 1 and 3, but it was also subject to the FISC's Rules of Procedure, which, according

to the agency, also prohibited the government from disclosing the Opinion. *See* Def. Memo. of

Points & Authorities in Support of Summ. J. at 2 (ECF No. 11-1).

In light of DOJ's novel claim, EFF sought a stay of this litigation to seek clarification

from the FISC on the effect of its procedural rules on the government's statutory disclosure

obligations. This Court entered a stay in the case on April 24, 2013, and EFF filed its motion

with the FISC less than a month later. *See* Joint Status Report (EFC No. 13). EFF's motion

requested the FISC's consent to disclose the Opinion or, in the alternative, a determination on the effect of the FISC's rules of procedure on the government's statutory disclosure obligations. *See id*. Following briefing by the parties, the FISC expeditiously resolved the issue in EFF's favor, partially granting EFF's motion and holding that "the FISC Rules do not prohibit the Government's disclosure of the Opinion in the event it is ultimately determined by the District Court to be subject to disclosure under FOIA." *In re Motion for Consent to Disclosure of Court Records or, in the Alternative, a Determination of the Effect of the Court's Rules on Statutory Access Rights*, Opinion & Order, Misc. 13-01, June 12, 2013 (filed herewith as Exhibit B).

### III.    The Disclosure of Information Concerning the NSA's Domestic Spying Program, Further Proceedings in this Case, and the Release of the Opinion

Six days before the FISC granted EFF's motion, the *Guardian* and *Washington Post* published articles describing previously unconfirmed aspects of the domestic surveillance activities of the National Security Agency ("NSA"). The first article, appearing on June 5, 2013, described the NSA's bulk collection of domestic call record information, and included an order of the FISC, issued to Verizon under 50 U.S.C. § 1861, for the production of all "telephony metadata" for all domestic phone calls. Glenn Greenwald, *NSA Collecting Phone Records Of Millions Of Verizon Customers Daily*, Guardian (UK) (June 5, 2013). On June 6, the *Washington Post* published a second story that described the NSA's PRISM collection program, which the NSA uses to facilitate surveillance conducted under Section 702. Barton Gellman & Laura Poitras, *U.S., British Intelligence Mining Data From Nine U.S. Internet Companies in Broad Secret Program*, Wash. Post (June 6, 2013). Confirmations and further declassifications from the DNI shortly followed the *Guardian* and *Post's* initial reporting. *See* Joint Status Report at 5-6 (ECF No. 14) (describing DNI statements on June 6 and June 8). Additional reporting on the NSA's surveillance practices has continued since the *Guardian* and *Post's* initial disclosures.

*See, e.g.*, Nicole Perloth, Jeff Larson, & Scott Shane, *N.S.A. Able to Foil Basic Safeguards of Privacy on Web*, N.Y. Times (Sept. 5, 2013).

Following the FISC's resolution of EFF's motion, and after the filing of a joint status report by the parties, by minute order of July 9, 2013, this Court lifted the stay of proceedings and ordered DOJ, in light of the recent disclosures and DNI confirmations, to "assess its position and make any additional disclosures it intends to make" by August 12, 2013. The Court briefly extended DOJ's deadline to August 21, 2013 in order to finalize the processing and release of the Opinion.

On August 21, DOJ released the Opinion, with redactions, to EFF and the general public. *See* Letter from DNI Clapper Announcing Document Release (Aug. 21, 2013).[2] The Opinion's release was widely reported in domestic and international media and was the subject of extensive public interest. *See, e.g.*, Ellen Nakashima, *NSA Gathered Thousands of Americans' E-mails Before Court Ordered It To Revise Its Tactics*, Wash. Post (Aug. 21, 2013); Charlie Savage & Scott Shane, *Secret Court Rebuked NSA On Surveillance*, N.Y. Times (Aug. 21, 2013); Ken Dilanian, *NSA Unlawfully Collected Tens of Thousands of U.S. Emails*, L.A. Times (Aug. 21, 2013); Spencer Ackerman, *NSA Illegally Collected Thousands of Emails Before FISA Court Halted Program*, Guardian (Aug. 21, 2013).

