# Exhibit D

Exhibit D

**UNITED STATES**

**FOREIGN INTELLIGENCE SURVEILLANCE COURT**

**WASHINGTON, D.C.**

**IN RE ORDERS OF THIS COURT INTERPRETING SECTION 215 OF THE PATRIOT ACT**

**Docket No. Misc. 13-02**

## OPINION AND ORDER

This matter involves a motion by the American Civil Liberties Union ("ACLU"), the American Civil Liberties Union of the Nation's Capital ("ACLU-NC"), and the Media Freedom and Information Access Clinic ("MFIAC") for release of certain opinions of the Foreign Intelligence Surveillance Court. In particular, movants seek release of opinions on Section 215 of the Patriot Act, 50 U.S.C. § 1861[1]—that is, the business records provision of the Foreign Intelligence Surveillance Act ("FISA"), codified as amended at 50 U.S.C. §§ 1801-1885c.

For the reasons set forth below, the Court finds that the ACLU and ACLU-NC have standing to seek this relief, as required by Article III of the Constitution, and that the Rules of the FISC do not preclude the Court from considering this request.[2] The Court concludes, however, that principles of comity—specifically, the "first-to-file" rule—require that the motion be denied to the extent that it concerns FISC opinions that are at issue in a separate suit brought by the ACLU in October 2011 in the United States District Court for the Southern District of New York

---

[1] See Pub. L. No. 107-56, § 215, 115 Stat. 287 (2001), codified as amended at 50 U.S.C. § 1861.

[2] The Rules of the FISC may be found at www.uscourts.gov/uscourts/rules/FISC2010.pdf.

pursuant to the Freedom of Information Act ("FOIA"), codified as amended at 5 U.S.C. § 552.[3] As a matter of discretion and for the reasons set forth below, the Court will order the government to conduct a declassification review of any opinions responsive to the present motion that are not subject to that FOIA litigation and to report the results of that review to the Court.

## I. Procedural History

On June 12, 2013, the ACLU, the ACLU-NC, and the MFIAC filed a motion with the FISC for release of certain court records. Specifically, the movants seek "publication of [FISC] opinions evaluating the meaning, scope, and constitutionality of Section 215 of the Patriot Act, 50 U.S.C. § 1861" ("Section 215 Opinions"), "with only those redactions that satisfy the stringent First Amendment standard that applies in public-access cases." Motion at 1. Alternatively, the motion requests that the Court "exercise its discretion" to order such publication "in the public interest." Id.

In support of that request, movants assert a qualified First Amendment right of access to the opinions in question. They contend that a prior opinion of the FISC denying a claim of right to obtain access to a FISC opinion, In re Motion for Release of Court Records, 526 F. Supp.2d 484 (FISA Ct. 2007), was erroneous. In particular, they contend that the FISC erred in its application of the two-part "experience and logic" test for determining whether a First Amendment right of access to court proceedings or records attaches.[4] Movants further contend

---

[3] ACLU v. FBI, No. 11 Civ. 7562 (S.D.N.Y. Oct. 26, 2011). For the sake of convenience, the Court will refer to it as the "FOIA litigation."

[4] In assessing whether there is a First Amendment right of access to a criminal
(continued...)

that, because of this constitutional right, any restriction on access must serve a compelling governmental interest and be narrowly tailored to serve that interest. They acknowledge that narrow redactions to protect sensitive information, such as "intelligence sources and methods that have not been previously disclosed," would satisfy this standard. Id. at 14; see also id. at 16 ("This motion does not seek the disclosure of . . . any properly classified information").

The government, in response, contends that In re Motion for Release of Court Records was correctly decided and that movants have not established a First Amendment right of access to the opinions at issue. The government also contends that because movants were not parties to the Section 215 proceedings that resulted in the opinions they seek, they lack "standing" under the FISC Rules to request the Court to publish the opinions as a matter of discretion. On the government's interpretation, the judge who authored an opinion could still request publication sua sponte, and after consultation the Presiding Judge could direct publication, provided that the Executive Branch redacts from the public version any classified information.

