# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
)
**ELECTRONIC FRONTIER** )
**FOUNDATION** )
)
    **Plaintiff,** )
)
       **v.** )      **Civil No. 12-cv-1441 (ABJ/GMH)**
)
**DEPARTMENT OF JUSTICE** )
)
    **Defendant.** )
———————————————————————— )

## MEMORANDUM OPINION

On February 23, 2015, this case was referred to the undersigned for resolution of

plaintiff's motion for attorney's fees and costs.  Upon a thorough review of the parties' briefs

and the entire record herein,[1] plaintiff's motion will be granted in part and denied in part.

---

[1] The documents referenced more than once in this Memorandum Opinion are as follows:

(1) Plaintiff's Complaint ("Compl.") [Dkt. 1];
(2) Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s MSJ") [Dkt. 11-1];
(3) Statement of Material Facts ("SOMF") [Dkt. 11-2]
(4) Declaration of Mark A. Bradley ("Bradley Decl.") [Dkt. 11-3];
(5) Declaration of Diane E. Janosek ("Janosek Decl.") [Dkt. 11-4];
(6) Plaintiff's Unopposed Motion to Stay Proceedings ("Mot. to Stay") [Dkt. 12];
(7) Memorandum in Support of Defendant's Renewed Motion for Summary Judgment ("Def.'s Ren. MSJ") [Dkt. 16-1];
(8) Declaration of Jennifer L. Hudson ("Hudson Decl.") [Dkt. 16-2];
(9) Declaration of Dr. David Sherman ("Sherman Decl.") [Dkt. 16-3];
(10) Memorandum in Support of Plaintiff's Cross Motion and Opposition to Summary Judgment ("Pl.'s MSJ") [Dkt. 19-1];
(11) Defendant's Fee Reply to Plaintiff's Cross Motion and Opposition to Summary Judgment ("Def.'s MSJ Opp.") [Dkt. 22];
(12) Plaintiff's Response to Defendant's Fee Reply ("Pl.'s MSJ Reply") [Dkt. 25];
(13) Ex Parte Supplemental Hudson Declaration ("Suppl. Hudson Decl.") [Dkt. 33];
(14) Plaintiff's Motion for Attorney's Fees and Costs ("Fee Mot.") [Dkt. 38];
(15) Declaration of David L. Sobel ("Sobel Decl.") [Dkt. 38-1];
(16) Declaration of Mark Rumold ("Rumold Decl.") [Dkt. 38-2];
(17) Defendant's Opposition to Plaintiff's Motion for Attorney's Fees and Costs ("Fee Opp.") [Dkt. 39];
(18) Declaration of Susan L. Kim ("Kim Decl.") [Dkt. 39-2];
(19) Plaintiff's Fee Reply to Defendant's Opposition to Motion for Attorney's Fees and Costs ("Fee Reply") [Dkt. 40];

## I.        BACKGROUND

Plaintiff Electronic Frontier Foundation ("EFF") is a "not-for-profit corporation . . . that works to inform policymakers and the general public about civil liberties issues related to technology and to act as a defender of those liberties." Compl. ¶ 3. This case stems from plaintiff's Freedom of Information Act ("FOIA") request seeking information concerning the government's surveillance activities under Section 702 of the Foreign Intelligence Surveillance Act of 1978 ("FISA"), 50 U.S.C. § 1881a, as amended by the FISA Amendment Act of 2008 ("FAA"). Section 702 authorizes and regulates certain governmental electronic surveillance of communications of individuals who are not "United States persons" and are reasonably believed to be located outside the United States, for foreign intelligence purposes. 50 U.S.C. § 1881a. Collecting foreign intelligence under Section 702 must comport with the Fourth Amendment, and is subject to congressional oversight as well as several types of Executive Branch review. Id. at §§ 1881a(b)(5), (f)(2), (l).

During the summer of 2012, with the FAA scheduled to sunset at the end of the year unless re-authorized by Congress, Senator Ron Wyden, a member of the Senate Select Committee on Intelligence, sought the public release of information concerning the government's Section 702 collection under the FAA. Pl.'s MSJ at 3. In response to Senator Wyden's request, on June 20, 2012, the government declassified four statements concerning its Section 702 surveillance activities. Id. Through these disclosures, the public learned for the first time that "the government's implementation of Section 702 of [FISA] ha[d] sometimes

---

(20) Supplemental Declaration of David Sobel ("Suppl. Sobel Decl.") [Dkt. 41-4];
(21) Supplemental Declaration of Mark Rumold ("Suppl. Rumold Decl.") [Dkt 41-5];
(22) Plaintiff's Supplemental Brief in Support of its Motion for Attorney's Fees ("Suppl. Fee Br.") [Dkt. 42];
(23) Defendant's Response to Plaintiff's Supplemental Brief ("Suppl. Fee Opp.") [Dkt. 45];
(24) Plaintiff's Supplemental Fee Reply Brief in Support of its Motion for Attorney's Fees ("Suppl. Fee Reply") [Dkt. 46].

circumvented the spirit of the law," and that "on at least one occasion, the Foreign Intelligence

Surveillance Court ("FISC")[2] held that some collection carried out pursuant to the Section 702

minimization procedures[3] used by the government was unreasonable under the Fourth

Amendment."  Compl. ¶ 10 (quoting Letter from Kathleen Turner, Director of Legislative

Affairs, Office of the Director of National Intelligence, to Senator Ron Wyden (July 20, 2012)).[4]

Understanding the importance of the disclosures to the ongoing public debate concerning

the reauthorization of the FAA, on July 26, 2012, EFF submitted a FOIA request to the National

Security Division of the Department of Justice ("DOJ") requesting additional information

concerning the subject matter of Senator Wyden's disclosures.  See Compl. ¶ 12; Fee Mot. at 2.

Specifically, plaintiff sought the release of:

> (1) Any written opinion or order . . . in which "the Foreign
> Intelligence Surveillance Court held that some collection carried
> out pursuant to Section 702 minimization procedures used by the
> government was unreasonable under the Fourth Amendment";
>
> (2) Any written opinion or order . . . reflecting or concerning a
> FISC determination that "the government's implementation of
> Section 702 of FISA has sometimes circumvented the spirit of the
> law"; and

---

[2] The FISC is a specialized court with jurisdiction to "hear applications for and grant orders approving electronic surveillance . . . under the procedures set forth in [FISA]."  50 U.S.C. § 1801 et seq.  The Attorney General and the Office of the Director of National Intelligence ("ODNI") provide to the FISC a written certification and any supporting affidavits attesting that all minimization and targeting procedures are in place and that the adopted guidelines are "consistent with the requirements of the Fourth Amendment."  Id. §§ 1881a(g)(1)(A), (g)(2)(A)(iv). If the FISC finds that a certification "contains all the required elements," and that the targeting and minimization procedures . . . are consistent" with the statutory requirements and the Fourth Amendment, the FISC will enter an order approving the certification and the acquisition.  Id. § 1881a(i)(2)(A).  Otherwise, the FISC will order the government to correct any identified deficiency, or it will order the government to "cease . . . the implementation of the authorization for which [the] certification was submitted."  Id. § 1881a(i)(3)(B)(i)–(ii).

[3] Section 702 minimization procedures are specific procedures, adopted by the Attorney General, that are "reasonably designed . . . to minimize the acquisition and retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information[.]"  50 U.S.C. § 1801(h)(1).

[4] Available at http://www.wired.com/images_blogs/dangerroom/2012/07/2012-07-20-OLA-Ltr-to-Senator-Wyden-ref-Declassification-Request.pdf.

>(3) Any briefing provided to the Senate Select Committee on
>Intelligence or the House Permanent Select Commission on
>Intelligence concerning FISC opinions or orders described in items
>(1) and (2) above.

Compl. ¶ 12.  EFF formally requested expedited processing of its request.  Id. ¶ 13 (citing 5

U.S.C. § 552(a)(6)(E)(i)(I)–(II)).  After exhausting all applicable administrative remedies

without receiving any responsive documents, EFF filed a FOIA complaint in this Court seeking

injunctive relief.  See Compl. ¶ 18.

On December 6, 2012, this Court ordered DOJ to file a report no later than January 4,

2013, addressing "the status of the production" of documents responsive to EFF's FOIA request.

See Dec. 6, 2012, Minute Order.  On January 3, 2013 – four days after the FAA was reauthorized

– DOJ notified EFF that it had identified five responsive documents:

- an October 2011 FISC opinion;

- a redacted copy of this same opinion that was provided to Congress
  pursuant to the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1871;

- one paragraph of a classified White Paper prepared for Congress;

- one section of a Joint Statement Before the Permanent Select Committee
  on Intelligence, U.S. House of Representatives; and

- one section of a Joint Statement Before the Senate Select Committee on
  Intelligence.

Def.'s MSJ at 8–9; Fee Mot. at 2–3.  It is only the October 2011 FISC opinion and the redacted

version of the same (hereinafter, collectively referred to as the "2011 FISC Opinion" or the

"Opinion") that is relevant to EFF's motion for an award of attorney's fees because EFF

withdrew its challenge to the government's withholdings in the other three documents.  See Pl.'s

MSJ at 2 ("[T]he only document remaining at issue in this case [is] an opinion of the . . . FISC

issued in October 2011. . . ."); Ren. Def.'s MSJ at 10 ("By email dated August 27, 2013, EFF

advised the Department that the only withholdings still in contention are those in the October 2011 FISC opinion . . . .").

In this litigation, DOJ withheld the 2011 FISC Opinion in full pursuant to FISC Rule of Procedure 62.[5]  Def.'s MSJ at 11–14.  It further asserted that FISC Rule 62 released the government of its obligation to produce any reasonably segregated, non-exempt information from the Opinion.  Id. at 26.  According to DOJ, "[u]nlike in the typical FOIA case, the Department does not have the discretion to produce [the 2011 FISC Opinion] to Plaintiff" because "[p]ursuant to the FISC Rules of Procedure, such court records cannot be published" other than by order of the FISC.  Id.; see also SOMF ¶ 16 ("[The 2011 FISC Opinion] could not be segregated and released by the Department because of the FISC-imposed restriction on [its] public release."); Bradley Decl. ¶ 11 ("For [the FISC 2011 Opinion], I determined that no portion . . . could be properly segregated and released due to the FISC's rule pertaining to the release of its orders.").

---

[5] FISC Rule of Procedure 62 provides, in relevant part:

> Rule 62.  Release of Court Records.
>
> (a)  Publication of Opinions.  The Judge who authored an order, opinion, or other decision may sua sponte or on motion by a party request that it be published.  Upon such request, the Presiding Judge, after consulting with other Judges of the Court, may direct that an order, opinion or other decision be published.  Before publication, the Court may, as appropriate, direct the Executive Branch to review the order, opinion, or other decision and redact it as necessary to ensure that properly classified information is appropriately protected pursuant to Executive Order 13526 (or its successor).
>
> (b)  Other Records.  Except when an order, opinion, or other decision is published or provided to a party upon issuance, the Clerk may not release it, or other related record, without a Court order. . .

F.I.S.C. R. Pr. 62.

The government also withheld the 2011 FISC Opinion pursuant to FOIA Exemptions 1[6] and 3.[7]  Def.'s MSJ at 9.  Under Exemption 1, DOJ withheld information in the Opinion "describing highly sensitive intelligence activities, sources and methods" concerning "the manner and means by which the United States Government targets non-United States persons located overseas to acquire foreign intelligence information under Section 702."  Bradley Decl. ¶¶ 8–9.  The National Security Agency ("NSA") withheld information "pertain[ing] to the operational details of NSA's collection activities under Section 702."  Sherman Decl. ¶¶ 20–23. As for FOIA Exemption 3, the government withheld from the Opinion information concerning intelligence sources and methods, communication intelligence activities, and information concerning NSA activities pursuant to:  Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 3024; Section 6 of the National Security Act of 1959, 50 U.S.C. § 3605; and/or 18 U.S.C. § 798.  Bradley Decl. ¶ 10; Sherman Decl. ¶¶ 13, 24–31.