As Senator Wyden noted in a public statement that day: "While the declassification of the FISA court's ruling on the constitutionality of Section 702 collection procedures is an important addition to the public discussion being held on government surveillance authorities, its declassification is long overdue." Wyden Statement on Declassification of FISA Court Ruling on

---

[2] *Available at* http://www.dni.gov/files/documents/DNI%20Clapper%20Section%20702%20 Declassification%20Cover%20Letter.pdf

4th Amendment Violations, August 21, 2013 (filed herewith as Exhibit C). Today, the debate on

the NSA's domestic surveillance activities, the efficacy of current oversight regimes, and the

need for reform of federal laws governing the intelligence community continues — among the

public, the press, and on Capitol Hill. To further contribute to that vital and ongoing national

debate, EFF now seeks the release of all information improperly withheld from the Opinion.

## ARGUMENT

It is impossible to treat this case in a "garden variety" manner. The dramatic change in

DOJ's position provides both EFF and the Court with unusually clear insight into the

government's previous withholding assertions. To the agency's credit, substantial portions of the

Opinion have now been publicly released, albeit belatedly. At the same time, though, the release

of substantial portions of the Opinion severely undermines the credibility of DOJ's assertions

here: upon review, it is apparent that the agency's previous blanket withholding assertions were

overbroad and wholly without merit. In light of the demonstrated overbreadth of DOJ's previous

claims, neither EFF nor the Court can rely on the agency's current representations with any

confidence. Thus, EFF respectfully urges the Court to reject the presumption of good faith that

might normally attach to agency declarations and, to ensure the validity of DOJ's current

averments, order the production of the Opinion for the Court's *in camera* inspection.

In addition to the unique circumstances of this case, many of DOJ's current withholding

claims suffer from an infirmity more typical of FOIA cases: the exemption claims lack a

sufficient — and in some cases, *any* — factual basis. Further, for some categories of information,

DOJ's claims are demonstrably overbroad and appear calculated more to shield government

conduct (and potential misconduct) from scrutiny than to protect any valid national security

interest. Although some limited withholdings may be legitimate, DOJ should not be afforded the

benefit of the doubt. In the absence of the Court's *in camera* inspection, no withholding assertion by the agency should be sustained.[3]

For these reasons, explained more fully below, EFF respectfully urges the Court to order the production of the withheld Opinion for the Court's *in camera* inspection and to order the immediate release of any improperly withheld information.

## I. The FOIA Establishes a Presumption of Disclosure and DOJ Bears the Burden of Demonstrating that Withheld Information is Clearly Exempt

FOIA safeguards the American public's right to know "what their Government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). "[D]isclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

The FOIA requires disclosure of agency records when requested unless the records fall within one of the Act's nine narrow exemptions. *See* 5 U.S.C. § 552(b)(1) - (9). If requested information does not fit squarely into one of these enumerated categories, the law requires federal agencies to release the information. *See NLRB v. Robbins Tire,* 437 U.S. at 221. The exemptions "have been consistently given a narrow compass," and information that "do[es] not fall within one of the exemptions [is] improperly withheld[.]" *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted).

Disputes involving the propriety of agency withholdings are commonly resolved through summary judgment in FOIA cases. *Harrison v. Exec. Office for U.S. Attorneys*, 377 F. Supp. 2d 141, 145 (D.D.C. 2005). "A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the

---

[3] In order to narrow the issues in dispute, EFF has agreed not to challenge the agency's withholding of the names of particular individuals or companies from the Opinion.

moving party is entitled to judgment as a matter of law." *Goodrich v. Teets*, 510 F. Supp. 2d 130, 136-37 (D.D.C. 2007) (citing Fed. R. Civ. P. 56(c)). In FOIA cases, a court reviews the government's decision to withhold information *de novo*, and the government bears the burden of proving that a particular exemption applies. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755. Even national security claims of the type invoked here do not alter a court's "independent responsibility" to undertake a thorough *de novo* evaluation of the government's exemption claims. *Goldberg v. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987).

To satisfy its burden to withhold information, the agency "must provide a relatively detailed justification [for its withholding decisions], specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) (internal citations omitted).[4] "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action.'" *Reporters Comm.*, 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). Thus, when claiming one of FOIA's exemptions, the agency bears the burden of demonstrating to a reviewing court that withheld information is "*clearly* exempt." *Birch v. USPS,* 803 F.2d 1206, 1209 (D.C. Cir. 1986) (emphasis added) (citing *Vaughn*, 484 F.2d at 823).