In their reply memorandum, movants further contend that the FISC has the authority to make classification decisions independent of the Executive Branch and to publish the opinions without an Executive Branch declassification review.[5]

---

[4](...continued)
proceeding, the Supreme Court has looked to "whether the place and process have historically been open to the press and the general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." Press-Enter. Co. v. Superior Court, 478 U.S. 1, 8 (1986). "If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches." Id. at 9.

[5] The Court has also received, accompanied by motions for leave to file, two amici curiae
(continued...)

## II.     The ACLU and ACLU-NC Have Standing Under Article III to Seek the Relief Requested.

The FISC is an Article III court.[6]  In order for the federal judicial power to be exercised

under Article III, there must be an actual case or controversy before the court. See, e.g., Clapper

v. Amnesty Int'l USA, 133 S. Ct. 1138, 1146 (2013); DaimlerChrysler Corp. v. Cuno, 547 U.S.

332, 341 (2006).  "'One element of the case-or-controversy requirement' is that plaintiffs 'must

establish that they have standing to sue.'" Clapper, 133 S. Ct. at 1146 (quoting Raines v. Byrd,

521 U.S. 811, 818 (1997)).  Although the parties have not addressed whether movants have

standing under Article III, the Court is nonetheless obliged to verify that standing exists. See

e.g., Juidice v. Vail, 430 U.S. 327, 331 (1977).

"To establish Article III standing, an injury must be concrete, particularized, and actual or

imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."

---

[5](...continued)

briefs in support of the Motion. See Brief of Amici Curiae U.S. Representatives Amash, Broun, Gabbard, Griffith, Holt, Jones, Lee, Lofgren, Massie, McClintock, Norton, O'Rourke, Pearce, Salmon, Sanford, and Yoho (hereinafter "Congressional Amici") in Support of the Motion, filed on June 28, 2013; Brief of Amici Curiae the Reporters Committee for the Freedom of the Press; ABC, Inc.; the Associated Press; Bloomberg, L.P.; Dow Jones & Company, Inc.; Gannet Co., Inc.; Los Angeles Times; the McClatchy Company; National Public Radio, Inc.; the New York Times Company; the New Yorker; the Newsweek/Daily Beast Company LLC; Reuters America LLC; Tribune Company; and the Washington Post (hereinafter "Media Amici") in Support of the Motion, filed on July 15, 2013.  The Court granted the motions for leave to file these two briefs on July 18, 2013, and has reviewed and benefitted from them.

[6] See In re Sealed Case, 310 F.3d 717, 731 (FISA Ct. Rev. 2002) (applying to the FISC "the constitutional bounds that restrict an Article III court") (per curiam); In re Motion, 526 F. Supp. 2d at 486 ("the FISC is an inferior federal court established by Congress under Article III"); In re Kevork, 634 F. Supp. 1002, 1014 (C.D. Cal. 1985) (district court judges retain "Article III status" when acting as members of the FISC), aff'd, 788 F.2d 566 (9th Cir. 1986).

Clapper, 133 S. Ct. at 1147 (internal quotations omitted); accord, e.g., Davis v. Federal Election Comm'n, 554 U.S. 724, 733 (2008). Here, movants complain that withholding the Section 215 Opinions from the public violates their First Amendment right of access. The claimed injury is actual, rather than imminent: the Section 215 Opinions are not now available to the public. Nor is there any real question that this claimed injury is fairly traceable to the government's decision not to make the Section 215 Opinions public and to the grounds for such withholding—that is, the government's determination that the opinions are classified—and that it would be redressed by this Court's directing that those opinions be published.