In response to DOJ's assertion that FISC Rule 62 made any disclosure from the 2011 FISC Opinion impossible absent an order of the FISC, on April 24, 2013, EFF sought a stay of this case to permit it to adjudicate that issue before the FISC.  See Mot. to Stay at 1–2.  With DOJ's consent, this Court promptly granted the stay so as to permit EFF to litigate the issue in front of the FISC.  Apr. 24, 2013, Minute Order.

On May 23, 2013, plaintiff filed a motion with the FISC requesting the court's consent to the disclosure of the 2011 FISC Opinion, or, alternatively, its determination that FISC Rule 62

[6] Exemption 1 excludes from disclosure records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order[.]"  5 U.S.C. § 552(b)(1).

[7] Exemption 3 excludes from disclosure records that are "exempted from disclosure by statute . . . if that statute: (A)(i) [r]equires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) [e]stablishes particular criteria for withholding or refers to particular types of matters to be withheld. . . ." 5 U.S.C. § 552(b)(3).

did not prohibit disclosure of the Opinion by this Court pursuant to FOIA.  In re Motion for Consent to Disclosure of Court Records, No. Misc. 13-01, 2013 WL 5460051, at *4 (F.I.S.C. 2013).  DOJ opposed the motion, arguing that the FISC lacked jurisdiction to adjudicate EFF's request, or, in the alternative, that there was "good reason not to vacate the seal on the opinion" that, in the government's view, FISC Rule 62 created.  Gov.'s Opp. Br. at 2, 5, In re Motion for Consent to Disclosure of Court Records, 2013 WL 5460051 (F.I.S.C. 2013).  The FISC swiftly resolved the matter, holding that FISC Rule 62 neither placed the 2011 FISC Opinion under seal nor "prohibited the Government from disclosing copies of the [Opinion] sought by EFF."  In re Motion for Consent to Disclosure of Court Records, 2013 WL 5460051, at *4 (F.I.S.C. 2013).  The FISC further held that a decision concerning the Opinion's disclosure was "appropriately addressed by the District Court in the FOIA litigation."  Id.  In light of the FISC's ruling, DOJ notified the Court on August 9, 2013, that it was "withdrawing its jurisdictional argument" based on FISC Rule 62.  Aug. 9, 2013, Status Report [Dkt. 15] at 2 n.1.

On June 6, 2013, six days prior to the FISC's order, the Guardian and Washington Post published classified details of the government's domestic surveillance programs that were leaked by a former NSA contractor, Edward Snowden.[8]  In response to "a firestorm of public commentary and enhanced scrutiny of our nation's surveillance practices," on June 20, 2013, President Obama ordered the Office of the Director of National Intelligence ("ODNI") to review and declassify all information that could immediately be disclosed to the public, and to engage in a "large-scale, multi-agency review process led by ODNI to determine what further information .

---

[8] See, e.g., Glenn Greenwald, NSA collecting phone records of millions of Verizon customers daily, The Guardian, (June 6, 2013, 6:05 AM), http://www.theguardian.com/world/2013/jun/06/nsa-phone-records-verizon-court-order; Barton Gellman & Laura Poitras, U.S., British intelligence mining data from nine U.S. Internet companies in broad secret program, Wash. Post (June 7, 2013), http://www.washingtonpost.com/investigations/us-intelligence-mining-data-from-nine-us-internet-companies-in-broad-secret-program/2013/06/06/3a0c0da8-cebf-11e2-8845-d970ccb04497_story.html.

. . could be declassified and released." Elec. Frontier Found. v. Dep't of Justice, 57 F. Supp. 3d 54, 57 (D.D.C. 2014) ("EFF v. DOJ"); Hudson Decl. ¶¶ 17–19.

Soon thereafter, DOJ requested an extension of the Court's April 24, 2013, stay (originally granted to permit EFF to seek relief from the FISC) until September 3, 2013, to allow the agency to "assess the impact of the government's recent declassification of information concerning intelligence collection." July 1, 2013, Jt. Status Report [Dkt. 14] at 9. EFF opposed any further delay and urged the Court to lift the stay. See id. at 3–9. Siding with EFF, this Court lifted the stay on July 9, 2013, and ordered that "by August 12, 2013, defendant must assess its position and make any additional disclosures it intends to make." July 9, 2013, Minute Order. On August 9, 2013, DOJ filed an unopposed motion for an extension of time, which the Court subsequently granted and ordered that "defendant . . . produce further information to plaintiff by August 21, 2013." Aug. 9, 2013, Minute Order.

On August 21, 2013, DOJ produced a redacted version of the 2011 FISC Opinion that disclosed over 87 percent of its contents (the "August 21, 2013 Disclosure"). Kim Decl. ¶ 9; Hudson Decl. ¶ 12. That same day, ODNI simultaneously authorized the declassification and publication of certain previously classified documents – including an identical copy of the redacted 2011 FISC Opinion provided to EFF. See Hudson Decl. ¶ 21. The following week, EFF notified DOJ that the only withholding still in contention was the remaining redacted information in the 2011 FISC Opinion. Ren. Def.'s MSJ at 9–10.

DOJ subsequently filed a renewed motion for summary judgment on September 4, 2013.[9] In its renewed motion, DOJ argued that the remaining redactions in the 2011 FISC Opinion were properly classified and, therefore, protected from disclosure under FOIA Exemptions 1 and 3.

_____

[9] At the same time, DOJ withdrew its original motion for summary judgment that it had filed on April 1, 2013. See Government's Notice of Withdrawal [Dkt. 17].

See id. at 12–27.  In its opposition to DOJ's motion, EFF asked the Court to reject the

presumption of good faith normally afforded to government declarations, order production of the

2011 FISC Opinion for in camera review, and instruct DOJ to immediately release any

improperly withheld information.  See Pl.'s MSJ at 13–23.  In its November 7, 2013 opposition

to EFF's motion for summary judgment, DOJ asked the Court to reject EFF's request for in

camera review.  Def.'s MSJ Opp. at 17–18.

Agreeing with EFF that in camera review would assist the Court in making "a responsible

de novo determination," this Court ordered DOJ to deliver the unredacted 2011 FISC Opinion to

the Court for inspection.  See Mar. 25, 2014, Minute Order.  On June 11, 2014, following in

camera review, the Court ordered DOJ to explain why twelve redactions in the Opinion were

justifiable on national security grounds.  See June 11, 2014, Minute Order.

In response to the Court's Order, on July 11, 2014, DOJ filed an ex parte submission with

the Court conceding that certain "inadvertently overlooked" information should not remain

redacted in the Opinion and providing explanations for the remaining redactions.  See Suppl.

Hudson Decl. ¶¶ 7–17.  Further, DOJ withdrew its withholding of the information referred to "in

questions 2, 3 . . . , 4, 5, 6, 7, 8, 9, 10, and 12 [of this Court's June 11, 2014, Minute Order] as

well as part of the information in question 11" (the "July 11, 2014 Disclosure").  EFF v. DOJ, 57

F. Supp. 3d at 59; see generally Suppl. Hudson Decl.  Following those disclosures, this Court

granted the government's renewed motion for summary judgment, denied the plaintiff's cross

motion for summary judgment, and upheld, pursuant to FOIA Exemption 1, the government's

remaining redactions in the 2011 FISC Opinion.  EFF v. DOJ, 57 F. Supp. 3d at 62.

On November 7, 2014, EFF filed its motion for attorney's fees and costs that is now

before the Court.  DOJ opposes EFF's motion, contending that plaintiff should not be awarded

attorney's fees because the government's disclosure of the 2011 FISC Opinion was not caused by EFF's litigation efforts, but by Edward Snowden's unauthorized leaks and the ODNI's subsequent declassification initiative. Fee Opp. at 2. In the alternative, DOJ argues that even if EFF were eligible and entitled to attorney's fees and costs, the amount of fees EFF seeks is excessive. Id. at 17. EFF's fee request is now ripe for disposition.

## II.       LEGAL STANDARDS

FOIA provides that a federal court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). An award of attorney's fees is thus discretionary and "not designed as a 'reward for any litigant who successfully forces the government to disclose information it wanted to withhold.'" Citizens for Responsibility & Ethics in Washington v. Dep't of Justice, 83 F. Supp. 3d 297, 302 (D.D.C. 2015) ("CREW") (emphasis in original) (quoting Nationwide Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 711 (D.C. Cir. 1977)). Rather, an award of fees and costs should advance the "more limited purpose of removing the incentive for administrative resistance to disclosure requests based, not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." Id.

To obtain attorney's fees under FOIA, the plaintiff must demonstrate both eligibility and entitlement to the award. Dorsen v. SEC, 15 F. Supp. 3d 112, 116 (D.D.C. 2014) (citing McKinley v. Fed. Hous. Fin. Agency, 739 F.3d 707, 710 (D.C. Cir. 2014)); see also Weisberg v. Dep't of Justice, 745 F.2d 1476, 1495 (D.C. Cir. 1984) ("[E]ligibility alone is not enough. . . . [T]he complainant must [also] show he or she is 'entitled' to an award."). A FOIA plaintiff is

eligible to receive reasonable attorney's fees and costs if it has "substantially prevailed" in the

matter before the court.  5 U.S.C. § 552(a)(4)(E).  Under the current statutory regime, a FOIA

plaintiff has "substantially prevailed" if it obtains relief through either "(1) a judicial order, or an

enforceable written agreement or consent decree," that changes the legal relationship between

the parties; or (2) through the catalyst theory,[10] i.e., "a voluntary or unilateral change in position

by the agency, if the complainant's claim is not insubstantial."  Id.; see also Brayton v. Off. of

U.S. Trade Rep., 641 F.3d 521, 525 (D.C. Cir. 2011).

Once the court finds that a FOIA requester has "substantially prevailed" and is therefore

eligible to receive attorney's fees, the court "proceeds to the entitlement prong and considers a

variety of factors to determine whether the plaintiff should receive fees."  Brayton, 641 F.3d at

524 (emphasis in original).  Under the entitlement prong, the D.C. Circuit has long applied a

non-exclusive, four-factor test, which considers:  "(1) the public benefit derived from the case;

(2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records;

and (4) the reasonableness of the agency's withholding."  McKinley, 739 F.3d at 711 (quoting

Tax Analysts v. Dep't of Justice, 965 F.2d 1092, 1093 (D.C. Cir. 1992)).  Evaluation of these

criteria is based solely on the district court's discretion, and no single factor is dispositive.  See

---

[10] For years, the "catalyst theory" was used by this Circuit to determine an attorney's eligibility for fees in FOIA cases.  See, e.g., Burka v. Health & Human Serv., 142 F.3d 1286, 1288 (D.C. Cir. 1998); Church of Scientology of Calif. v. Harris, 653 F.2d 584, 588 (D.C. Cir. 1981).  In 2001, the Supreme Court reversed course, holding that "the 'catalyst theory' is not a permissible basis for the award of attorney's fees."  Buckhannon, 532 U.S. at 610. Following Buckhannon, on December 31, 2007, Congress passed the OPEN Government Act of 2007, Pub. L. No. 110-175, § 4(a), 121 Stat. 2524, in part to reinstate the "catalyst theory" as a viable option for obtaining attorney's fees under FOIA.  See 5 U.S.C. § 552(a)(4)(E)(ii) (a plaintiff has "substantially prevailed if [he or she] has obtained relief through . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial"); see also Brayton v. Off. of U.S. Trade Rep., 641 F.3d 521, 525 (D.C. Cir. 2011) ("The purpose and effect of this law, which remains in effect today, was to change the 'eligibility' prong back to its pre-Buckhannon form.  The result is that plaintiffs can now qualify as 'substantially prevailing,' and thus become eligible for attorney fees without winning court-ordered relief on the merits of their FOIA claims.").  Thus, since December 31, 2007, the "catalyst theory" is a viable basis on which to seek attorney's fees in FOIA cases.