---

[4] In *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), the D.C. Circuit established the procedural requirements that "an agency seeking to avoid disclosure" must follow in order to carry its burden in a FOIA case. *Id.* at 828. These procedural obligations are typically satisfied by the submission of an index describing each withheld record (a "*Vaughn* index") and an affidavit from an agency official, further describing the agency's rationale for withholding the record. *See King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987). Because only a single record is at issue here, the agency has only submitted affidavits in support of its motion.

## II.     The Presumption of Good Faith Normally Afforded Agency Declarations Cannot Apply in this Case, and the Court's *In Camera* Review of the Opinion Is Necessary For Meaningful *De Novo* Review

This case is in an unusual posture: substantial portions of the Opinion — the only document at issue in this case — have now been released. This disclosure places EFF in an uncommonly well-informed position to evaluate DOJ's previous withholding determinations, as well as the representations on which those withholdings were based. Upon review, it is apparent that the agency's withholdings were without merit and legally unsupportable. Thus, in light of DOJ's earlier misleading assertions, the presumption of regularity and good faith that typically attaches to agency declarations in FOIA cases cannot apply here. Instead, the Court's *in camera* review of the Opinion is the only appropriate method of resolving this case and ensuring the agency's compliance with the strictures of FOIA.

### A.     The Agency's Affidavits Are Not Entitled to a Presumption of Good Faith

The declarations previously submitted in support of DOJ's withholding claims preclude the Court's reliance on the representations contained within the agency's current submissions. While agency affidavits submitted in support of summary judgment motions are generally "accorded a presumption of good faith," *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), this presumption only exists if the affidavits "are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Halperin v. C.I.A.,* 629 F.2d 144, 148 (D. C. Cir. 1980). Where evidence of agency bad faith "is strong, it would be an abdication of the court's responsibility to treat the case in the standard way and grant summary judgment" on the basis of agency affidavits alone. *Jones v. F.B.I.*, 41 F.3d 238, 242-43 (6th Cir. 1994).

Tangible evidence of bad faith, rather than a mere allegation, is typically required to overcome the presumption of good faith and legitimacy. *Carter v. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987). For example, courts have declined to rely on agency affidavits and

questioned the good faith of the agency: where representations made in agency affidavits are called into question, *see Wash. Post v. Dep't of State*, 840 F.2d 26, 28, *vacated on other grounds*, 898 F.2d 793 (D.C. Cir. 1990); where the agency delayed processing a FOIA request and relied upon "erroneous withholdings and inaccurate *Vaughn* [indices]," *Carter, Fullerton & Hayes v. FTC*, 2013 WL 653288, *6 (E.D.Va Feb. 21, 2013); or "where it becomes apparent that the subject matter of a request involves activities which, if disclosed would publicly embarrass the agency or that a so-called 'cover up' is presented." *Rugiero v. Dep't of Justice*, 257 F.3d 534, 546-47 (6th Cir. 2001) (internal citations and quotations omitted); *see also Landmark Legal Foundation v. EPA*, 12-cv-1726, 2013 WL 4083285, at *6, *8 (D.D.C. Aug. 14, 2013) (bad faith present where agency conducted unduly restrictive search for responsive records). A "showing of bad faith" rebuts "the presumption of regularity the government enjoys" and should "weigh heavily in the decision to conduct an *in camera* review of responsive documents withheld or redacted." *Rugiero*, 257 F.3d at 544 (citing *Ingle v. Dep't of Justice*, 698 F.2d 259, 267 (6th Cir. 1983) and *Jones*, 41 F.3d at 242); *see also Allen v. CIA*, 636 F.2d 1287, 1299 (D.C. Cir. 1980).

Here, concrete and irrefutable evidence demonstrates the agency's prior representations in this case were misleading and legally unjustifiable, thereby rebutting the presumption of good faith that might otherwise attach to the agency's declarations. On April 1, 2013, DOJ asserted that the Opinion was "classified at the TOP SECRET level" and "*withheld in full* pursuant to FOIA Exemptions (b)(1) and (b)(3)." Bradley Decl., ¶ 5 (emphasis added); *see also id.*, ¶¶ 8, 9. Thus, the agency's position — supported by a sworn declaration — was that the disclosure of *any* part of the Opinion could have been "expected to cause exceptionally grave damage to the national security of the United States" or reveal sensitive "intelligence sources and methods." *Id.*, ¶¶ 8-10.