There is a more substantial question whether movants have an injury that is sufficiently concrete and particularized to confer Article III standing. The injury-in-fact prerequisite for Article III standing "helps assure that courts will not pass upon . . . abstract, intellectual problems, but adjudicate concrete, living contest[s] between adversaries." Federal Election Comm'n v. Akins, 524 U.S. 11, 20 (1998) (internal quotations omitted). Accordingly, an injury is particularized for standing purposes if it affects a claimant "in a personal and individual way." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1 (1992). Here, movants assert a right of access that is indistinguishable from those of any other interested member of the public. Nevertheless, for the reasons explained below, movants could have a concrete and particularized injury in fact if the lack of public access to the Section 215 Opinions impedes their own activities in a concrete, particular way—or to put the point differently, if public access to the Section 215 Opinions would be of concrete, particular assistance to them in their own activities.

The Supreme Court has held that claimants asserting a widely-shared right to receive information can establish an injury that is sufficiently concrete and particular for purposes of Article III standing. The respondents in Akins asserted a right to obtain "lists of [American Israel Public Affairs Committee (AIPAC)] donors . . . and campaign-related contributions and expenditures . . . that, on respondents' view of the law, the [Federal Election Campaign Act] require[d] that AIPAC make public." 524 U.S. at 21. The Court found that the respondents' inability to obtain this information constituted a sufficient injury in fact under Article III because there was "no reason to doubt their claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election." Id. On that basis, the Court found that the respondents' injury was "concrete and particular." Id.

The Court reached that conclusion in Akins notwithstanding the fact that the respondents' "asserted harm (their failure to obtain information) is one which is shared in substantially equal measure by all or a large class of citizens." Id. at 23 (internal quotations omitted). While acknowledging that some of its prior decisions contained statements suggesting that such "generalized grievances" do not confer standing, id. (citing, e.g., Lujan, 504 U.S. at 573-74 (internal quotations omitted)), the Court explained that such "judicial language . . . invariably appears in cases where the harm at issue is not only widely shared, but is also of an abstract and indefinite nature -- for example, harm to the common concern for obedience to law." Akins, 524 U.S. at 23 (emphasis added; internal quotations omitted). "The abstract nature of the harm" in

those cases "deprives the case of the concrete specificity" necessary for a plaintiff to have standing. Id. at 24. "[W]here a harm is concrete, though widely shared, the Court has found 'injury in fact.'" Id.[7]

Courts have applied the same principles in evaluating Article III standing to assert a right of access to judicial or administrative proceedings. A party who had not herself been excluded from any juvenile court proceeding, and who had been permitted to attend the only proceedings she had sought to attend, had not suffered a particularized injury in fact and consequently lacked standing to bring a First Amendment challenge to a statute restricting public access to such proceedings. See Ernst v. Child & Youth Servs. of Chester Cnty., 108 F.3d 486, 499-500 (3d Cir. 1997). On the other hand, when an organization had been excluded from certain proceedings and that exclusion had been detrimental to its activities, the organization suffered a concrete and particularized injury in fact. See New York Civil Liberties Union v. New York City Transit Auth., 684 F.3d 286, 295 (2d Cir. 2012).[8] In that case, agents of the plaintiff organization had sought to attend certain hearings and had been denied access as a result of the challenged policy of the agency conducting the hearings. The court found that the organization had "suffered a concrete injury as a result of the policy." Id. This injury was to a particularized interest of the organization because it represented clients before that agency and sought to

---

[7] As to the other two elements of Article III standing, the Court found in Akins that the claimants' injury was fairly traceable to a decision of the Federal Election Commission and would be redressed by the Court's setting aside that decision. Id. at 25.

[8] An organization will have Article III standing if it meets the same requirements that apply to individuals. E.g., New York Civil Liberties Union v. New York City Transit Auth., 684 F.3d 286, 294 (2d Cir. 2012).

observe hearings in order to prepare for those appearances. Id. at 293, 295. Actual exclusion of the organization (through its agents), to the detriment of the organization's own activities, constituted a sufficient injury in fact for there to be standing under Article III. Id. at 295.[9]