Judicial Watch, Inc. v. FBI, 522 F.3d 364, 371 (D.C. Cir. 2008); Tax Analysts, 965 F.2d at 1094;

Judicial Watch, Inc. v. Dep't of Justice, 878 F. Supp. 2d 225, 234 (D.D.C. 2012).

Finally, if the court finds that a party is both eligible and entitled to fees, the court must

calculate the correct fee award.  To do so, the court first establishes the "lodestar" amount – i.e.,

"the number of hours reasonably expended multiplied by a reasonable hourly rate."  Nat'l Ass'n

of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1323 (D.C. Cir. 1982); see also Bd. Of

Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc., 136 F.3d 794, 801 (D.C. Cir. 1998).

Thereafter, "the lodestar may be adjusted to reflect various other factors," Concerned Veterans,

675 F.2d at 1323, which are committed to the court's discretion.  Elec. Privacy Info. Ctr. v. Dep't

of Homeland Sec., 999 F. Supp. 2d 61, 67–68 (D.D.C. 2013) ("EPIC").

## III.      ANALYSIS

As demonstrated below, the undersigned finds that EFF has substantially prevailed in its

pursuit of this litigation and is entitled to an award of its counsel's reasonable fees and costs.

The Court finds, however, that EFF's fee demand of $74,763 is unreasonable.  For the reasons

explained below, the Court will instead order an award of $49,124.50 in attorney's fees and

$350.00 in costs, for a total amount of $49,474.50

### A.      EFF is Eligible for Attorney's Fees

The Court turns first to the threshold eligibility requirement for an award of fees.  DOJ

contends that EFF did not substantially prevail in this matter because the disclosures were not

caused by EFF's litigation, but instead by ODNI's declassification initiative following the

Snowden leaks.  Fee Opp. at 11.  EFF disagrees and asserts that it substantially prevailed for two

separate, but related, reasons:  (1) that it obtained relief through various judicial orders issued by

this Court and the FISC; and (2) that it prevailed under the "catalyst theory" because its efforts

were necessary to the release of the redacted 2011 FISC Opinion and were the necessary and sufficient cause of the disclosure of all reasonably segregable, non-exempt information from that Opinion.  Fee Mot. 6–8; Fee Reply at 9–12.  As detailed below, for the most part, this Court sides with EFF.

       1.  <u>EFF obtained relief through the July 9, 2013, and August 9, 2013, judicial orders</u>

A plaintiff may be considered a prevailing party after "receiv[ing] a judgment on the merits."  <u>Buckhannon</u>, 532 U.S. at 605; <u>see</u> <u>also</u> 5 U.S.C. § 552(a)(4)(E)(iii)(I) (defining "substantially prevailed" as having "obtained relief through . . . a judicial order, or an enforceable written agreement or consent decree").  Indeed, despite Congress' revitalization of the "catalyst theory" in the FOIA context, obtaining relief on the merits through a "judicial order" remains the primary means by which FOIA requesters become eligible for an award of fees.  <u>See</u>, <u>e.g.</u>, <u>Judicial Watch, Inc. v. Dep't of Justice</u>, 774 F. Supp. 2d 225, 228–29 (D.D.C. 2011).

Importantly, a judicial order that requires the production of responsive records, if any, by a certain date constitutes judicial relief that renders the FOIA plaintiff a "substantially prevailing" party.  <u>See id.</u>  "Once an order has been adopted by the court, <u>requiring the agency to release documents</u>, the legal relationship between the parties changes," and the plaintiff therefore becomes a "substantially prevailing party," eligible for attorney's fees.  <u>Campaign for Responsible Transplantation v. FDA</u>, 511 F.3d 187, 197 (D.C. Cir. 2007) ("<u>CRT v. FDA</u>") (emphasis in original).

Here, EFF argues that "[i]t is beyond dispute that [it] obtained relief through a judicial order."  Fee Mot. at 8.  To assess that contention, the Court will analyze the following orders in

this case to determine whether any provided plaintiff with judicial relief on the merits:  the June 12, 2013 FISC Order, and this Court's July 9, 2013, and August 9, 2013, Orders.

a.   June 12, 2013 FISC Order

On June 12, 2013, the FISC ruled that FISC Rule 62 does not preclude DOJ's release of FISC records, including the 2011 FISC Opinion, pursuant to a FOIA request.  See In re Motion for Consent to Disclosure of Court Records, 2013 WL 5460051, at *4 (F.I.S.C. 2013).  EFF now claims that ruling qualifies as a "judicial order" entitling it to an award of attorney's fees.  Fee Mot. at 8.  The Court disagrees.

To qualify as a "judicial order" eligible for an award of fees in the FOIA context, the court order must provide more than interim relief or relief antecedent to the dispute on the production of responsive records.  See Mobley v. Dep't of Homeland Sec., 908 F. Supp. 2d 42, 47–48 (D.D.C. 2012).  Rather, the court order must impose an obligation on the government to provide the relief plaintiff seeks in the FOIA litigation, i.e., responsive records, should any exist, by a date certain.  See Davy v. CIA, 456 F.3d 162, 165 (D.C. Cir. 2006) ("Davy I").  Anything short of that will not suffice.

The June 12, 2013, FISC Order is not such a "judicial order" because it did not direct the production of any of the documents EFF was seeking in this litigation.[11]  Though plaintiff's motion to the FISC sought, in part, the FISC's consent to the disclosure of the 2011 FISC Opinion, the FISC's decision only explained why the government's interpretation of FISC Rule 62 was incorrect.  See In re Motion for Consent to Disclosure of Court Records, 2013 WL 5460051, at *1, *4.  It expressed "no opinion on . . . whether the [2011 FISC] Opinion [was]

---

[11] The Court does find, however, that EFF's victory before the FISC provides a basis for an award of relief under the "catalyst theory," as discussed infra in Section III.A.2.  See Mobley, 908 F. Supp. 2d at 47–48 (finding that such interim relief renders the plaintiff "substantially prevailing," not pursuant to a judicial order, but pursuant to the more lenient catalyst theory).

ultimately subject to disclosure under FOIA." Id.  The FISC held, rather, that "[s]uch questions [were] appropriately addressed by the District Court in the FOIA litigation." Id.  Thus, while the FISC's ruling removed any impediment that its rules would have otherwise posed to the release of the 2011 FISC Opinion, or any segregable portion thereof, it did not go so far as to order the production of any part of the 2011 FISC Opinion.  Accordingly, because the FISC did not order any relief that EFF was seeking on the merits, that opinion does not constitute a "judicial order" eligible for an award of attorney's fees.  See Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy, 288 F.3d 452, 452 (D.C. Cir. 2002) ("OCAW").

### b.  July 9, 2013, and August 9, 2013, Minute Orders

In the immediate aftermath of the Snowden unauthorized disclosures, the parties filed a status report with the Court stating their views on how the litigation should proceed.  EFF requested that the Court immediately lift the stay that had been granted to permit it to obtain relief from the FISC and allow the case to proceed.  July 1, 2013, Status Report [Dkt. 14] at 3.  DOJ, on the other hand, requested that the stay continue until September 3, 2013, to provide the government with more time to "assess the impact of the . . . recent declassification of information . . . on . . . the underlying withholdings in this case." Id. at 9.  Upon considering the parties' status report, the Court issued the following order on July 9, 2013:

> [I]t is ORDERED that the stay on this action is lifted.  It is
> FURTHER ORDERED that by August 12, 2013, defendant must
> assess its position and make any additional disclosures it intends to
> make in light of the developments described in the July 1 status
> report.  It is FURTHER ORDERED that defendant shall file a
> notice with the Court on August 12, 2013, indicating whether any
> other materials were provided to the plaintiff in whole or in part. . .
> .

July 9, 2013, Minute Order.

On August 9, 2013, DOJ filed an unopposed motion for a nine-day extension to produce information responsive to plaintiff's FOIA request.  The Court subsequently issued an order on August 9, 2013, granting DOJ's request for an extension of time, and providing that "defendant shall produce further information to plaintiff by August 21, 2013."  Aug. 9, 2013, Minute Order (emphasis added).  On August 21, 2013, DOJ turned over 87.2% of the 2011 FISC Opinion to EFF as directed by the Court.  Kim Decl. ¶ 9.

DOJ contends that the 2011 FISC Opinion was released as a part of the "large scale, multi-agency review process" caused by the Snowden unauthorized disclosures and that "but for" those disclosures, the government "would have defended its original withholding [of the 2011 FISC Opinion] in full pursuant to [FOIA Exemptions 1 and 3]."  Fee Opp. at 2.  The question with respect to whether an order qualifies as a "judicial order" for purposes of an award of fees under FOIA, however, is whether the order imposes an obligation on the government to provide the plaintiff with responsive records.  The reason for the government's decision to release the records is irrelevant.  See Citizens for Responsibility & Ethics in Washington v. Dep't of Justice, 820 F. Supp. 2d 39, 44 (D.D.C. 2011) ("No matter who made the proposal ultimately adopted, the order changed the legal relationship between the parties, requiring Defendants to produce documents by [a certain date], or face sanctions[,] and providing Plaintiff with the relief it sought – the documents responsive to its requests.").  Because the July 9, 2013, and August 9, 2013, Orders required DOJ to disclose non-exempt and/or reasonably segregable information, if any, from the materials responsive to EFF's FOIA request, they were "judicial orders" providing EFF with relief on the merits that altered the legal relationship between the parties and thereby rendered EFF a "substantially prevailing" party.  See Judicial Watch, 774 F. Supp. 2d at 228–29.

Two cases before the D.C. Circuit – OCAW and Davy I – illustrate this point.   In OCAW, the plaintiff filed a FOIA action against the U.S. Department of Energy ("DOE"), seeking certain records.  288 F.3d at 453.  The district court ordered DOE to "complete its record review in 60 days."  Id. at 458.  DOE thereafter provided the plaintiff with responsive documents and the parties stipulated to dismissal of the suit.  Id. at 453.  The plaintiff's attorney subsequently sought attorney's fees, arguing that the plaintiff had "substantially prevailed."  Id. at 453–54.  The Court of Appeals disagreed, holding that the order requiring the agency to search its records did not constitute court-ordered relief on the merits because it merely directed DOE to conduct a search, and nothing more; the judicial order did not require DOE to also produce any responsive documents on a date certain pursuant to its search.  Id. at 458.  The Court stated, "[b]efore August 23 [the date of the district court's order at issue], the court had not ordered the [DOE] to turn over any documents; after August 23, the [DOE] still had no obligation to do so."  Id.

In Davy I, on the other hand, the parties entered into a joint stipulation establishing dates by which the Central Intelligence Agency ("CIA") would produce responsive documents to the plaintiff's FOIA request.  456 F.3d at 163–64.  The district court memorialized the joint stipulation in a judicial order which stated that the "CIA will provide Plaintiff all responsive documents, if any" by certain dates.  Id. at 164 (emphasis added).  In distinguishing the language of the Davy I judicial order from that of the judicial order in OCAW, the Court of Appeals explained:

> Here, before May 4, 2001 [the date of the order at issue], the CIA was not under any judicial direction to produce documents by specific dates; the May 4, 2001 order changed that by requiring the Agency to produce all "responsive documents" by the specified dates . . . .  [T]he May 4, 2001 order was a "judicially sanctioned change in the legal relationship of the parties" because . . . [o]nce

> the district court issued the order, Davy obtained an "enforceable judgment" on the merits of his complaint.  If the Agency failed to comply with the order, it faced the sanction of contempt.

Id. at 166 (citations omitted).

Here, the Court's July 9 and August 9, 2013, judicial orders are indistinguishable from the judicial order in Davy I.  Both orders required that the government review materials responsive to EFF's FOIA request and disclose any non-exempt and/or reasonably segregable material, if any,[12] by a date certain – ultimately, August 21, 2013.  Prior to these orders, DOJ was under no judicial direction to produce any responsive documents to plaintiff by a certain date.  Because these orders provided EFF with judicial relief on the merits and altered its legal relationship with the government, they rendered EFF a "substantially prevailing" party for purposes of an award of attorney's fees under FOIA.  See Davy I, 456 F.3d at 165; see also Judicial Watch, 522 F.3d at 369 ("As we have held time and time again, orders like these [requiring the government to turn over responsive documents, should they exist, by a date certain], even when voluntarily agreed to by the government, are sufficient to make plaintiffs eligible for attorneys' fees under FOIA.").