Upon even a cursory review of the Opinion, it is apparent, DOJ's blanket exemption claims were far broader than the law allows. For example, this passage, according to the agency, was appropriately "classified at the TOP SECRET level" and withheld from the Opinion:

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Opinion at 67 (reciting Fourth Amendment); *see also* Bradley Decl., ¶ 5 (Opinion "withheld in full pursuant to FOIA Exemptions b(1) and b(3)"). The following examples are other portions of the Opinion, containing either straightforward legal analysis or mere recitation of statutes, that DOJ asserted were classified "at the TOP SECRET level" and otherwise exempt from disclosure under FOIA:

- "The nature of the intrusion at issue is also an important consideration in the Fourth Amendment balancing. See, e.g., Board of Educ. v. Earls, 536 U.S. 822, 832 (2002); Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 659 (1995)." Opinion at 73.

- "The Court must review a certification submitted pursuant to Section 702 of FISA 'to determine whether [it] contains all the required elements.' 50 U.S.C. §1881a(i)(2)(A)." Opinion at 11.

- "The government's revelations . . . implicate 50 U.S.C. § 1809(a), which makes it a crime (1) to 'engage[] in electronic surveillance under color of law except as authorized' by statute or (2) to 'disclose or use[] information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized' by statute." Opinion at 17 n. 15.

DOJ did not — and, indeed, *cannot* — establish that disclosure of these statements *at any time* would have caused "exceptionally grave damage to the national security of the United States" or would have disclosed "intelligence sources and methods," the necessary predicates for a valid classification determination. Thus, the agency's previous blanket exemption claim was clearly unwarranted.

Even more significantly, DOJ attempted to shield evidence of government misconduct from the public's scrutiny behind a veil of classification. Footnote 14 of the Opinion describes three instances in which the government "disclosed a substantial misrepresentation [to the FISC]

regarding the scope of a major [intelligence] collection program." Opinion at 16 n.14. Although *some* of the information contained in that footnote may have been properly withheld at the time, *all* of the information was not.[5]

Similarly, DOJ asserted classification over the following passage:

> The Court now understands, however, that NSA has acquired, is acquiring, and, if the certifications and procedures now before the Court are approved, will continue to acquire, tens of thousands of wholly domestic communications.

Opinion at 33. This passage not only describes government misrepresentations to the FISC, but also illegal and unconstitutional domestic surveillance. This information, even in partially redacted form, would have contributed substantially to the debate on the reauthorization of the FISA Amendments Act, yet the government shielded these facts from the public under unsupportable classification claims. No theory of classification supports the withholding of such information — either now or in the past. Only a desire to avoid public scrutiny and to prevent the exposure of unlawful conduct can explain DOJ's earlier blanket exemption claims.

In short, the agency sought to skew the FAA reauthorization debate in its favor. The agency sought to prevent the appearance of articles on the front pages of the nation's newspapers, reporting, as the *Washington Post* did, that "[f]or several years, the National Security Agency unlawfully gathered tens of thousands of e-mails and other electronic communications between Americans," and that "[i]n a strongly worded opinion, [a] judge of the Foreign Intelligence Surveillance Court expressed consternation at what he saw as a pattern of misleading statements by the government and hinted that the NSA possibly violated a criminal law against spying on Americans." Ellen Nakashima, *NSA Gathered Thousands of Americans' E-mails Before Court Ordered It To Revise Its Tactics*, Wash. Post (Aug. 21, 2013). Such base attempts to distort the public's understanding of government operations are never valid grounds for classification or withholding under FOIA.

---

[5] In fact, DOJ continues to unjustifiably withhold information concerning the third "substantial misrepresentation." *See infra* at 20.

**B.     To Ensure the Accuracy of DOJ's Representations and to Facilitate The Court's *De Novo* Review, *In Camera* Review of the Opinion Is Necessary**

In light of the concrete evidence of bad faith present here, the Court's *in camera* review of the Opinion is necessary to ensure DOJ's current withholding claims are legitimate and in compliance with the FOIA. In conducting its *de novo* review, FOIA empowers the Court to examine "agency records *in camera* to determine whether such records or any part thereof shall be withheld." 5 U.S.C. § 552(a)(4)(B). Given the unique circumstances present here, EFF respectfully submits that *in camera* review of the Opinion is the only appropriate means by which the Court can resolve this case.

 Courts have found *in camera* review to "be particularly appropriate when either the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims or there is evidence of bad faith on the part of the agency." *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996); *see also Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 22 (D.C. Cir. 1984). "Where there is evidence of bad faith on the part of the agency, the representations of the agency lose all trustworthiness. *In camera* inspection in such situations is 'plainly necessary.'" *Allen*, 636 F.2d at 1299.