In this case, movants contend that release of the Section 215 Opinions would inform and enhance public debate about Section 215, but they do not explain how release would aid their own activities or how continued withholding of the opinions is detrimental to them particularly. A sufficient injury in fact may not require great harm to movants' own activities, see New York Civil Liberties Union, 684 F.3d at 294 ("only a perceptible impairment of an organization's activities is necessary for there to be an injury in fact") (citation and internal quotations omitted), but some harm is necessary.[10]

The Court ordinarily would not look beyond information presented by the parties to find that a claimant has Article III standing. In this case, however, the ACLU's active participation in the legislative and public debates about the proper scope of Section 215 and the advisability of amending that provision is obvious from the public record and not reasonably in dispute.[11] Nor is

---

[9] The causation and redressability requirements for Article III standing were also met, as the exclusion was a result of an agency policy that the organization sought to invalidate on First Amendment grounds. Id.

[10] But see Fisher v. King, 232 F.3d 391, 396 n.5 (4th Cir. 2000) (including a brief discussion of standing that could be read to state that mere lack of access to a requested record constituted a sufficient injury in fact).

[11] See, e.g., Michelle Richardson, Legislative Counsel, ACLU Washington Legislative Office, Misdirection: The House Intelligence Committee's Misleading Patriot Act Talking Points (June 20, 2013) (https://www.aclu.org/blog/national-security/misdirection-house-intelligence-committees-misleading-patriot-act-talking); Testimony of Jameel Jaffer, Deputy Legal Director (continued...)

it disputed that access to the Section 215 Opinions would assist the ACLU in that debate. The Court therefore concludes that the ACLU has satisfied that requirement. See, e.g., Ohio Citizen Action v. City of Englewood, 671 F.3d 564, 579 (6th Cir. 2012).

Accordingly, the Court finds that the withholding from the ACLU of the Section 215 Opinions constitutes a concrete and particularized injury in fact to the ACLU for purposes of Article III standing. Because of the ACLU-NC's shared mission and interlocking membership with the ACLU (also a matter of public record not in dispute),[12] the Court makes the same finding regarding the ACLU-NC. The Court cannot, however, make such a finding as to MFIAC.[13]

---

[11](...continued)

of the ACLU Foundation, and Laura W. Murphy, Director, Washington Legislative Office, ACLU, before the Senate Judiciary Committee Hearing on Strengthening Privacy Rights and National Security: Oversight of FISA Surveillance Programs (July 31, 2013) (http://www.judiciary.senate.gov/pdf/7-31-13JafferTestimony.pdf); Testimony of Mr. Jaffer and Ms. Murphy before the House Committee on the Judiciary, Oversight Hearing on the Administration's Use of FISA Authorities (July 17, 2013) (at http://judiciary.house.gov/hearings/113th/07172013/Jaffer%2007172913.pdf).

[12] Persons who join the ACLU-NC thereby become members of the ACLU also. See http://ACLU-NCA.org/about.

[13] MFIAC has submitted no information as to how the release of the opinions would aid its activities, or how the failure to release them would be detrimental. Moreover, a review of the public record has not revealed any indication that the MFIAC has participated in public debate about Section 215. Therefore, the Court is unable to find that MFIAC has suffered an injury in fact from lack of access to the Section 215 Opinions. MFIAC's lack of standing under Article III has no practical effect, however, because the other movants do have standing and they seek the same relief on identical grounds as MFIAC.

## III. FISC Rule 62(a) Does Not Preclude the Court From Entertaining the Motion.

The government contends that movants lack "standing" of a different sort than the Article III requirement. In the government's view, FISC Rule 62(a) precludes movants from requesting the Court to publish the Section 215 Opinions as an exercise of the Court's discretion.[14] That Rule states as follows:

> **Publication of Opinions.** The judge who authored an order, opinion, or other decision may *sua sponte* or on motion by a party request that it be published. Upon such request, the Presiding Judge, after consulting with other Judges of the Court, may direct that an order, opinion or other decision be published. Before publication, the Court may, as appropriate, direct the Executive Branch to review the order, opinion, or other decision and redact it as necessary to ensure that properly classified information is appropriately protected . . . .