>     2.  EFF caused "a voluntary or unilateral change in position by the agency"

EFF also qualifies as a "prevailing party" under the "catalyst theory."  The gravamen of the inquiry under that theory is causation.  The FOIA requester must establish "that prosecution of the action could reasonably be regarded as necessary to obtain the information, and that a causal nexus exists between that action and the agency's surrender of the information."  Church

---

[12] Notably, like the Court's orders in this matter, the order found sufficient to qualify as a "judicial order" for purposes of an award of fees in Davy I did not go so far as to require that any documents be produced; rather, it only required that, if the government located responsive, non-exempt documents, it turn over these documents, or portions thereof, on a date certain.  Davy I, 456 F.3d at 164.

of Scientology, 653 F.2d at 588 (emphasis added) (internal quotation omitted).  While the "mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation," it is nonetheless a salient factor in the analysis.  Weisberg, 745 F.2d at 1496; Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec., 811 F. Supp. 2d 216, 232 ("EPIC"); accord Pub. Law. Educ. Inst. v. Dep't of Justice, 744 F.2d 181, 184 n.5 (D.C. Cir. 1984).  Ultimately, whether a party has made a sufficient showing of causation "is a factual determination that is within the province of the district court to resolve."  Church of Scientology, 653 F.2d at 588 (internal quotation omitted).

As discussed further below, the record demonstrates here that EFF's efforts in this matter were a necessary cause of DOJ's disclosures on August 21, 2013, and July 11, 2014.

a.  August 21, 2013 Disclosure

On August 21, 2013, the government disclosed a redacted version of the 2011 FISC Opinion, which was the principal document sought in EFF's FOIA request.  A necessary cause of that disclosure was EFF's successful challenge of the government's assertion that FISC Rule 62 barred the Opinion's disclosure.  According to DOJ, the Opinion could only be publicly released "upon the order of the FISC" pursuant to FISC Rule 62.  Def.'s MSJ at 6.  In DOJ's view, it had "no discretion in regard to [the] publication" of the Opinion because FISC Rule 62 "prohibit[ed] [its] public disclosure."  Id. at 2.  Further, the government was unwilling to make any effort on its own to seek the release of the Opinion from the FISC.  According to DOJ, it was "not obligated under FOIA to commence proceedings in the FISC to request the publication of orders responsive to FOIA requests."  Id. at 15 n.3.

Because DOJ would not, EFF sought a stay in this case, filed a motion in the FISC in aid of its complaint in this matter, and defeated the government's FISC Rule 62 argument.[13]  See In re Motion for Consent to Disclosure of Court Records, 2013 WL 5460051, 2013 WL 5460051, at *4 (F.I.S.C. 2013).  In so doing, EFF eliminated the primary basis the government initially asserted for withholding the 2011 FISC Opinion in full.  See Def.'s MSJ at 2, 11–15.  Eight days after the FISC's June 12, 2013, decision, the President ordered ODNI to engage in a "large-scale, multi-agency review process" to determine what further information could be declassified and released following the Snowden unauthorized disclosures, which began on June 6, 2013.  EFF v. DOJ, 57 F. Supp. 3d at 57; Hudson Decl. ¶¶ 17–19.  On August 21, 2013, the government disclosed the key document that EFF sought in its FOIA request – a redacted version of the 2011 FISC Opinion disclosing over 87% of its contents.  Kim Decl. ¶ 9; Hudson Decl. ¶ 12.

DOJ argues that EFF's successful efforts before the FISC should not be considered the cause of that release because the government asserted additional bases for withholding the Opinion – i.e., FOIA Exemptions 1 and 3.  But that argument misses the point.  While it is true that, in addition to FISC Rule 62, DOJ justified its withholding of the 2011 FISC Opinion based on those exemptions, the government exercised its discretion to waive both exemptions and declassify significant portions of the Opinion following the Snowden unauthorized disclosures. Kim Decl. ¶ 8; Hudson Decl. ¶ 12.  On those facts, EFF's elimination of FISC Rule 62 as a bar to the Opinion's disclosure – which the government claimed it had no discretion to waive and no desire to challenge – was just as much a necessary cause of the Opinion's disclosure as was the

---

[13] For its part, the government opposed EFF's motion before the FISC, arguing that the FISC did not have jurisdiction to adjudicate plaintiff's request and that the 2011 FISC Opinion should remain "sealed" pursuant to FISC Rule 62.  Gov.'s Opp. Br. at 4, In re Motion for Consent to Disclosure of Court Records, 2013 WL 5460051 (F.I.S.C. 2013).

government's decision to declassify portions of the Opinion following the Snowden leaks.[14]

Stated another way, had both not occurred, the Opinion would not have been disclosed.[15]

Because of EFF's efforts, both did occur and EFF received a significantly less redacted version

of the Opinion on August 21, 2013.  The "catalyst theory" requires nothing more.  See Church of

Scientology, 653 F.2d at 588.

      Further, FOIA requires that "[a]ny reasonably segregable portion of a record be provided

to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C.

§ 552(b).  The government asserted FISC Rule 62 as the basis for its inability to reasonably

segregate non-exempt information from the FISC Opinion prior to the Snowden disclosures.  See

Def.'s MSJ at 26 ("Unlike in the typical FOIA case, the Department does not have the discretion

to produce any of the responsive FISC orders to Plaintiff. . . .  Thus, [the 2011 FISC Opinion]

cannot be reasonably segregated, and [its] withholding in full should be upheld."); SOMF ¶ 16

("[The 2011 FISC Opinion] could not be segregated and released by the Department because of

the FISC-imposed restrictions on their public release."); Bradley Decl. ¶ 11 ("For the [2011

FISC Opinion] I determined that no portion of [it] could be properly segregated and released due

to the FISC's rules pertaining to the release of its orders.").  EFF's elimination of the FISC Rule

62 argument effectively caused the government's release of all reasonably segregable, non-

exempt information from the Opinion.  Because of the government's declassification of

---

[14] Indeed, in its opposition to EFF's FISC Rule 62 challenge before the FISC, the government presaged the significant role that EFF's victory would have in the release of the Opinion: "[i]f this Court grants [EFF] the relief sought, the consequence would be that the Government could release the opinion or any portion of it in its discretion . . . ."  Gov.'s Opp. Br. at 7, In re Motion for Consent to Disclosure of Court Records, 2013 WL 5460051 (F.I.S.C. 2013).

[15] While one could hypothesize that had EFF not sought relief in the FISC, the government may have sought such relief itself – and presumably the FISC would have granted that relief – that is not what actually happened.  Such hypotheticals cannot erase what EFF in fact did to bring about the release of the Opinion.

information concerning its 702 coverage at Senator Wyden's request, the government would have been obligated to release some information from the 2011 FISC Opinion even absent any further declassification of information in the Opinion resulting from the Snowden disclosures and even assuming the government's other bases for withholding information in the Opinion were well-taken.  This is because when "information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim." Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990).  Specifically, in the instant action, after the FISC Rule 62 bar had been lifted, the government would have been obligated to release from the Opinion all legal analysis that "matched"[16] the information that had been officially declassified in response to Senator Wyden's request, i.e., that "the government's implementation of Section 702 ha[d] sometimes circumvented the spirit of the law," and that "on at least one occasion, the [FISC] held that some collection carried out pursuant to Section 702 minimization procedures used by the government was unreasonable under the Fourth Amendment."  Compl. ¶ 10; see also Leopold v. Dep't of Justice, Civ. No. 14-168, 2015 WL 5297254, at *12 (D.D.C. Aug. 12, 2015) (finding that certain legal analysis within classified DOJ White Paper should be disclosed because it "does not in any way reference or pertain to any classified information" or because it "contain[ed] similar legal analysis . . . [previously] disclosed to the Plaintiff"); New York Times Co. v. Dep't of Justice, 756 F.3d 100, 119 (2d Cir. 2014) ("With the redactions and public disclosures discussed above, it is no longer either 'logical' or 'plausible' to maintain that disclosure of the legal analysis . . . risks disclosing any aspect of 'military plans, intelligence activities, sources and methods, and foreign relations.'").  With the benefit of having reviewed

---

[16] The D.C. Circuit applies a three-part test for whether information has been "officially acknowledged": "(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure."  ACLU v. Dep't of Def., 628 F.3d 612, 620–21 (D.C. Cir. 2011).

the unredacted 2011 FISC Opinion following the Snowden disclosures, it is apparent that such

reasonably segregable information from the Opinion would have included at least the following

statements from the Opinion:

- The final question for the Court is whether the [REDACTED] minimization procedures are, as applied to [REDACTED], consistent with the Fourth Amendment.  See 50 U.S.C. § 1881a(i)(3)(A)–(B).  The Fourth Amendment provides:

  > The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

- The Court is . . . unable to find that [REDACTED] minimization procedures, as the government proposes to implement them in connection with [REDACTED] are consistent with the Fourth Amendment.

- By expanding its Section 702 acquisitions to include [REDACTED] has, as a practical matter, circumvented the spirit of Section [REDACTED] with regard to that collection.

- The question therefore becomes whether, taking into account [REDACTED] minimization procedures are reasonable under the Fourth Amendment.

- Under the totality of the circumstances, then, the Court is unable to find that the government's proposed application of [REDACTED] minimization procedures to [REDACTED] is consistent with the requirements of the Fourth Amendment.

Redacted, 2011 WL 10945618, at *9, *16, *23–24, *28 (F.I.S.C. 2011).  None of these

statements are "unintelligible sentences composed of isolated, meaningless words."  Judicial

Watch, Inc. v. Dep't of Treasury, 796 F. Supp. 2d 13, 29 (D.D.C. 2011) (internal quotation

omitted).  Nor are any of them "inextricably intertwined with exempt portions" as the above

redactions demonstrate.  Mead Data Cent., Inc. v. Dep't of Air Force, 566 F.2d 242, 260 (D.C.

Cir. 1977).

b.   July 11, 2014 Disclosure

EFF's efforts in this case were also the catalyst for the government's July 11, 2014,

disclosures of previously-redacted material from the 2011 FISC Opinion.  Those disclosures

were the direct result of EFF's successful request (over the government's objection) that the

Court conduct an in camera review of an unredacted version of the Opinion.  Pl.'s MSJ at 2;

Def.'s MSJ Opp. at 2–3.  Following in camera review, on June 11, 2014, the Court ordered DOJ

to provide further information explaining the basis for the government's classification of 12

redactions in the Opinion.  June 11, 2014, Minute Order.

Rather than defend its withholdings, on or about July 11, 2014, DOJ unredacted

information related to at least 8 of the 12 redactions[17] that were the focus of the Court's June 11,

2014, Order.  Suppl. Hudson Decl. ¶¶ 16, 17, 18, 20, 21–22, 24, 25–26, 31, 34, 36, 39.  The

disclosures included:  references to the CIA's and FBI's involvement in the Section 702

collection program, details on the CIA's amended minimization procedures, references to the

FBI's "Standard Minimization Procedures," and the operational relationship between FBI

targeting procedures and NSA targeting procedures.  Id. ¶¶ 17, 18, 21, 23, 25–26.  DOJ claimed

that much of this disclosed material was "inadvertently overlooked" during the ODNI's ongoing

declassification initiative and that the redactions were "mistakenly applied."  Fee Opp. at 13;

Suppl. Hudson Decl. ¶¶ 17, 18, 20, 26.  For that reason, DOJ argues that the disclosures were not

---

[17] This Court's July 18, 2014, Memorandum Opinion states that the government withdrew its withholding of information in response to 10 of the 12 questions in the Court's June 11, 2014, Minute Order.  See EFF v. DOJ, 57 F. Supp. 3d at 59.  The Hudson declaration, on the other hand, indicates that the government released information in response to 8 of the Court's 12 questions.  The precise number of questions which resulted in the government making further disclosures of previously-redacted material is not relevant to the undersigned's analysis.  Suffice it to say that the government did in fact disclose additional material from the 2011 FISC Opinion as a result of the in camera review that the Court granted at EFF's request.

prompted by EFF's pursuit of this litigation, but instead by the "ongoing declassification decisions directed by the President that inured to the Plaintiff's benefit." Fee Opp. at 13.