Moreover, there is a "greater call for *in camera* inspection" in "cases that involve a strong public interest in disclosure." *Id*. at 1298.[6] As the D.C. Circuit has explained, in language particularly pertinent here:

> When citizens request information . . . the agency often deems it in its best
> interest to stifle or inhibit the probes. It is in these instances that the judiciary
> plays an important role in reviewing the agency's withholding of information. But

---

[6] Courts have also looked to the number of documents at issue in a case to determine whether *in camera* review is warranted, finding "*[i]n camera* review is particularly appropriate when the documents withheld are brief and limited in number." *Maynard v. CIA*, 986 F.2d 547, 558 (1st Cir. 1993) (citations omitted); *see also Donovan v. FBI*, 806 F.2d 55, 59 (2d Cir. 1986) ("*[I]n camera* inspection has been found to be appropriate when only a small number of documents are to be examined.") (citation omitted). Only a single document is at issue in this case, further counseling in favor of *in camera* review.

since it is in these instances that the representations of the agency are most likely to be protective and perhaps less than accurate, the need for *in camera* inspection is greater.

*Id.* at 1299; *see also Jones*, 41 F.3d at 243 (*in camera* inspection warranted where there is

"*strong public interest* — where the effect of disclosure or exemption clearly extends to the

public at large, such as a request which may surface evidence of corruption in an important

government function") (emphasis in original).

Here, as described above, there is irrefutable evidence contradicting the agency's earlier

representations to EFF and the Court. Consequently, *in camera* review of the Opinion is clearly

warranted. Additionally, the Opinion at issue in this case is the topic of intense public scrutiny

and interest. As noted, the scope, legality, and propriety of the government's current surveillance

practices has been vigorously debated, both in this country and abroad, for the past three months.

In light of this overriding public interest, the need for *in camera* inspection is particularly acute.

"A judge has discretion to order *in camera* inspection on the basis of an uneasiness, on a

doubt" she wants satisfied before taking "responsibility for a *de novo* determination." *Spirko v.*

*USPS*, 147 F.3d 992, 996 (D.C. Cir. 1998) (quoting *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C.

Cir. 1978)) (internal quotation marks omitted). EFF respectfully submits that the Court has

ample reason here for "uneasiness" and "doubt."

**III.   The Court's *In Camera* Review of the Opinion Will Allow it to Evaluate the Legitimacy of All Agency Withholding Decisions**

As we have shown, the Court should not rely solely upon the agency's own, untested

descriptions of the withheld portions of the Opinion and its purported rationale for the

withholding of such material. While EFF recognizes that some limited amount of legitimately

classified material may exist within the Opinion, the Court should verify through *in camera*

inspection that the agency is not mischaracterizing the nature of that material. For example, EFF

does not contest that specific targets of government surveillance may, indeed, be legitimately subject to classification and withholding. *See, e.g.*, Hudson Decl., ¶ 32 (describing withholding of "targets of 702 surveillance"); *see also* Sherman Decl., ¶¶ 20-22 (discussing other potentially legitimate topics for classification, including technological limitations, specific technical measures used, and impact of changing protocols on NSA targeting). To the extent the Court can verify that such material — and only such material — has been redacted from the Opinion, some relevant redactions may be appropriate.

However, even without *in camera* inspection, it is apparent that categories of information withheld by DOJ are not properly exempt from disclosure. In particular, the agency describes a substantial number of the contested redactions as containing "certification names and docket information for FISC opinions and order[s] under Section 702 and Section 402 of FISA." Mem. of Points & Auth. In Support of the Dep't of Justice's Renewed Mot. for Summ. J. ("Def Mem.") at 16 (citing Hudson Decl., ¶¶ 29-30) (ECF No. 16-1).[7] EFF submits that such redactions are improper, in addition to other insufficiently substantiated agency withholdings.

---

[7] According to DOJ:

> Such redacted information appears on pages 1; 2; 3 and n.2; 4; 5; 6; 7; 8 and n.6; 9; 11 and nn.7-9; 12 and n.11; 13 and nn.12-13; 18 and n.18; 19; 22; and 79 of the FISC Opinion, as well as pages 1 and 2 of the FISC Order. *See* Hudson Decl. ¶ 29; *see also* Hudson Decl. ¶ 30 (explaining that "the docket information of prior FISC opinions and orders related to the 702 program, and in particular as that information appears on pages 3 and n.3; 10; 12 and n.11; 15; 16 and n.14; 17 and n.15; 18; 19 and n.19; 22; 28; 33; 36; 42; 44; 63 and n.57; 67; 68; 70; 72; 75; 77; and 80 and n.69 of the [October 2011 FISC Opinion] . . . continues to remain properly classified").