FISC Rule 62(a). The government argues that because movants were not parties to any of the Section 215 proceedings in which the opinions were issued, Rule 62(a) forecloses them from seeking publication. Under the government's interpretation, the judge who authored an opinion could nevertheless sua sponte request publication, and after consultation the Presiding Judge could direct publication, provided that the Executive Branch redacts from the public version any classified information. The government also states that a declassification review process for these opinions is underway.

---

[14] The government does not assert that movants lack this form of "standing" insofar as they assert a First Amendment right of access, perhaps in view of the determination of the FISC in 2007 that "it would be quite odd if the FISC did not have jurisdiction in the first instance to adjudicate a claim of right to the court's very own records and files." In re Motion, 526 F. Supp. 2d at 487 (emphasis added). Of course, the government vigorously disputes that the claim of a First Amendment right of access is meritorious.

Movants submit that Rule 62(a) does not preclude the Court from entertaining their motion for two reasons: first, because a "party" who, as described in that Rule, may move for publication of an opinion does not have to have been a party to the proceeding that resulted in the opinion; and second, because Rule 62(a) should not be understood to extinguish the FISC's inherent power to consider movants' request. Movants further contend that the FISC has the authority to make classification decisions independent of the Executive Branch and to publish the opinions without an Executive Branch declassification review.

The Court concludes that the term "party" in Rule 62(a) refers to a party to the proceeding that resulted in the "opinion, order, or other decision" being considered for publication. Otherwise, the phrase "by a party" would be superfluous. Nevertheless, for reasons explained below, the Court is persuaded that Rule 62(a) does not preclude it from considering the present motion.

As the government acknowledges and Rule 62(a) explicitly states, the Court has the discretion to direct publication sua sponte. Given this discretion to act, it would serve no discernible purpose for the Court, by rule, to be precluded from considering reasoned arguments in favor of publication of certain opinions made by claimants with Article III standing to seek their publication. Indeed, although the Court does not reach the merits of the First Amendment claim, it is noteworthy that the government's reading of Rule 62(a), which would preclude non-parties from requesting publication, would logically extend to non-parties who claim a right to public access. Certainly, at least, nothing in the language of the Rule provides a basis for distinguishing assertions of right from requests for discretionary publication. Accordingly, the

government's interpretation of Rule 62(a) would lead to the same "odd" result that the FISC rejected in 2007: that the FISC could not "adjudicate a claim of right" to access "its very own records and files." In re Motion, 526 F. Supp.2d at 487.

Moreover, in referring to a "motion by a party" seeking publication, Rule 62(a) appears to contemplate the ordinary case where publication of an opinion is being considered shortly after its issuance, when non-parties are unlikely to know about a classified opinion and would not be able to present cogent arguments for publication. This case involves the extraordinary circumstances of (1) a particular FISC order (apparently) being unlawfully misappropriated, leaked to the press, and widely publicized; (2) the government's subsequent declassification and release of significant information about the context and legal underpinnings of that order; and (3) a high level of public and legislative interest in how the relevant statutory provision has been interpreted and applied and whether legislative changes should be made. This unusual combination of events, among other things, means that non-parties to the Section 215 proceedings have sufficient information to make reasonably concrete, rather than abstract, arguments in favor of publication. Under the circumstances, there is no persuasive reason to interpret Rule 62(a) to preclude the Court from even considering their request.

## IV. Principles of Comity Require Dismissal of the Motion With Regard to Opinions That Are the Subject of the Previously Commenced FOIA Litigation.