The Court disagrees.  Plainly, EFF's successful request for in camera review caused the government's July 11, 2014, disclosures.  That request led the Court to question DOJ about 12 suspect redactions in the 2011 FISC Opinion.  In response to that probing, the government agreed that there was no basis for the continued withholding at least 8 of the 12 redactions in question and lifted those redactions.  The government's assertion that the redactions were the result of a "mistake" is irrelevant to the causation analysis.  But for EFF's efforts challenging the government's redactions in this litigation, there is no reason to believe that those redactions would have ever been lifted.  See Church of Scientology, 653 F.2d at 588 ("[T]he critical point [is that] but for the institution and prosecution of this suit, the documents ultimately obtained by [the FOIA requester] would never have been identified and therefore would never have been released.").  Stated another way, without the "light of litigation" to expose the "inadvertently overlooked" material, it is "more probable than not that the government would not have performed the desired act," i.e., lifted the redacted material on July 11, 2014.  Conservation Force v. Salazar, 916 F. Supp. 2d 15, 19–20 (D.D.C. 2013) (internal quotation omitted).

For all of the aforementioned reasons, EFF is a substantially prevailing party and, therefore, eligible for attorney's fees and costs.  The Court will analyze next its entitlement to a fee award.

## B.      EFF is Entitled to Attorney's Fees

There are four factors a district court normally considers when evaluating a prevailing party's entitlement to attorney's fees:  (1) the "public benefit" factor; (2) the "commercial benefit" factor; (3) the "plaintiff's interest" factor; and (4) the "reasonableness" factor.  See Tax

Analysts, 965 F.2d at 1093.  The second and third factors "are closely related and often considered together."  Id. at 1095.  "The sifting of those criteria over the facts of a case is a matter of district court discretion."  Id. at 1094.  The Court will consider each factor in turn.

     1.  "Public benefit" factor

In weighing the "public benefit" factor, district courts typically inquire as to whether "the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices."  Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (citing Fenster v. Brown, 617 F.2d 740, 744 (D.C. Cir. 1979)).  DOJ contends that the public benefit factor weighs against an award of attorney's fees in this matter because "the government was engaged in a large-scale, multi-agency review process led by the [ODNI]" that would have resulted in the release of the 2011 FISC Opinion irrespective of EFF's litigation efforts.  Fee Opp. at 14 n.2 .  This is largely a rehash of the government's eligibility argument, which the Court rejects.  EFF's efforts in this case ensured that the Opinion would in fact be disclosed to the public, that it would be disclosed on a schedule set by the Court, not the government, and that every reasonably-segregable, non-exempt portion of the Opinion would be released.  See supra Sections III.A.1. and III.A.2.

The government does not dispute that disclosure of the 2011 FISC Opinion contributed "to the fund of information that citizens may use in making vital political choices."  Cotton, 63 F.3d at 1120.  Nor could it.  Portions of the 2011 FISC Opinion were published by "a wide range of media outlets, including the New York Times, Washington Post, Los Angeles Times, Guardian, and other news organizations throughout the world."  Fee Mot. at 6, 9.  Moreover, in a public statement issued on the day of the Opinion's release, Senator Ron Wyden noted that the disclosure was "an important addition to the public discussion being held on government

surveillance authorities." Id. at 6 (quoting Wyden Statement on Declassification of FISA Court Ruling on 4th Amendment Violations, August 21, 2013). Disclosure of the 2011 FISC Opinion thus had a significant impact on the public discussion of the NSA's surveillance programs, which is still ongoing. Thus, the first entitlement factor is satisfied.

### 2. "Commercial benefit" and "plaintiff's interest" factors

The "commercial benefit" and "plaintiff's interest" factors are often considered together to assess whether a plaintiff has "'sufficient incentive to seek disclosure' without attorney's fees." Davy v. CIA, 550 F.3d 1155, 1160 (D.C. Cir. 2008) ("Davy II") (quoting Tax Analysts, 965 F.2d at 1095). DOJ effectively concedes that these factors favor plaintiff. See Fee Opp. at 14 n.2 ("The Department . . . acknowledges that the Court is likely to find that [the commercial benefit and plaintiff's interest factors] favor Plaintiff."). DOJ's concession is well-taken. EFF is "a donor-supported membership organization that works to inform policymakers and the general public about civil liberties issues related to technology and to act as a defender of those liberties." Compl. ¶ 3. This Court has no reason to doubt that EFF "sought the documents at issue expressly for public dissemination on an issue of public importance" rather than for some commercial purpose. Fee Mot. at 10. The second and third entitlement factors are satisfied here.

### 3. "Reasonableness" factor

The final entitlement factor considers whether the agency's opposition to disclosure "had a reasonable basis in law," or whether the agency has been "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." Tax Analysts, 965 F.2d at 1096; McKinley, 739 F.3d at 712; Davy II, 550 F.3d at 1162. If the government's basis for withholding the information at issue was correct as a matter of law, that will be dispositive, and the plaintiff will not be entitled to attorney's fees. Chesapeake Bay Found. v. Dep't of Agric., 11

F.3d 211, 216 (D.C. Cir. 1993).  If, however, the government's position is "founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus."  Id.  Thus, the question is "not whether [the plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit."  Davy II, 550 F.3d at 1163.  The burden to prove "reasonableness" thus falls squarely on the government.

The Court finds that the government's assertion of FISC Rule 62 as a bar to disclosure of the 2011 FISC Opinion lacked a reasonable basis in the law.  DOJ argued in its initial motion for summary judgment that this rule robbed the government of any discretion (and this Court of any power) to disclose the Opinion under FOIA.  Def.'s MSJ at 2, 6, 12 ("[T]he order can[not] be released publicly except upon the order of the FISC.").  But in 2007, when the American Civil Liberties Union ("ACLU") directly petitioned the FISC for release of certain of its orders, the government objected to their disclosure by arguing the opposite of what it asserted here.  See generally In re Motion for Release of Court Records, 526 F. Supp. 2d 484 (F.I.S.C. 2007).  To avoid production of FISC records in that case, the government asserted that "[t]he FOIA process . . . [was] the proper means for the ACLU to seek records of [the FISC's] proceedings from the Executive Branch."  Fee Reply at 9 n.3 (quoting Gov.'s Opp. Br. at 5, In re Motion for Release of Court Records, 526 F. Supp. 2d at 497 (F.I.S.C. 2007)).  And the FISC agreed, thereby denying the ACLU's request for relief.  See In re Motion for Release of Court Records, 526 F. Supp. 2d 484, 497 (F.I.S.C. 2007).  According to the FISC in 2007, there was "no role for [the FISC] independently to review" the orders and "potentially override, Executive Branch classification decisions."  Id. at 491.  It clarified, however, that "nothing in [its] decision

foreclose[d] the ACLU from pursuing whatever remedies may be available to it in a district court through a FOIA request addressed to the Executive Branch."  Id. at 497.

Five years later, when EFF filed such a FOIA complaint with this Court seeking the disclosure of the 2011 FISC Opinion, the government changed course.  Maneuvering again to block disclosure, DOJ represented unequivocally to this Court that it was without power under FOIA to compel the production of the Opinion because the "FISC Rules of Procedure . . . prohibited [the Department] from disclosing [it] publicly."  Def.'s MSJ at 15.  The government's position compelled EFF to stay this case and seek relief from the FISC, which the FISC promptly[18] granted in part, citing to its 2007 decision and noting (as it did in 2007) that a decision concerning the Opinion's disclosure is "appropriately addressed by the District Court in the FOIA litigation."  In re Motion for Consent to Disclosure of Court Records, 2013 WL 5460051, at *4.

The government's shifting positions with respect to the disclosure of FISC records were recently addressed by the United States District Court for the Southern District of New York. See ACLU v. FBI, 59 F. Supp. 3d 584, 590–91 (S.D.N.Y. 2014).  In that case, the ACLU sought records, including FISC orders, under FOIA relating to the government's use of Section 215 of the USA PATRIOT Act.  Id. at 586.  As it did here, DOJ defended its withholding of the FISC records by arguing that "the rules and procedures of the FISC restrict the Government from disclosing [them]."  Id. at 590.  In finding that there was sufficient evidence of bad faith by the government to justify in camera review of the withheld materials in that case, the court relied in part on the contradiction between the government's position in 2012 concerning the impact of

---

[18] The FISC issued its decision on June 12, 2013 – 20 days after EFF filed its motion and only 5 days after the government filed its opposition.

the FISC's procedural rules on disclosure and "the position the Government took in the [2007]

proceeding before the FISC":

> Having argued successfully in 2007 that FOIA was the proper
> vehicle to seek release of FISC documents, the Government
> appears to have been dissembling in 2012 when it argued "the
> rules and procedures of the FISC restrict the Government from
> disclosing FISC records.". . . [T]he Government's arguments
> bear the hallmarks of opportunistic rummaging rather than a
> coherent strategy. . . . [B]y advancing incorrect and
> inconsistent arguments, the Government acted without the
> candor this Court expects from it.

Id. at 590–91.

Like in ACLU v. FBI, the government's assertion of FISC Rule 62 to block any

disclosure from the 2011 FISC Opinion had no reasonable basis in law following the FISC's

2007 decision and the position the government asserted in that case.  In choosing to make that

argument, the government denied EFF, at the very least, the reasonably segregable portions of

the 2011 FISC Opinion.  See supra Section III.A.2.a.  It is only fair that the government now

compensate EFF for that choice.  See Tax Analysts, 965 F.2d at 1096 (fee applicant satisfies

reasonable-basis-in-law factor where the government has been "recalcitrant in its opposition to a

valid claim or otherwise engaged in obdurate behavior").[19]

Because all four entitlement factors weigh in EFF's favor, this Court will award EFF its

reasonable attorney's fees.

_____

[19] Even were the Court to conclude that there was a reasonable basis for the withholding of the 2011 FISC Opinion
in its entirety, under the circumstances of this case and the enormous public interest in the information disclosed, an
award would still be appropriate.  See, e.g., ACLU v. Dep't of Homeland Sec., 810 F. Supp. 2d 267, 277 (D.D.C.
2011) ("Considering the immense public benefit derived from the disclosure of [the] information . . ., and the
plaintiff's total lack of any commercial benefit acquired from the disclosure, . . . even if the 'reasonable basis in law'
factor weighs in favor of the defendant, the other factors nonetheless weight in favor of the plaintiff being 'entitled'
to an award of attorney's fees.").

### C.      EFF's Fee Award Will Be Reduced in the Court's Discretion

Having found that plaintiff is both eligible for and entitled to compensation for its

counsel's fees expended in this matter, the Court will next determine the amount of fees to be

awarded.  FOIA directs that a Court award a substantially prevailing plaintiff his or her

"reasonable attorney's fees and other litigation costs reasonably incurred. . . ."  5 U.S.C. §

552(a)(4)(E)(i).  The usual method of calculating a reasonable fee amount is to "multiply the

hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar'

amount."  JPR, Inc., 136 F.3d at 801.  Here, the parties dispute both components of the lodestar

equation – the hourly rates and the hours expended by plaintiff's counsel in this litigation.  The

Court will consider the parties' arguments on each issue in turn.

### 1.   Reasonable Rate

A reasonable hourly fee is determined by analyzing three elements: (1) the "attorney['s]

billing practices," (2) "the attorney['s] skill, experience, and reputation," and (3) "the prevailing

market rates in the relevant community."  Covington v. Dist. of Columbia, 57 F.3d 1101, 1107

(D.C. Cir. 1995).  Here, the parties disagree on the third element – the prevailing market rates in

the relevant community.[20]  See Fee Opp. at 24–26; Fee Reply at 16–17.  The Court of Appeals

has recently addressed the hourly-rate element in Eley v. District of Columbia, 793 F.3d 97 (D.C.