Def. Mem. at 16, n. 6

A.      **FISC Docketing and Certification Information Cannot Be
        Withheld Under Any Exemption**

Like most federal courts, the FISC's docketing information contains the type of matter,

the year, and a numerically ordered docket entry (*e.g.*, Docket No. BR 08-13).[8] Within the

Opinion, DOJ has redacted the citations to previous FISC proceedings, opinions and orders,

which Judge Bates relied upon as precedent. *See*, *e.g.*, Opinion at 68 ("The Court has previously

concluded that the acquisition of foreign intelligence information pursuant to Section 702 falls

within the "foreign intelligence exception" to the warrant requirement of the Fourth Amendment.

See Docket No. [REDACTED].") To the extent EFF is able to ascertain from the agency's

declarations, these citations account for the great majority of the redactions in the Opinion,

which the agency seeks to justify under Exemption 1.[9] However the agency's declarations fail to

support this information's continued withholding under *any* exemption.

Exemption 1 allows the withholding of records that are "(A) specifically authorized under

criteria established by an Executive order to be kept secret in the interest of national defense or

foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C.

§ 552(b)(1). To justify withholding under Exemption 1, the government bears the burden of

demonstrating at least three conditions have been satisfied: (1) that a "logical connection" exists

between the information the agency seeks to withhold and a category of information specifically

authorized for classification by Executive Order, *see ACLU v. Dep't of Justice*, 265 F. Supp. 2d

20, 29-30 (D.D.C. 2003); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981);

(2) that the information, if disclosed, could "reasonably be expected to cause identifiable or

---

[8] Thus, for example, "Docket No. BR 08-13" signifies the thirteenth matter in the FISC's "Business Records" docket from 2008.

[9] DOJ also unavailingly asserts Exemption 3 to withhold docketing information. *See infra*, 19 n. 10 (discussing Exemption 3).

describable damage to the national security," Exec. Order No. 13,526 (hereinafter "E.O. 13526"), § 1.4, 32 C.F.R. § 2001 (2010); and (3) that the information was not classified for an improper purpose, such as "conceal[ing] violations of the law, inefficiency, or administrative error" or "prevent[ing] embarrassment to a person, organization, or agency." E.O. 13526 § 1.7(a)(1)-(2); *Goldberg*, 818 F.2d at 77.

Here, DOJ seeks to withhold basic FISC docketing information on the grounds that disclosure of that information will reveal "intelligence activities (including covert action), sources, or methods." Def. Mem. at 16. In seeking to justify the withholding of this category of information, the agency has utterly failed to satisfy the necessary conditions.

As a threshold matter, DOJ fails to explain how "certification names and docket information for FISC Opinions and order[s]" logically fall within one of the categories of classified information enumerated in E.O. 13526. While the agency asserts that the certification names and docket information somehow falls within E.O. 13526 § 1.4(c), it makes no attempt to explain how a reference to a previous certification could constitute an intelligence source, method, or activity.[10] Thus, put simply: the agency has not established the requisite "logical

---

[10] For example, the Hudson Declaration, in relevant part, states:

> The disclosure of certification names and docket information could reasonably be expected to cause serious damage to the national security because such disclosure would reveal the specific foreign intelligence information the IC sought to obtain via its Section 702 collection efforts and its priorities in such collection. It would also reveal the foreign intelligence information the IC did not seek to obtain via such collection and the intelligence collection that was not prioritized, which could be even more useful to the U.S.'s adversaries.