Movants acknowledge that there is ongoing FOIA litigation in the District Court for the Southern District of New York concerning disclosure of a set of FISC opinions. The subject of that litigation overlaps, if not entirely coincides, with the Section 215 Opinions subject to the

present motion. Other than movants' assertion that "the public's First Amendment right of access attaches to this Court's legal opinions interpreting public laws, irrespective of the government's statutory obligation under FOIA to disclose records in its possession," Motion at 13 n.6, the parties have not briefed the significance of the ongoing FOIA litigation. It is apparent to the Court, however, that it should examine sua sponte whether principles of comity—and specifically, the "first-to-file" rule—counsel against proceeding in this matter with regard to FISC opinions that are already part of the FOIA litigation.[15]

As a matter of comity, and in order to conserve judicial resources and avoid inconsistent judgments, federal courts do not engage in parallel adjudications involving the same parties and issues. See, e.g., UtahAmerican Energy, Inc. v. Dep't of Labor, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (per curiam); Church of Scientology of California v. Dep't of Army, 611 F.2d 738, 749-50 (9th Cir. 1979). The general rule is that when two such actions are pending, the district court in which the second action is filed will decline to consider the matter in deference to the district court in which the first matter was filed. See UtahAmerican Energy, 685 F.3d at 1124; EEOC v. University of Pennsylvania, 850 F.2d 969, 976 (3d Cir. 1988), aff'd, 493 U.S. 182 (1990); Church of Scientology, 611 F.2d at 749-50. Under exceptional circumstances, the court with the earlier-filed action may defer to the court with the later-filed action, but in either case duplicative, parallel proceedings are avoided.[16]

---

[15] Courts have discretion to examine matters of comity sua sponte. United States v. AMC Entertainment, Inc., 549 F.3d 760, 771 n.5 (9th Cir. 2008).

[16] See, e.g., University of Pennsylvania, 850 F.2d at 978 (party filing first action sought (continued...)

The application of these principles to the FOIA context results in courts avoiding duplicative adjudication over the same documents between the same parties. Under the general first-to-file rule, the court with the later-filed action generally should defer to the court with the earlier-filed action, to the extent the matters involve the same party requesting the same documents. See UtahAmerican Energy, 685 F.3d at 1123-25 (abuse of discretion for judge with later-filed action to order release of document also at issue in earlier-filed action).

The FISC, of course, is not a district court, but rather an Article III court composed of district judges. The concerns underlying the first-to-file rule—avoiding duplicative effort and the possibility of inconsistent results—fully apply here. The opinions at issue in both cases are overlapping, if not coextensive. The FOIA litigation in New York commenced in October 2011, long before the motion was filed in this Court in June 2013. The parties in the two cases are substantially identical.[17] The movants properly before this Court are the ACLU and a closely related entity, the ACLU-NC; the ACLU is a plaintiff in the FOIA litigation.[18] Of course, the United States Government or its agencies are parties to both proceedings. Insofar as they involve

[16](...continued)
"to circumvent local law and preempt an imminent subpoena enforcement action"); Church of Scientology, 611 F.2d at 749-50 (proceedings in second court advanced to point where judicial economy was better served by that court's adjudicating the matter).

[17] Application of the first-to-file rule does not require "exact identity" of parties, as long as some "parties in one matter are also in the other matter." Intersearch Worldwide, Ltd. v. Intersearch Group, Inc., 544 F. Supp.2d 949, 959 n.6 (N.D. Cal. 2008).

[18] In addition, two of the attorneys for the movants before the FISC also represent the ACLU in the separate FOIA litigation.

the same documents, presumably the same officials are involved in declassification and release determinations in each case.

Finally, there is sufficient overlap between the issues in the two cases for the first-to-file rule to apply. Although the legal theories advanced by the ACLU in the two proceedings are different (statutory right-to-disclosure under FOIA rather than constitutional right-of-access under the First Amendment), substantially the same relief is sought in both cases: disclosure of the opinions with only such redactions as are necessary to protect intelligence sources and methods and other properly classified information. See 5 U.S.C. § 552(b)(1) (exempting from disclosure under FOIA matters that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order"); Motion at 14, 16 (the motion does not seek disclosure of "intelligence sources and methods that have not been previously disclosed" or other "properly classified information"). The present motion thus asks the FISC to do the same thing that the ACLU is asking the District Court in New York to do in the FOIA litigation: ensure that the opinions are disclosed, with only properly classified information withheld. Having both courts proceed poses the risks of duplication of effort and inconsistent outcomes that the first-to-file rule is intended to avoid.