Cir. 2015).  There, the D.C. Circuit, while acknowledging that determining a prevailing market

---

[20] Non-profit attorneys – such as EFF's attorneys – are entitled to receive the same prevailing market rate as prevailing private counsel in equally complex federal litigation.  See Blum v. Stenson, 465 U.S. 886, 894 (1994) ("Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization"); Save Our Cumberland Mountain, Inc. v. Hodel, 847 F.2d 1516, 1524 (D.C. Cir. 1988) ("SOCM").

rate is "inherently difficult," nevertheless emphasized the "importance of fixing the prevailing

hourly rate in each case with a fair degree of accuracy." Eley, 793 F.3d at 100 (internal

quotations omitted).  To meet its burden with respect to the third element, a fee applicant must

"'produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested

rates are in line with those prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience and reputation.'" Id. (quoting Blum v. Stenson, 465

U.S. 886, 895 n.11 (1984)).

One such type of additional evidence permitted in this Circuit is attorney's fee matrices

such as the Laffey Matrix prepared by the Civil Division of the United States Attorney's Office

for the District of Columbia ("USAO Laffey Matrix").[21] Id.; Rooths v. Dist. of Columbia, 802 F.

Supp. 2d 56, 61–62 (D.D.C. 2011).  It was created to demonstrate the "prevailing rates in the

community for lawyers of comparable skill, expertise and reputation in complex federal

litigation." Laffey v. Nw. Airlines, Inc., 572 F. Supp. 354, 371–72 (D.D.C. 1984), aff'd, 746

---

[21] The USAO Laffey Matrix establishes the following schedule for lawyers practicing complex federal litigation from June 2012 to May 2013, and from June 2013 to May 2014, respectively:

**USAO Laffey Matrix**

| Year | 06/01/2012–05/31/2013 | 06/01/2013–05/31/2014 |
|------|------------------------|------------------------|
| Experience | Fees | |
| 20+ years | $505 | $510 |
| 11–19 years | $445 | $450 |
| 8–10 years | $355 | $360 |
| 4–7 years | $290 | $295 |
| 1–3 years | $245 | $250 |
| Paralegals & Law Clerks | $145 | $145 |

USAO Laffey Matrix, available at http://www.justice.gov/sites/default/files/usaoc/legacy/2013/09/09/
Laffey_Matrix%202014.pdf.

F.2d 4 (D.C. Cir. 1988), overruled in part on other grounds by SOCM, 857 F.2d at 1525.  The

original Laffey Matrix is now more than thirty years old and must be updated to account for

inflation.  See Eley, 793 F.3d at 101.  Competing Laffey Matrices have developed because

litigants disagree as to whether the Laffey rates should be adjusted for inflation by using the

Consumer Price Index for All Urban Consumers of the United States Bureau of Labor Statistics

(as is done in the USAO Laffey Matrix) or by using the Legal Services Index of the Bureau of

Labor Statistics (as is done in the Legal Services Index or "LSI" Matrix).  Id.  For attorneys with

20 or more years of experience, the LSI Matrix sets an hourly rate that is more than $200 higher

than that set in the USAO Laffey Matrix.[22]  Courts in this Circuit have compared the relative

merits and imprecisions of the competing matrices and ended up on both sides of the debate.[23]

    But while fee matrices can "provide a useful starting point" in calculating the prevailing

market rate, see Covington, 57 F.3d at 1109, the D.C. Circuit in Eley cautioned against uncritical

reliance on fee matrices, holding that to accord such rates presumptive reasonableness is to

"fli[p] the burden of persuasion on its head."  Eley, 793 F.3d at 105.  As Eley confirms, a fee

---

[22] The LSI Matrix establishes the following schedule for lawyers practicing complex federal litigation from June 2012 to May 2013, and from June 2013 to May 2014, respectively:

**LSI Matrix**

| Year | 06/01/2012–05/31/2013 | 06/01/2013–05/31/2014 |
|---|---|---|
| Experience | Fees | |
| 20+ years | $753 | $771 |
| 11–19 years | $625 | $640 |
| 8–10 years | $554 | $567 |
| 4–7 years | $383 | $393 |
| 1–3 years | $312 | $320 |
| Paralegals & Law Clerks | $170 | $175 |

LSI Matrix, available at http://www.laffeymatrix.com/history.html.

[23] Compare Citizens for Responsibility & Ethics in Washington v. Dep't of Justice, Civ. No. 11-3374, 2015 WL 545991, at *2 (D.D.C. Feb. 11, 2015) (adopting the LSI Matrix); and Eley v. Dist. of Columbia, 999 F. Supp. 2d 137, 150–156 (D.D.C. 2013), vacated and remanded, 793 F.3d 97 (D.C. Cir. 2015) (same); with Hall v. CIA, Civ. No. 04-814, 2015 WL 4335364, at *6 (D.D.C. July 14, 2015) (adopting the USAO Laffey Matrix); and EPIC, 72 F. Supp. 3d at 349 (same).

applicant does not meet its burden on the hourly-rate element merely by submitting the USAO

<u>Laffey</u> Matrix or the LSI Matrix with a fee application.  Rather, the applicant is obliged to

demonstrate that the suggested rates in the matrix are "in line with those prevailing in the

community for <u>similar</u> <u>services</u>"[24] to those at issue in the litigation.  <u>Eley</u>, 793 F.3d at 104

(emphasis in original); <u>Concerned Veterans</u>, 675 F.2d at 1325 ("'An applicant is required to

provide <u>specific</u> evidence of the prevailing community rate for the type of work for which he

seeks an award.'") (emphasis in original); <u>see</u> <u>also</u> <u>Role Models Am., Inc. v. Brownlee</u>, 353 F.3d

962, 970 (D.C. Cir. 2004).  Stated another way, fee applicants "are entitled to the <u>Laffey</u> rate

only if they can establish that the relevant legal market [at issue] in [the] action . . . is subject to

the same hourly rates that prevail in complex federal litigation" as represented in the matrix.

<u>Eley</u>, 793 F.3d at 105, n.6 (quoting <u>Price v. Dist. of Columbia</u>, Civ. Nos. 14–7133, 14–7138,

2015 WL 3916444, at *4 (D.C. Cir. June 26, 2015).  "Absent such a finding, <u>Laffey</u> Matrix rates

are irrelevant to the prevailing-rate determination."  <u>Id.</u>

 A fee applicant can make the required showing by supplementing fee matrices with other

evidence such as "surveys to update the[m]; affidavits reciting the precise fees that attorneys

with similar qualifications have received from fee-paying clients in comparable cases; and

evidence of recent fees awarded by the courts or through settlement to attorneys with comparable

qualifications handling similar cases."  <u>Id.</u> at 101 (quoting <u>Covington</u>, 57 F.3d at 1109); <u>see</u> <u>also</u>

<u>id.</u> at 104, n.5 ("Evidence of the prevailing market rate can take many forms.").  "[P]owerfully

persuasive," according to the Court of Appeals, would be "[a] statistically reliable, well-

documented, and extensive survey of the rates clients pay for [the] certain sub-market of legal

---

[24] EFF's assertion that this requirement in <u>Eley</u> was restricted to IDEA's fee shifting provision is unavailing.  Suppl. Fee Br. at 1–2.  In fact, the D.C. Circuit expressly relied on legal principles and case law that govern awards in all fee-shifting cases.  See <u>Eley</u>, 793 F. 3d at 100, n.2 ("We apply the respective analysis from <u>Blum</u> and <u>SOCM</u> notwithstanding both cases involved different attorney's fees statutes.") (internal citation omitted)).

services" at issue in the case.  Id. at 104, n.5.  Should the fee applicant fail to provide in its

submission "evidence that [its] 'requested rates are in line with those prevailing in the

community for similar services," – i.e., the sub-market at issue – the fee applicant will not have

met its burden.  Eley, 793 F.3d at 105 (citing Covington, 57 F.3d at 1109 (Henderson, J.,

dissenting); Blum, 465 U.S. at 895) (internal quotation omitted); id. at 104–5, n.5 & n.6.

In the instant action, the parties dispute which matrix should be used as a basis to

determine a reasonable hourly rate for EFF's counsel.  DOJ argues that the Court should adopt

the USAO Laffey Matrix rates.  Fee Opp. at 24.  EFF contends that it should be awarded fees

based on LSI Matrix rates.  Fee Mot. at 14–15.  Use of LSI rates would equate to hourly rates of

$773 and $771 for one of EFF's attorneys, Mr. Sobel, and $312 and $320 per hour for its other

attorney, Mr. Rumold.  Id.  But again, a fee applicant does not meet its burden on the hourly-rate

element merely by submitting the LSI Matrix (or the USAO Laffey Matrix) with a fee

application.  Rather, the applicant must demonstrate that the rates set in the matrix are "in line

with those prevailing in the community for similar services," or the legal "sub-market" at issue.

Eley, 793 F.3d at 104 (emphasis in original); id. at 104, n.5.  Here, EFF has failed to meet that

burden; that is, it has failed to demonstrate that the rates reflected in the LSI Matrix are those

prevailing in FOIA litigation in the Washington, D.C. legal market.

Indeed, in its initial fee petition, EFF provided no evidence concerning the prevailing

market rates for FOIA litigation.  It submitted only (1) the declarations of its counsel attesting to

the number of hours spent on the litigation, and (2) the declaration of Dr. Michael Kavanaugh,

originally submitted in another case, explaining the LSI Matrix.  See Mot. Ex. A, B, D; see

generally Sobel Decl.; see generally Rumold Decl.  Absent from EFF's original submission was

any evidence that its "requested rates are in line with those prevailing in the community for

similar services," here, FOIA litigation.  Eley, 793 F.3d at 104 (quoting Covington, 57 F.3d at

1107, 1109).  Indeed, EFF's initial evidentiary submission effectively mirrored the plaintiff's

inadequate evidentiary submission in Eley which also consisted of the LSI Matrix, Dr.

Kavanaugh's declaration, and "her lawyer's verified statement averring that he charged paying

clients the rates in the [LSI] Matrix."  Eley, 793 F.3d at 104.

The materials submitted by EFF with its supplemental filing fare no better.[25]  EFF's

second submission consisted of:  (1) the declaration of David K. Colapinto, a partner at a

Washington, D.C., public interest law firm focusing on whistleblower advocacy and employment

law; (2) an eight-year-old declaration of Steven K. Davidson, a partner at a large D.C. law firm,

attesting to general market rates in 2007; and (3) a "Real Rates Report 2014" listing the median

hourly fees billed for litigation partners in the District of Columbia.  See Suppl. Fee Br. Ex. A, B,

C.  Neither Mr. Davidson's declaration nor the Real Rates Report provide any information

relevant to establishing prevailing market rates for FOIA litigation in the District of Columbia

legal market.  While Mr. Calapinto's declaration mentions FOIA litigation, his assertion that it

constitutes "complex federal litigation" is unsubstantiated and entirely conclusory.  Colapinto

Decl. ¶ 16.  Conspicuously absent from his declaration is any averment that he has received his

firm's full hourly rates (up to $995 per hour) in FOIA cases.  See id.  ¶¶ 10, 12, 16.  Indeed, he

attests that all of his FOIA cases have settled, "so the fee issued was not litigated."  Id. ¶ 16.

On this record, EFF has not met its burden of justifying the reasonableness of the LSI

Matrix rates it seeks.  Nevertheless, the Court will permit EFF to be compensated at USAO

Laffey rates.  It does so because the government has conceded that, if EFF is awarded attorney's

---

[25] On September 3, 2015, this Court permitted the parties to file supplemental briefs addressing the impact of Eley on EFF's request for attorney's fees.  See Sept. 3, 2015, Minute Order.

fees in this matter, they should be based on the USAO <u>Laffey</u> Matrix.  Fee Opp. at 24; see also .