Decl. of Jennifer Hudson, ¶ 29. The agency fails to explain what information is contained in the docketing information, let alone how the disclosure of this docketing information would "reveal the specific foreign intelligence information the IC sought to obtain via its Section 702 collection." Indeed, and particularly in light of the breadth of Section 702 certifications, it is difficult to imagine how docketing information would reveal *any* specific information at all. *See,*

connection" between the withholding of basic information about FISC docketing and certifications and the purported disclosure of an intelligence activity, source, or method. *See Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982).[11]

Next, DOJ has not shown that disclosure of this information could, in fact, be reasonably expected to cause harm to national security. To show that information is legitimately classified, the agency must demonstrate that an original classification authority has "determine[d] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security." E.O. 13526 § 1.1(a)(4). DOJ makes no such argument: while the agency describes the alleged harm that would purportedly flow from the disclosure of "the four categories of NSA information withheld" from the Opinion, Def. Mem. at 18-19 (citing Declaration of David J. Sherman ("Sherman Decl."), ¶¶ 20-23); the "FBI information" withheld from the Opinion, Def. Mem. at 19-20 (citing Hudson Decl., ¶¶ 27, 28, 36, 38); and the "CIA information" withheld from the Opinion, Def. Mem. at 20-21 (citing Hudson Decl., ¶ 42), the agency only tangentially suggests that disclosure of the FISC certification and docketing information could result in harm to the national security. *See* Def. Mem. at 20. The mere suggestion of harm does not satisfy the agency's burden.

---

*e.g.*, *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1156 (2013) (Breyer, J., *dissenting*) (noting Section 702 "eliminated the requirement that the Government describe to the court each specific target and identify each facility at which its surveillance would be directed, thus permitting surveillance on a programmatic, not necessarily individualized, basis").

[11] For identical reasons, DOJ's withholding of FISC certification and docketing information under Exemption 3 is similarly unwarranted. Exemption 3 allows for withholding where the information is "specifically exempted from disclosure" by a collateral withholding statute. 5 U.S.C. § 552(b)(3). The agency cites Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. 3024(i)(1), as authority to withhold this information. However, the statute only references protection of "intelligence sources and methods." 50 U.S.C. 3024(i)(1). As with its classification claim, where the agency cannot establish that the withheld information constitutes an intelligence source or method, withholding under the statute — and, thus, under Exemption 3 — is improper.

Finally, information may not be classified in order to "conceal violations of the law, inefficiency, or administrative error" or to "prevent embarrassment to a person, organization, or agency." E.O. 13526 § 1.7(a)(1)-(2); *see ACLU v. Dep't of Defense*, 389 F. Supp. 2d 547, 564-65 (S.D.N.Y. 2005). With regard to FISC docketing and certification information, DOJ's withholdings appear more likely calculated to "conceal violations of the law" and to "prevent embarrassment" to the agency than to protect legitimate national security-sensitive information. For example, as described above, Footnote 14 of the Opinion describes three instances where "substantial misrepresentation[s]" were made by the government to the FISC concerning the "scope of a major [intelligence] collection program." Opinion at 16 n. 14. While two of the incidents have been largely disclosed, one entire "misrepresentation" has been withheld, only on the apparent ground that it would disclose FISC certification and docketing information. *See Def. Mem.* at 16 n. 6. Without further explanation, DOJ's withholding decision appears calculated purely to shield evidence of this third "misrepresentation" from public scrutiny.

Moreover, disclosing basic information about the FISC's docketing and certifications would provide the public with greater insight into the operation and oversight provided by that court. *See, e.g.*, *In re Orders of this Court Interpreting Section 215 of the Patriot Act*, Opinion & Order, Dkt. No. 13-02 (FISC Sept. 13, 2013) at 17 (noting further disclosure of information about FISC proceedings will "assure citizens of the integrity of [the FISC's] proceedings") (filed herewith as Exhibit D). Such disclosure would assist transparency advocates and the public in pushing for greater access to FISC materials, both through FOIA and in the FISC itself. *See id.* (ordering declassification review of FISC Opinions concerning Section 215). At a time when the public has a heightened interest in the activities of the FISC, withholding basic docketing information appears solely calculated to stifle public inquiry into the FISC's operation, rather

than to guard against disclosure of sensitive information. Obstructing public scrutiny, however, is an improper justification for the information's withholding. *See* E.O. 13526 § 1.7(a) (noting classification inappropriate "to prevent or delay the release of information that does not require protection in the interest of the national security").

DOJ has failed to demonstrate that basic information concerning FISC docketing and certifications "logically falls" within a category of information authorized for classification under E.O. 13526; that the information, if disclosed, could reasonably be expected to harm national security; and that the information has not been classified for an improper purpose. Consequently, the withholding of FISC certification and docketing information cannot be sustained, and EFF respectfully urges the Court to order its release.