Under the first-to-file rule, dismissal by the court of second filing "is proper where the court of first filing provides adequate remedies." Intersearch Worldwide, 544 F. Supp.2d at 963. The Court sees no reason to presume that the remedies available in the FOIA litigation in the Southern District of New York are inadequate. Accordingly, the Court will dismiss the present

motion to the extent that it concerns the opinions that are at issue in the FOIA litigation. Such dismissal is without prejudice to reinstatement of a motion for publication with the FISC after resolution of the FOIA litigation in the Southern District of New York and any appeal therefrom.[19]

**V. As an Exercise of Discretion, the Court Directs the Government to Perform and Report on the Results of Declassification Reviews of Any Section 215 Opinions That Are Not Subject to the FOIA Litigation.**

There may be FISC opinions that "evaluat[e] the meaning, scope, and constitutionality of Section 215," Motion at 1, but are not subject to the FOIA litigation (for example, because they were issued after the government had conducted its search for responsive records in response to the underlying FOIA request). The Court, however, is not in a position to identify any such Section 215 Opinions, because the record does not specify exactly what opinions are at issue in the FOIA litigation.

Assuming that there are such Section 215 Opinions that are not at issue in the FOIA litigation, movants and amici have presented several substantial reasons why the public interest might be served by their publication. The unauthorized disclosure in June 2013 of a Section 215 order, and government statements in response to that disclosure, have engendered considerable public interest and debate about Section 215. Publication of FISC opinions relating to this provision would contribute to an informed debate. Congressional amici emphasize the value of public information and debate in representing their constituents and discharging their legislative

[19] Upon such reinstatement, the FISC would presumably examine what, if any, preclusive effect the outcome of the FOIA litigation should be afforded.

responsibilities. Publication would also assure citizens of the integrity of this Court's proceedings.

In addition, publication with only limited redactions may now be feasible, given the extent of the government's recent public disclosures about how Section 215 is implemented. Indeed, the government advises that a declassification review process is already underway.

In view of these circumstances, and as an exercise of discretion, the Court has determined that it is appropriate to take steps toward publication of any Section 215 Opinions that are not subject to the ongoing FOIA litigation, without reaching the merits of the asserted right of public access under the First Amendment. Because the record in this matter does not specify exactly which (if any) Section 215 Opinions are not subject to the FOIA litigation, the Court is not in a position at this time to initiate the publication procedure described in Rule 62(a), whereby the judge who issued the opinion in question may request its publication. Instead, the Court will take the steps described below in order to facilitate consideration of publication pursuant to Rule 62(a).

* * *

For the reasons stated above, it is HEREBY ORDERED as follows:

(1) The Court dismisses the Motion of the ACLU and the ACLU-NC to the extent that it requests publication of opinions that are at issue in the pending FOIA litigation in the District Court for the Southern District of New York. Such dismissal is without prejudice to reinstatement of a motion for publication with the FISC after resolution of that FOIA litigation, including any appeal therefrom.

(2) The Court dismisses the claim of MFIAC for lack of standing.

(3) By October 4, 2013, the government (and, to the extent particularly identifying information is available to it as plaintiff in the FOIA litigation, the ACLU) shall make a written submission identifying which Section 215 Opinions are subject to the FOIA litigation. By that same date, the government shall identify which Section 215 Opinions, if any, are not subject to the FOIA litigation (or a separate order under Rule 62(a)) and propose a timetable to complete a declassification review and submit to the Court its proposed redactions, if any, for each such Section 215 Opinion. After that review and submission, the author of each such opinion, with the benefit of any proposed redactions, may decide whether to propose publication pursuant to Rule 62(a).

So ORDERED this 13th day of September, 2013, in Docket No. Misc. 13-02.

/s/ F. Dennis Saylor
**F. DENNIS SAYLOR IV**
Judge, United States Foreign
Intelligence Surveillance Court