Further, doing so would be consistent with <u>Eley</u>, which held that the hourly rates plaintiffs have

obtained in recent similar cases is, in fact, persuasive evidence that those rates are the prevailing

rates for those types of cases.[26]  <u>Eley</u>, 793 F.3d at 104; <u>see also id.</u> at 101 (prevailing rates can be

demonstrated by, <u>inter alia</u>, "'evidence of recent fees awarded by the courts or through settlement

to attorneys with comparable qualifications handling similar cases'") (quoting <u>Covington</u>, 57

F.3d at 1109); <u>see also</u> <u>Concerned Veterans</u>, 675 F.2d at 1325 ("Recent fees awarded by the

courts or through settlement to attorneys of comparable reputation and experience performing

similar work are . . . useful guides in setting an appropriate rate.").  The weight of recent case

authority in this Circuit has awarded USAO <u>Laffey</u> rates to successful FOIA plaintiffs.  <u>See Elec.</u>

<u>Privacy Info. Ctr. v. FBI</u>, 72 F. Supp. 3d 338, 349–50 (D.D.C. 2014) (awarding attorney's fees in

a FOIA case based on the USAO Laffey Matrix) ("<u>EPIC</u>"); <u>Citizens for Responsibility & Ethics</u>

<u>in Washington v. Fed. Election Comm'n</u>, 66 F. Supp. 3d 134, 148 (D.D.C. 2014) (same); <u>EPIC</u>,

999 F. Supp. 2d 61, 71–72 (2013) (same); <u>Citizens for Responsibility & Ethics in Washington v.</u>

<u>Dep't of Justice</u>, 825 F. Supp. 2d 226, 229 (D.D.C. 2011) (same); <u>EPIC</u>, 811 F. Supp. 2d 216,

236   (2011) (same); <u>Judicial Watch v. DOJ</u>, 774 F. Supp. 2d 225, 232 (D.D.C. 2011) (same);

<u>Queen Anne's Conservation Ass'n v. Dep't of State</u>, 800 F. Supp. 2d 195, 200–01 (D.D.C. 2011)

---

[26] The undersigned recognizes that basing the prevailing rate analysis on the weight of prior case authority may favor the USAO <u>Laffey</u> Matrix over its variants because it came first.  The D.C. Circuit's decision in <u>Eley</u> makes plain, however, that fee applicants need not "always cite fee orders issued in other cases" in order for their fee petitions to be successful.  <u>Eley</u>, 793 F.3d at 104 n.5.  Instead, "evidence of the prevailing market rate can take many forms."  <u>Id.</u>  Indeed, the Court of Appeals observed that it would be "powerfully persuasive" if, instead of relying on any fee matrix, a fee petitioner were to submit a "statistically reliable, well-documented, and extensive survey of the rates clients pay for [the] sub-market of legal services" at issue in the case.  <u>Id.</u> (internal quotation omitted).  Plaintiff provides no such survey here.

(same); <u>Nw. Coalition for Alternatives to Pesticides v. Browner</u>, 965 F. Supp. 59, 65–66 (D.D.C. 1997) (same).[27]

Using the USAO <u>Laffey</u> Matrix as a guide, David Sobel, plaintiff's senior attorney with over 30 years of experience, will be awarded $505 per hour for his work on this litigation from June 2012 to May 2013, and $510 per hour for his work from June 2013 to May 2014.  <u>See</u> <u>supra</u> n.21.  Likewise, Mark Rumold, plaintiff's junior attorney with 1–3 years of experience, will be awarded $245 per hour for his work in this action from June 2012 to May 2013, and $250 per hour for his work from June 2013 to May 2014.  <u>See</u> <u>id.</u>

  2. <u>Reasonable Hours</u>

A plaintiff bears the burden of demonstrating the reasonableness of the hours claimed by "documenting the appropriate hours expended."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 441 (1983).  In the instant action, EFF claims that Mr. Sobel spent a total of 17.75 hours, and that co-counsel, Mr. Rumold, spent a total of 87 hours on this FOIA litigation.  Sobel Decl. ¶ 5; Rumold Decl. ¶ 4.  The government contends that EFF's claimed hours are unreasonable for three reasons: (1) they reflect time spent on "unsuccessful or non-productive pursuits," (2) they seek to recover for time expended "reviewing the documents sought in this litigation," and (3) they reflect hours calculated based on a <u>post</u> <u>hoc</u> review of documents by one of EFF's attorney's rather than contemporaneous billing records.  Fee Opp. at 18–23.  As discussed below, the Court finds merit only in the government's third argument.

---

[27] In comparison, the undersigned has only identified two cases wherein the Court awarded LSI Matrix rates to successful FOIA plaintiffs.  <u>See</u> <u>CREW</u>, Civ. No. 11-1021 (D.D.C. Oct. 24, 2014), at *22 (awarding rates consistent with the LSI Matrix in a FOIA case); <u>Citizens for Responsibility & Ethics in Washington v. Dep't of Justice</u>, Civ. No. 11-0754, 2014 U.S. Dist. LEXIS 182098, at *14 (D.D.C. Aug. 4, 2014) (same).

a.   EFF Has Not Claimed Hours for "Unsuccessful or Non-Productive Pursuits"

Counsel for a fee applicant "should make a good faith effort to exclude from a fee request

hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice

ethically is obligated to exclude such hours from his [or her] fee submission." Hensley, 461 U.S.

at 434.  Should a court determine that certain documented hours were not "reasonably

expended," the court may exclude those hours from the fee calculation.  Id.  Based on these legal

principles, the government argues that EFF is not entitled to fees for its "elective non-FOIA

proceedings in the FISC," for its "unsuccessful Cross-Motion for Summary Judgment," and for

the period between when it filed its complaint and "early June 2013," a stage of the case the

government contends was rendered "moot" by the Snowden leaks.  Fee Opp. at 20–21.

The Court finds little merit in the government's arguments.  There was nothing elective

about EFF's litigation before the FISC.  Indeed, EFF was compelled to seek relief in the FISC

because of the government's incorrect and unreasonable claim that FISC Rule 62 precluded any

disclosure of information in this matter.  For that reason, it should be compensated for its

successful efforts before the FISC.  See 5 U.S.C. § 552(a)(4)(E)(i) (authorizing the court to

assess "fees and other litigation costs reasonably incurred in any case under this section in which

the complainant has substantially prevailed").

Similarly, the Court rejects DOJ's related contention that compensating EFF for its

attorneys' efforts before the FISC would "exceed the waiver of sovereign immunity in FOIA's

fee provision."  Fee Opp. at 8.  EFF's challenge before the FISC of the government's Rule 62

argument was an integral and necessary part of this litigation.  This is so given that it was the

government that (1) interposed FISC Rule 62 into this FOIA case, (2) argued that the rule left

both the government and this Court without authority to disclose the 2011 FISC Opinion, and (3) refused to go before the FISC itself and seek to remove that claimed bar to disclosure in this action.  The government's actions thereby compelled EFF to seek its own relief before the FISC so as to permit release of the Opinion in this action.  Indeed, the government conceded as much in its brief before the FISC when it characterized EFF's motion as being "an action in aid of Movant's FOIA suit against the Department of Justice seeking records from the Department's files."  Gov.'s Opp. Br. at 2, In re Motion for Release of Court Records, 526 F. Supp. 2d 484 (F.I.S.C. 2007).  For that reason, the fees and costs associated with EFF's efforts were "reasonably incurred" under Section 552(a)(4)(E)(i) and will be compensated.

Finally, the Court rejects the government's related contention that EFF's pursuit of every other phase of this case was "non-productive."  Taking the government's position at the initiation of this litigation at face value – that it would not have voluntarily or unilaterally sought any relief from the FISC – it is apparent that, regardless of the Snowden leaks, the 2011 FISC Opinion would not have been released absent EFF's litigation before the FISC, which the government's position compelled.  Thereafter, EFF successfully pursued this litigation to ensure that the Opinion would be released on a schedule set by the Court, not the government, and that every reasonably segregable portion of it would be released, all of which was beneficial to the public. Cf. Citizens for Responsibility & Ethics in Washington v. Dep't of Justice, Civ. No. 11-1021, at *11 (D.D.C. Oct. 24, 2014) (denying fees because "after the first stage of the briefing, there was no public benefit to further litigation, and the Government's withholdings were not unreasonable").  Moreover, DOJ's argument also neglects the fact that "FOIA cases routinely result in the disclosure of a relatively small proportion of the documents originally requested." Judicial Watch, 774 F. Supp. 2d at 232.

Accordingly, the Court will not curtail any of EFF's claimed hours as being "excessive, redundant, or otherwise unnecessary."  See Hensley, 461 U.S. at 434.

>    b.   EFF Can Recover for Time Expended Reviewing Documents Sought in this Litigation for Purposes of Challenging the Government's Withholding from Those Documents

Also unavailing is DOJ's contention that EFF cannot recover for time spent reviewing "the documents released in August 2013 and the partial footnote released in November 2013." Fee Opp. at 22.  DOJ characterizes this time as "non-compensable, 'post-relief activity, separate from the litigation.'"  Id.  (quoting CREW, 825 F. Supp. 2d at 231 (D.D.C. 2011)).  However, as this Court recently held, "to the extent that the released documents are being reviewed to evaluate the sufficiency of the release or the propriety of a specific withholding so that the attorney can then challenge the release or withholding, such document review time is properly included in a FOIA attorney's fee award."  Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec., Civ. No. 12-667, 2015 WL 737101, at *6 (D.D.C. Feb. 20, 2015) ("EPIC"); see also EPIC, 811 F. Supp. 2d at 239–40 (D.D.C. 2011) (observing that "it would seem critical to the prosecution of a FOIA lawsuit for a plaintiff to review an agency's disclosure for sufficiency and proper withholding during the course of its FOIA litigation"); EPIC, 999 F. Supp. 2d at 75 (D.D.C. 2013).

As in EPIC, Civ. No. 12-667 (D.D.C. 2015), this is not a case where the plaintiff "filed a complaint for documents under FOIA, the agency released the documents, and the plaintiff then requested attorney's fees for its time reviewing the released documents."  2015 WL 737101, at *6.  Rather, the hours EFF's attorneys spent reviewing the versions of the 2011 FISC Opinion released in August 2013 and November 2013 were "an integral part of this FOIA litigation."  Id. Based on that review, EFF further challenged the government's redactions to the Opinion –

challenges which resulted in <u>in camera</u> review of that Opinion and further disclosure of information from it.  <u>See</u> Pl.'s MSJ at 2 ("[S]ome redactions still appear calculated. . . .  EFF respectfully urges the Court to require production of the Opinion for the Court's <u>in camera</u> inspection and to reject the overbroad withholding claims DOJ continues to assert.").  Accordingly, the Court will compensate the time that EFF's counsel reasonably expended reviewing the 2011 FISC Opinion in August and November 2013 as it determined whether to challenge the government's continued withholdings from that document.

> c.  Plaintiff's Fee Award Should Be Reduced to Account for Plaintiff's Counsel's <u>Post Hoc</u> Reconstruction of His Time Spent on this Case

The government's final challenge based on the inadequate timekeeping of one of EFF's attorneys – Mr. Rumold – fares better.  This Circuit's case law requires that attorneys intending to make a fee application at a later stage of the litigation "must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney."  <u>Concerned Veterans</u>, 675 F.2d at 1327.  "Casual after-the-fact-estimates of time expended on a case are insufficient to support an award of attorneys' fees."  <u>Id.</u>  "Where the documentation of hours is inadequate," a court may reduce the award accordingly.  <u>Hensley</u>, 461 U.S. at 432.  Given the stark contrast in the timekeeping practices of EFF's attorneys, the Court will analyze each attorney's hours in turn.