**B.      Other Categories of Withheld Information Further Suggest DOJ Has Continued to Assert Exemptions More Broadly Than the Law Allows**

Along with the withholding of basic FISC docketing information from the Opinion, other categories of withheld information also warrant the Court's careful scrutiny. Indeed, under the circumstances present here, *all* of the withholdings should be carefully scrutinized. However, in its latest submissions, the agency barely attempts to explain the rationale for withholding some categories of allegedly exempt information, and some of its claims simply fail to make sense.

For example, the agency has withheld "the total number of certifications issued in the past by the FISC." Hudson Decl., ¶ 31. This category, then, is actually a single number. *See, e.g.*, Opinion at 3 ("[REDACTED] previous certifications have been submitted by the government and approved by the Court pursuant to Section 702.").[12] DOJ asserts that withholding this

---

[12] Another withholding in the Opinion is the number of "categories of 'about' communications" the FISC has authorized the government to intercept. *See, e.g.*, Opinion at 17 n. 16 ("As noted, the Court previously authorized the acquisition of [REDACTED] categories of 'about'

number is justified because it "could reveal to an informed adversary what content is subject to coverage by Section 702 surveillance, and conversely, what content may not be subject to coverage." Hudson Decl., ¶ 31. Yet the agency fails to explain how disclosure of a *number* could disclose what *content* is subject to surveillance. Indeed, based on the information provided, such logic strains credibility. It is precisely this type of vague and unsubstantiated withholding claim that warrants the Court's careful scrutiny.

Another example concerns a category of withholdings ambiguously identified as "Additional Redactions in the FISC Decision." Hudson Decl, ¶ 38. While the Hudson Declaration suggests this category of withholding concerns FBI activities, there is no indication in the Opinion that the material refers to the FBI at all. *See, e.g.*, Opinion at 24 (discussing NSA minimization procedures). In fact, the unredacted portions of the Opinion explicitly suggest some of these withholdings do not concern FBI operations at all. *Compare* Opinion at 29 n. 24 ("In addition to its upstream collection, *NSA* acquires discrete Internet communications from Internet service providers such as [REDACTED].") (emphasis added), *with* Hudson Decl., ¶ 38 ("[T]he redacted information in n. 24 on page 29 of [the Opinion] continues to remain properly classified, as its release would expose specific FBI methods of collection[.]").

Finally, with respect to page 73 of the Opinion, the government has averred that disclosure of the single, withheld word on that page would reveal "the specific types of communications that NSA is able to successfully target and acquire pursuant to Section 702," such that the single word is classified at the "TOP SECRET – SCI" level. Sherman Decl., ¶ 19. Although EFF cannot, with absolute certainty, ascertain the redacted word, its context within the Opinion strongly suggests it is entirely mundane. *See* Opinion at 73 ("At issue here are the

---

communications."). Based on the agency's submissions, it is not clear what justification, if any, applies to the withholding of this information.

personal [REDACTED] communications of U.S. persons and persons in the United States."). With the agency's obligation to not classify information to "prevent embarrassment" or to "delay the release of information that does not require protection," E.O. 13526 § 1.7(a)(2), (4), this Court's further scrutiny of that single redaction — in addition to the agency's other withholdings — is warranted. *See Goldberg*, 818 F.2d at 77 (describing court's duty to "ensure that information *not* be classified" for improper purposes) (emphasis in original).

### C.  The Court's *De Novo* Assessment of the Agency's Segregability Obligations Will be Further Aided by the Court's *In Camera* Review

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). A segregability analysis is so vital to FOIA's broad mandate of disclosure that a district court has an affirmative duty to consider segregability *sua sponte. Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). "A district court that 'simply approve[s] the withholding of an entire document without entering a finding on segregability, or lack thereof,' errs." *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (internal citations and quotations omitted). As part of the Court's *in camera* review, EFF respectfully urges the Court to examine the agency's withholdings for the existence of readily segregable information.

**CONCLUSION**

For the foregoing reasons, EFF respectfully urges the Court to deny DOJ's motion for summary judgment, order the Opinion produced for the Court's *in camera* inspection, and order the immediate release of any improperly withheld material.

Dated: October 2, 2013                      Respectfully submitted,

*/s/ David L. Sobel*
DAVID L. SOBEL
D.C. Bar No. 360418
Electronic Frontier Foundation
1818 N Street, N.W., Suite 410
Washington, DC 20036
(202) 797-9009

MARK RUMOLD
CA Bar. No. 279060
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333

Counsel for Plaintiff