> i.  David Sobel

David Sobel represented EFF in this FOIA litigation as a part-time employee.  Sobel Decl. ¶ 4.  Unsurprisingly, as a part-time, public-interest attorney, Mr. Sobel did not file monthly invoices with individual line items devoted to each discrete task.  <u>Id.</u> ¶¶ 4, 5.  Rather, Mr. Sobel "maintain[ed] a running tally of time devoted to each discrete task performed during the course of the litigation . . . [which] was compiled on a computer file [and] updated as additional time

was devoted to the case." Id. ¶ 5.  In an effort "to be conservative and to ensure that unproductive time was not included in the tally," Mr. Sobel recorded his time in six-minute increments.  Id.  Relying upon the contemporaneous records he kept, Mr. Sobel provided a chart to the Court, reproduced below, that delineates the total time spent on the major tasks that were necessary to pursue this action to completion, not including the hours devoted to the attorney's fees briefs:[28]

| Date | Work | Hours |
|------|------|-------|
| 8/2012 | Draft complaint | 1.5 |
| 4/2013 | Review & analysis of DOJ SJ filing | .75 |
| 4-5/2013 | Stay in DDC and motion to FISC | 9.25 |
| 6-7/2013 | Status report (filed 7/1/13) | 1.75 |
| 8/2013 | Review document produced on 8/21 | .25 |
| 9-10/2013 | Opp. to DOJ SJ motion & EFF cross-motion | 2.5 |
| 11-12/2013 | Reply ISO EFF cross-motion | 1.75 |
| | **TOTAL** | **17.75** |

Id.

The Court commends Mr. Sobel for his thorough and contemporaneous timekeeping and for keeping track of his time in six-minute increments.  See CREW, Civ. No. 11-1021 (D.D.C. Oct. 24, 2014), at *13 ("[C]ourts in this District and others have often required that attorneys bill in ten-minute or six-minute increments" because this type of billing practice is more accurate).

_____

[28] This Court will address EFF's claim for "fees on fees" separately below.  See infra Section III.C.3.

Having kept contemporaneous records of his time in sufficient detail, Mr. Sobel will be fully credited for the 17.75 hours he expended in this litigation.

### ii.      Mark Rumold

Mark Rumold worked full-time for EFF on this litigation.  Rumold Decl. ¶ 3.  In contrast to Mr. Sobel, Mr. Rumold did not maintain contemporaneous time records related to this matter. Rather, before filing EFF's fee petition, Mr. Rumold recreated his billing history through, according to him, a "careful assessment of [his] time based on [his] case file of pleadings, correspondence and communications, and research materials."  Id. ¶ 4.  Based on that post hoc review of documents, Mr. Rumold's timesheet reflects that he spent 119.80[29] hours working on this litigation.  Rumold Decl. App.  To make up for possible discrepancies between his own recollection and the time he actually spent on the case, Mr. Rumold then "exercised 'billing judgment'" to reduce the number of hours from 119.80 to 87.  Id.  Mr. Rumold attests that, "[a]s a result of [his] review, and the additional reduction, [he is] confident that 87 hours were reasonably expended in order to achieve success in this matter, and that there are no excessive, redundant or unnecessary hours included in this request."  Id.  Like Mr. Sobel, Mr. Rumold provided a chart to the Court, reproduced below, that outlines the time he estimates that he spent on this litigation:

| Date | Work | Hours |
|---|---|---|
| 8/2012 | Draft complaint | 3.0 |
| 4/2013 | Review & analysis of DOJ SJ filing | 6.0 |
| 4-5/2013 | Stay in DDC and motion to FISC | 13.0 |

---

[29] Mr. Rumold miscalculated the number of hours allegedly spent on this FOIA litigation as documented in his appendix.  In EFF's motion for attorney's fees, Mr. Rumold claims 110.55 hours; his appendix actually reflects that he spent 119.80 hours on this litigation.  See Rumold Decl. App.

| 6-7/2013 | Status report (filed 7/1/13) | 6.0 |
| 8/2013 | Review document produced on 8/21 | 2.0 |
| 9-10/2013 | Opp. to DOJ SJ motion & EFF cross-motion | 33.0 |
| 11-12/2013 | Reply ISO EFF cross-motion | 24.0 |
| | **TOTAL** | **87.0** |

Id.

This Court is not satisfied with Mr. Rumold's timekeeping.  See In re Olson, 884 F.2d

1415, 1428 (D.C. Cir. 1989) (per curiam) ("Supporting documentation must be of sufficient

detail and probative value to enable the court to determine with a high degree of certainty that

such hours were actually and reasonably expended.").  Indeed, as DOJ correctly notes, Mr.

Rumold's practices are "strikingly similar to the inadequate timekeeping in the fee decision" in

CREW, Civ. No. 11-1021 (D.D.C. Oct. 24, 2014).  Fee Opp. at 20.  In that case, the plaintiff's

attorney calculated her hours by "review[ing] [her] daily time sheets and separate notes [she]

maintain[ed] on individual cases."  CREW, Civ. No. 11-1021 (D.D.C. Oct. 24, 2014), at *14.

Like Mr. Rumold, the plaintiff's attorney in that case "calculate[d] her time based on a post-hoc

'review'" of those documents and did not "indicate the increments in which she billed."  Id.  For

those reasons, this Court in CREW, Civ. No. 11-1021 (D.D.C. Oct. 24, 2014), reduced by 30

percent the hours of plaintiff's counsel.  Id.

A similar reduction is appropriate here.  The Court lacks confidence that Mr. Rumold was

able to remember all the details necessary to calculate the 119.80-hour total he claims to have

spent on this case.[30]  His application of a 27 percent reduction to those total hours in an exercise

---

[30] EFF claims that Mr. Rumold's timekeeping procedures "are deemed appropriate in the Northern District of California, where he principally practices."  Fee Reply at 14–15; see also Rumold Decl. ¶ 2.  But by his own admission, Mr. Rumold practices regularly in this Court, which has long required that attorneys "maintain

of "billing judgment" to account for errors in his methodology does little to boost the Court's

confidence in the accuracy of the original figure.  While Mr. Rumold's records are not so

deficient as to require no recovery for his time, this Court finds that his time should be further

curtailed "to account for any inaccuracies and overbilling that may have occurred as a result of

[his] unacceptable timekeeping habits."  CREW, 825 F. Supp. 2d at 231.

　　　　After careful consideration, the Court will reduce Mr. Rumold's total fee demand of

119.80 hours by 40 percent.  See Hensley, 461 U.S. at 433 ("Where the documentation of hours

is inadequate, the district court may reduce the award accordingly.").  This percentage decrease

falls well within the range of reductions this Court has recently imposed for similarly deficient

timekeeping practices, and should provide an incentive for all counsel practicing in this Court to

keep contemporaneous billing entries in the future.  See Berkeley v. Home Ins. Co., 68 F.3d

1409, 1419–20 (D.C. Cir. 1995) (affirming reduction of attorney's fees by 50% "in light of post-

hoc recollections two years after the fact and methodologically flawed estimates"); CREW, Civ.

No. 11-1021 (D.D.C. Oct. 24, 2014), at *15 (applying a 30% reduction based on similar

timekeeping practices); EPIC, 999 F. Supp. 2d at 73 ("[T]he Court will deduct 40% of this time

from EPIC's fee award as a penalty for [their] shortcomings, and to incentivize future litigants to

maintain sufficiently detailed billing entries."); CREW, 825 F. Supp. 2d at 231 (red ucing

attorney's fees by 37.5% "based on splitting the 75% difference between billing in quarter-hour

versus full-hour increments").

---

contemporaneous, complete and standardized time records which accurately reflect the work done by each
attorney."  Concerned Veterans, 675 F.2d at 1327; see Rumold Decl. ¶ 2 ("For the past three years, I have . . .
assisted my co-counsel, David L. Sobel, with the litigation of FOIA cases in this Court.").

3.  Fees on Fees

EFF also seeks recovery for the time its counsel devoted to this fee dispute.  Fee Mot. at 20; Fee Reply at 18 n.7; Suppl. Fee Reply Br. at 8 n.7.  Awarding prevailing plaintiffs such "fees on fees" is consistent with this Circuit's case law.  See Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest., 771 F.2d 521, 528 (D.C. Cir. 1984) ("Hours reasonably devoted to a request for fees are compensable.").  DOJ does not dispute this general principle.  Fee Opp. at 23.  Rather, it argues that EFF's recovery of fees on fees should be reduced to the extent the Court is "persuaded that most of Plaintiff's fee demands are unsubstantiated or unwarranted."  Id.; cf. INS v. Jean, 496 U.S. 154, 163 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation.").  However, with the exception of the reduction for Mr. Rumhold's timekeeping – a deficiency which was corrected for purposes of EFF's fees-on-fees demand[31] – this Court does not believe that any across-the-board reductions to plaintiff's fees-on-fees request are appropriate.  Further, having reviewed EFF's fees-on-fees request, the Court finds that it is reasonable.  Accordingly, the Court declines DOJ's invitation to reduce EFF's fees-on-fees demand, and will compensate EFF for the full amount requested:  39.2 hours for Mr. Sobel,[32] and 9 hours for Mr. Rumold.[33]  See Sobel Decl. ¶ 7; Sobel Supp. Decl. ¶ 2; Rumold Decl. ¶ 5; Rumold Supp. Decl. ¶ 2; Suppl. Fee Reply Brief at 8 n.7.

---

[31] Mr. Rumold maintained contemporaneous recordkeeping of the time he spent on EFF's fee motion.  See Rumold Supp. Decl. ¶ 2 n.1.  Accordingly, his hours spent on that motion should not be reduced for the deficiencies identified above.

[32] Specifically, Mr. Sobel claims 11 hours for preparation of the motion for attorney's fees, 18.8 hours for the reply in support of EFF's motion for attorney's fees, and 9.4 hours for the supplemental briefing ordered by the Court on September 3, 2015.  Sobel Decl. ¶ 7; Suppl. Sobel Decl. ¶ 2; Suppl. Fee Reply Brief at 8 n.7.

[33] Specifically, Mr. Rumold claims 3.6 hours for preparation of the motion for attorney's fees and 5.4 hours for the reply in support of EFF's motion for attorney's fees.  Rumold Decl. ¶ 5; Suppl. Rumold Decl. ¶ 2.

4. Total Attorney's Fees

Applying the forgoing analysis to EFF's fee demand results in a total award of attorney's

fees calculated as follows:

| Attorney | Hours | Laffey Rate Per Hour | Lodestar | Total |
|---|---|---|---|---|
| David L. Sobel | 11.5 | $505 | $5,807.50 | $8,995 |
| | 6.25 | $510 | $3,187.50 | |
| Mark Rumold | (1-0.40) x 27.5 = 16.5 | $245 | $4,042.50 | $17,887.50 |
| | (1-0.40) x 92.3 = 55.38 | $250 | $13,845.00 | |

**Mr. Sobel**:   $8,995 + (39.2 "fees on fees" hours x $510 per hour)   =  $28,987

**Mr. Rumold**: $17,887.50 + (9 "fees on fees" hours x $250 per hour)   =  $20,137.50

**Total Attorney's Fees**   =  $49,124.50

## CONCLUSION

For the reasons stated above, plaintiff's motion for attorney's fees and costs will be

**GRANTED IN PART** and **DENIED IN PART**.  Consistent with the foregoing analysis,

plaintiff's counsel shall be awarded total fees and costs as follows:

| Attorney's Fees | Costs[34] | Total |
|---|---|---|
| $49,124.50 | $350.00 | $49,474.50 |

An appropriate Order accompanies this Memorandum Opinion.


Date: September 30, 2015

                          /s G. Michael Harvey
       _____
                          G. MICHAEL HARVEY
                          UNITED STATES MAGISTRATE JUDGE

---

[34] EFF incurred $350 in costs to pay for the court filing fee.  See Sobel Decl. ¶ 7.  DOJ makes no specific objection to paying these costs.  See Fee Opp. at 26 (arguing "the most Plaintiff's counsel can recover is $4,172.38 plus $350.00 for filing costs").  Accordingly, the Court directs that plaintiff's legal costs should be paid in full.